1  STEPHEN M. HAYES (SBN 83583)
   shayes@hayesscott.com
2  RYAN Z. KELLER (SBN 249193)
   rkeller@hayesscott.com
3  HAYES SCOTT BONINO ELLINGSON & GUSLANI LLP
4  333 Twin Dolphin Road, Suite 230
   Redwood City, California 94065
5  Telephone:  650.637.9100

6
   Attorneys for Plaintiffs
7  HANOVER  AMERICAN  INSURANCE  COMPANY  and
   CITIZENS INSURANCE COMPANY OF AMERICA

8

9              UNITED STATES DISTRICT COURT

10          CENTRAL DISTRICT OF CALIFORNIA

11  HANOVER AMERICAN INSURANCE          CASE NO. 2:23-cv-10047-MRA-MAA
12  COMPANY and CITIZENS
    INSURANCE COMPANY OF                PLAINTIFFS HANOVER
13  AMERICA,                            AMERICAN INSURANCE
                                        COMPANY and CITIZENS
14                                      INSURANCE COMPANY OF
                Plaintiffs,             AMERICA'S MEMORANDUM OF
15                                      POINTS AND AUTHORITIES IN
16        vs.                           SUPPORT OF ITS MOTION FOR
                                        JUDGMENT ON THE PLEADINGS
17  FRANCINI, INC.; and DOES 1 through
18  100, Inclusive,                       Date:      June 20, 2024
                                          Time:      1:30 p.m.
19              Defendants.               Dept.:     10B
20
21                                      Assigned for all Purposes to:
                                        Judge Mónica Ramírez Almadani
22
23                                      Complaint Filed:  November 29, 2023
                                        Trial Date:       Not Yet Set
24
25  ///
26  ///
27  ///
28  ///

2089136

# TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ................................................................................................1

II.   FACTUAL BACKGROUND ..........................................................................2

      A.   Underlying Actions ..............................................................................2

      B.   Plaintiffs' Insurance Policies ..............................................................2

III.  legal standards ....................................................................................................6

      A.   Judgment On The Pleadings.................................................................6

      B.   Policy Interpretation .............................................................................6

IV.   Plaintiffs have no duty to defend OR INDEMNIFY FRANCINI.................7

      A.   Interpretation Of Relevant Policy Language ......................................7

      B.   Plaintiffs Have No Duty To Defend Under The Policies'
           Silica Exclusion ....................................................................................8

      C.   Plaintiffs Have No Duty To Defend Under The Policies'
           Pollution Exclusion ...........................................................................14

V.    FRANCINI'S AFFIRMATIVE DEFENSES DO NOT DEFEAT
      JUDGMENT ON THE PLEADINGS...........................................................17

VI.   CONCLUSION ...............................................................................................19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*24th & Hoffman Investors, LLC v. Northfield Insurance Company*,
  82 Cal.App.5th 825 (2022) ...................................................................... 7, 8

*AIU Ins. Co. v. Superior Court*,
  51 Cal.3d 807 (1990) ................................................................................... 7

*Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*,
  718 F.Supp.2d 1167 (N.D.Cal. 2010) ........................................................ 17

*Certain Underwriters at Lloyd's of London v. Superior Court*,
  24 Cal.4th 945 (2001) ................................................................................ 13

*Charles E. Thomas Co. v. Transamerica Ins. Group*,
  62 Cal.App.4th 379 (1998) ............................................................... 7, 8, 15

*Doleman v. Meiji Mut. Life Ins. Co.*,
  727 F.2d 1480 (9th Cir. 1984) ..................................................................... 6

*Garamendi v. Golden Eagle Ins. Co.*,
  127 Cal.App.4th 480 (2005) ................................................................ 14, 15

*General Conference Corp. of Seventh-Day Adventists v. Seventh-Day
  Adventists Congregational Church*, 887 F.2d 228 (9th Cir. 1989) ............. 17

*Gomez v. J. Jacobo Farm Labor Contractor, Inc.*,
  188 F.Supp.3d 986 (E.D. Cal. 2016) ......................................................... 18

*In re Honest Co., Inc. Sec. Litig.*,
  343 F.R.D. 147 (C.D. Cal. 2022) ............................................................... 18

*Inns-by-the-Sea v. California Mutual Ins. Co.*,
  71 Cal.App.5th 688 (2021) ...................................................................... 7, 8

*J&J Sports Productions, Inc. v. Bear*,
  No. 1:12-cv-01509, 2013 WL 708490 (E.D. Cal. Feb. 26, 2013) ............... 17

*Joe Hand Promotions, Inc. v. Estradda*,
  No. 1:10-cv-02165-OWW-SKO, 2011 WL 2413257 (E.D. Cal. June
  8, 2011) ..................................................................................................... 18

*MacKinnon v. Truck Ins. Exchange*,
  31 Cal.4th 635 (2003) ................................................................................ 14

*McGlinchy v. Shell Chemical Co.*,
  845 F.2d 802 (9th Cir.1988) ........................................................................ 6

*Northfield Ins. Co. v. Sandy's Place, LLC*,
  530 F. Supp. 3d 952 (E.D. Cal. 2021) ......................................................... 6

-ii-

*Ocean Towers Hous. Corp. v. Evanston Ins. Co.*,
772 F.App'x 459 (9th Cir. 2019) ................................................................... 6, 7

*Pit River Tribe v. Bureau of Land Mgmt.*,
793 F.3d 1147 (9th Cir. 2015) ........................................................................ 17

*Qwest Communications Corp. v. City of Berkeley*
208 F.R.D. 288 (N.D. Cal. 2002) ..................................................................... 6

*Sherwin-Williams Co. v. Courtesy Oldsmobile-Cadillac, Inc.*,
No. 1:15-cv-01137, 2016 WL 615335 (E.D. Cal. Feb. 16, 2016) .................... 18

*The Villa Los Alamos Homeowners Association v. State Farm General*
*Insurance Company*, 198 Cal.App.4th 522 (2011) ......................................... 14

*Titan Corp. v. Aetna Casualty & Surety Co.*,
22 Cal.App.4th 457 (1994) ............................................................................... 7

*Travelers Property Casualty Company of America v. City of Los Angeles*
*Harbor Department* (C.D. Cal., Sept. 9, 2016, No. CV 15-7799-
GW(AJWX)) 2016 WL 11520822 ............................................................. 14, 15

*Vogel v. Huntington Oaks Delaware Partners, LLC*,
291 F.R.D. 438 (C.D. Cal. 2013) .................................................................... 17

*Waller v. Truck Ins. Exchange, Inc.*,
11 Cal.4th 1 (1995) ...................................................................................... 7, 8

*Westoil Terminals Co. v. Indus. Indem. Co.*,
110 Cal.App.4th 139 (2003) ............................................................................ 7

**Statutes**

Civ. Code, § 1636 .............................................................................................. 7

-iii-

## I.    INTRODUCTION

Plaintiffs Hanover American Insurance Company ("Hanover") and Citizens Insurance Company of America ("Citizens") (collectively "Plaintiffs") have no duty to defend or indemnify their insured, Defendant Francini, Inc., ("Francini"), under their insurance policies due to the silica and/or pollution exclusions because the underlying complaints all allege bodily injury from silica (a pollutant).

Plaintiffs issued commercial general liability policies to Francini which contain both a total pollution exclusion and a broad silica or silica-related dust exclusion.  These exclusions, exclude coverage for the 17 lawsuits filed against Francini alleging each plaintiff developed silicosis from exposure to silica from working with products manufactured, distributed, and/or supplied by all of the named defendants, including Francini.

Insurance policy interpretation is governed by state law.  California courts have consistently held the language of the policies applicable exclusions are intentional absolute exclusions, excluding coverage for damage resulting from the exclusion.  The policies exclude losses caused, whole or in part, by "pollutants" and/or "silica" or "silica-related dust."  The underlying lawsuits all allege losses caused by plaintiffs' exposure to silica.  Silica is a pollutant under California law. Clearly, the allegations and coverage of the underlying lawsuits fall squarely within the silica and/or pollution exclusions and Plaintiffs have no duty to defend Francini. And where there is no duty to defend, there cannot be a duty to indemnify.

Based on the allegations of the complaint and plain reading of the policy terms, Plaintiffs have no duty to defend or indemnify Francini in the underlying lawsuits. Accordingly, the Court should grant this Rule 12(c) motion for judgment on the pleadings.

///

///

///

## II. FACTUAL BACKGROUND

### A. Underlying Actions

Seventeen (17) lawsuits were filed from 2021-2023 against Francini and other defendants for alleged damages that occurred during the relevant policy period(s), wherein each plaintiff alleges they developed silicosis from exposure to silica from working with products manufactured, distributed, and/or supplied by all of the named defendants. (collectively the "Underlying Actions.") (Complaint, ¶13; Request for Judicial Notice ("RJN") Exhs, 1-17.)

### B. Plaintiffs' Insurance Policies

Hanover American Insurance Company issued Commercial General Liability Policy # ZZ3 D016527 00 to the named insured, Francini, Inc. (Complaint, ¶ 7, Exh. A.) The policy effective dates are August 20, 2016 – August 20, 2017. The policy provides policy limits of $1,000,000 each occurrence and $2,000,000 aggregate. There is no applicable deductible.

Citizens Insurance Company of America issued Commercial General Liability Policy # ZB3 H024264 00 to the named insured, Francini, Inc. (Complaint, ¶ 8, Exh. B.) The policy's effective date is August 20, 2019 – August 20, 2021. Policy # ZB3 H024264 01 was issued for the renewal period of August 20, 2020 – August 20, 2021. (Complaint, ¶ 8, Exh. C.) Each policy term provides policy limits of $1,000,000 each occurrence and $2,000,000 aggregate. There is no applicable deductible.  The Hanover and Citizens' policies are collectively referred to as the "Policies".

The Commercial General Liability Coverage Form - Occurrence, CG 0001 4/13, is endorsed on the Policies. The Insuring Agreement of that form states, in pertinent part, as follows (Complaint, ¶ 9, Exh. A, p. 214; Exh. B, p. 606; Exh. C, p. 986.):

///

///

2089136

-2-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS – CASE NO. 2:23-cv-10047-MRA-MAA

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

    **1.**    **Insuring Agreement**

        **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" … to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" … to which this insurance does not apply...

        **b.**    This insurance applies to "bodily injury" … only if:

            (1) The "bodily injury" … is caused by an "occurrence" that          takes place in the "coverage territory";

            (2)  The "bodily injury" … occurs during the policy period...

The Policies' exclusions state in relevant part (Complaint, ¶ 10, Exh. A, p. 215; Exh. B, p. 607; Exh. C, p. 987.):

    **2. Exclusions**

    This insurance does not apply to:

    **a. Expected Or Intended Injury**

    "Bodily injury" … expected or intended from the standpoint of the insured…

    …

    **f.  Pollution**

{This exclusion has been replaced by the Total Pollution Exclusion Endorsement, CG 2149 9/99, as set forth below.}

The Policies contain the Total Pollution Exclusion Endorsement, CG 2149 9/99, which modifies the pollution exclusion. This endorsement states in pertinent part as follows (Complaint, ¶ 10, Exh. A, p. 247; Exh. B, p. 631; Exh. C, p. 1012.):

**TOTAL POLLUTION EXCLUSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" … which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time…

The Policies contain the Silica or Silica-Related Dust Exclusion, CG 2196 3/05, which states in relevant part as follows (Complaint, ¶ 11, Exh. A, p. 257; Exh. B, p. 646; Exh. C, p. 1027.):

**SILICA OR SILICA-RELATED DUST EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

2089136

-4-

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS – CASE NO. 2:23-cv-10047-MRA-MAA**

**Silica Or Silica-Related Dust**

      **a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust"…

…

**C.** The following definitions are added to the **Definitions** Section:

    **1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

    **2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

Section V - Definitions contained in the Commercial General Liability Coverage Form - Occurrence, CG 0001 4/13. The following definitions apply (Complaint, ¶ 12, Exh. A, p. 206, 228; Exh. B, p. 598, 620; Exh. C, p. 978, 1000.):

    **4.   Bodily Injury Redefined** {as modified by the Commercial General Liability       Broadening Endorsement, 4212915 6/15.}

    **SECTION V – DEFINITIONS**, Definition **3.** "bodily injury" is replaced by the following:

    **3.**   "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".

       **…**

    **13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

       **…**

2089136

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

## III.    LEGAL STANDARDS

### A.    Judgment On The Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." (Fed. R. Civ. P. 12(c).)  Judgment on the pleadings, pursuant to Federal Rules of Civil Procedure 12(c), is proper when the moving party clearly establishes on the face of the pleadings that (1) no material issue of fact remains to be resolved; and (2) it is entitled to judgment as a matter of law. (*Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir. 1984).)

A Rule 12(c) motion for judgment on the pleadings may be made by either party. A plaintiff may move for judgment on the pleadings if the answer fails to controvert material facts alleged in the complaint.  (*Qwest Communications Corp. v. City of Berkeley* 208 F.R.D. 288, 291 (N.D. Cal. 2002).)  All allegations of fact by the party opposing the motion are accepted as true, and they are construed in the light most favorable to that party. (*Qwest Communications* 208 F.R.D. at 291; *McGlinchy v. Shell Chemical Co*., 845 F.2d 802, 810 (9th Cir.1988).)  Uncontested allegations to which the other party had an opportunity to respond are taken as true. (*Qwest Communications* 208 F.R.D. at 291.)

### B.    Policy Interpretation

Insurance policy interpretation is governed by state law.  In California, policy interpretation is a question of law to be evaluated by the court.  (*Northfield Ins. Co. v. Sandy's Place, LLC*, 530 F. Supp. 3d 952, 962 (E.D. Cal. 2021).)   "The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." (*Ocean Towers Hous. Corp. v. Evanston Ins. Co.*, 772 F.App'x 459, 460 (9th Cir.

2089136

-6-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS – CASE NO. 2:23-cv-10047-MRA-MAA

2019) (quoting *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1081 (1993)).) Courts should "compare[ ] the allegations of the underlying complaints with the terms of the [ ] Exclusion in the [ ] policies" to determine if there is "no potential for coverage and thus no duty to defend." (*Id.*) "Where an exclusion is clear and unambiguous, it is given its literal effect." (*Westoil Terminals Co. v. Indus. Indem. Co.*, 110 Cal.App.4th 139, 146 (2003).)

As explained by the California Supreme Court, "Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636.)  Such intent is to be inferred, if possible, solely from the written provisions of the contract. (Id., § 1639.)"  (*AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 821–822 (1990).)

Moreover, Courts will not strain to create insurance policy ambiguity where none exists[1] (*Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 18, 44 (1995); *Inns-by-the-Sea v. California Mutual Ins. Co.*, 71 Cal.App.5th 688, 967 (2021)), and an insurer is free to limit the risks it assumes in its contracts. (*24th & Hoffman Investors, LLC v. Northfield Insurance Company*, 82 Cal.App.5th 825, 833 (2022).)

## IV.    PLAINTIFFS HAVE NO DUTY TO DEFEND OR INDEMNIFY FRANCINI

### A.    Interpretation Of Relevant Policy Language

California courts have upheld "in whole or in part" policy language and consider it to be an intentional absolute exclusion, excluding coverage for damage resulting from the exclusion. (*Charles E. Thomas Co. v. Transamerica Ins. Group*, 62 Cal.App.4th 379, 384 (1998) ("*Transamerica*"); *Titan Corp. v. Aetna Casualty & Surety Co.*, 22 Cal.App.4th 457, 470 (1994).)  The court in *Transamerica* found the Transamerica policy language to be a limited exclusion, differentiating it from an absolute exclusion that includes "in whole or in part" language. (*Transamerica* at

---

[1] There are no allegations that the policy is ambiguous in Francini's answer.

2089136

-7-

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS – CASE NO. 2:23-cv-10047-MRA-MAA**

383-84 [the Transamerica policy language is "clear and unambiguous. It only excludes losses 'arising out of any request, demand or order'", whereas insurance policy language related to bodily injury such as "which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, release or escape of pollutants at any time" would be an absolute exclusion.]) The court reasoned that if "*Transamerica* had truly intended an 'absolute' exclusion of pollution-related liability it could have said so." (*Ibid*. [citing *Larsen Oil Co. v. Federated Service Ins. Co*., 859 F.Supp. 434, 436 (D.Or.1994) [the policy excluded losses "which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, release or escape of pollutants at any time"].)

Moreover, courts will not strain to create insurance policy ambiguity where none exists (*Waller v. Truck Ins. Exchange, Inc*., 11 Cal.4th 1, 18, 44 (1995); *Inns-by-the-Sea v. California Mutual Ins. Co*., 71 Cal.App.5th 688, 967(2021)), and an insurer is free to limit the risks it assumes in its contracts. (*24th & Hoffman* at 833.)

**B.    Plaintiffs Have No Duty To Defend Under The Policies' Silica Exclusion**

The Policies' silica exclusion language states in part: "This insurance does not apply to: 'Bodily injury' arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, 'silica' or 'silica-related dust'…"

All of the Underlying Actions allege bodily injury arising at least in part out of the inhalation of silica[2]:

"Plaintiff, FERNANDO BUSTOS-MONDRAGON. . . was thereby exposed to and inhaled respirable crystalline silica . . . as a direct and proximate result of which he developed silicosis and other conditions that have required medical treatments and hospitalizations, and for which Plaintiff will need to receive a lung transplant";

---

[2] The Metzger Law Group filed all of the Underlying Actions, which explains the similarities.

2089136

-8-

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS – CASE NO. 2:23-cv-10047-MRA-MAA**

"…gross attempt by Francini to disclaim responsibility for selling a product that is inherently dangerous due to its high crystalline silica content" (RJN, Ex. 1: *Bustos-Mondragon* FAC, ¶¶ 33, 260.)

"Plaintiff, JORGE ESTRELLA-MORENO. . . was thereby exposed to an inhaled respirable crystalline silica. . . As a direct and proximate result of JORGE ESTRELLA-MORENO's exposure to silica. . . Plaintiff, JORGE ESTRELLA-MORENO, developed silicosis and other conditions which have required medical treatments and hospitalizations, and for which Plaintiff needs to receive a lung transplant"; "… Francini, Inc. …misrepresented facts and concealed information from Plaintiff and his employers regarding the true nature and severity of the hazards of its stone products… thereby suggesting that the product is not hazardous, although the ordinary and expected use of the product generates extremely hazardous respirable crystalline silica that causes silicosis and death." (RJN, Ex. 2: *Estrella-Morena* Complaint, ¶¶ 50, 460.)

"Plaintiff, ANGEL GALLEGOS-BOTELLO, was thereby exposed to and inhaled respirable crystalline silica . . . As a direct and proximate result of ANGEL GALLEGOS-BOTELLO's exposure to silica . . . Plaintiff, ANGEL GALLEGOS-BOTELLO, developed silicosis and other conditions which have required medical treatments and hospitalizations, and for which Plaintiff needs to receive a lung transplant"; "…gross attempt by Francini to disclaim responsibility for selling a product that is inherently dangerous due to its high crystalline silica content" (RJN, Ex. 3: *Gallegos-Botello* FAC, ¶¶ 58, 517.)

"Plaintiff, ADAN GOMEZ-RIVERA, was thereby exposed to and inhaled respirable crystalline silica . . . As a direct and proximate result of ADAN GOMEZ-RIVERA's exposure to silica . . . Plaintiff, ADAN GOMEZ-RIVERA, developed silicosis and other conditions which have required medical treatments and hospitalizations, and for which Plaintiff needs to receive a lung transplant"; "…gross attempt by Francini to disclaim responsibility for selling a product that is inherently

dangerous due to its high crystalline silica content" (RJN, Ex. 4: *Gomez-Rivera* SAC, ¶¶ 92, 549.)

"VICTOR GONZALEZ, was thereby exposed to and inhaled toxicologically significant amounts of silica …. As a direct and proximate result of VICTOR GONZALEZ's exposure to silica … VICTOR GONZALEZ, developed silicosis, pulmonary fibrosis, and other related and consequential injuries which required extensive medical treatment, including hospitalizations, and from which he died on September 13, 2021" (RJN, Ex. 5: *Gonzalez* SAC, ¶ 74.)

"Plaintiff, DEMETRIO LUNA-REYES, was thereby exposed to and inhaled respirable crystalline silica . . . As a direct and proximate result of DEMETRIO LUNA-REYES' exposure to silica . . . Plaintiff, DEMETRIO LUNA-REYES, developed silicosis and other conditions which have required medical treatments and hospitalizations, and for which Plaintiff needs to receive a lung transplant"; "…gross attempt by Francini to disclaim responsibility for selling a product that is inherently dangerous due to its high crystalline silica content" (RJN, Ex. 6: *Luna-Reyes* FAC, ¶¶ 38, 263.)

"Plaintiff, JAIME BLANCO MACIEL, inhaled silica . . . As a direct and proximate result of JAIME BLANCO MACIEL's exposure to silica. . . Plaintiff, JAIME BLANCO MACIEL, developed silicosis and other conditions that have required medical treatments and hospitalizations, and for which Plaintiff will likely need to receive a lung transplant"; "…gross attempt by Francini to disclaim responsibility for selling a product that is inherently dangerous due to its high crystalline silica content" (RJN, Ex. 7: *Maciel* Complaint, ¶¶ 72-73, 334.)

"Plaintiff, MARTIN MELENDEZ-MURILLO, was thereby exposed to and inhaled respirable crystalline silica . . . As a direct and proximate result of MARTIN MELENDEZ-MURILLO's exposure to silica . . . Plaintiff, MARTIN MELENDEZ-MURILLO, developed silicosis and other conditions which have required medical treatments and hospitalizations, and for which Plaintiff needs to receive a lung

transplant"; "…gross attempt by Francini to disclaim responsibility for selling a product that is inherently dangerous due to its high crystalline silica content" (RJN, Ex. 8: *Melendez-Murillo* Complaint, ¶¶ 104, 358.)

"Plaintiff, ARTURO MONTOYA-BAUTIST, was thereby exposed to and inhaled respirable crystalline silica . . . As a direct and proximate result of ARTURO MONTOYA-BAUTIST's exposure to silica . . . Plaintiff, ARTURO MONTOYA-BAUTIST, developed silicosis and other conditions that have required medical treatment and hospitalizations, and for which Plaintiff will likely need to receive a lung transplant"; "…gross attempt by Francini to disclaim responsibility for selling a product that is inherently dangerous due to its high crystalline silica content" (RJN, Ex. 9: *Montoya-Bautista* Complaint, ¶¶ 40, 302.)

"Plaintiff, WILLIAM MOZ-MURCIA, was thereby exposed to and inhaled respirable crystalline silica . . . As a direct and proximate result of WILLIAM MOZ-MURCIA's exposure to silica . . . Plaintiff, WILLIAM MOZ-MURCIA, developed silicosis and other related and consequential injuries which has required extensive medical treatments and hospitalizations, and for which Plaintiff needs to receive a lung transplant"; "…gross attempt by Francini to disclaim responsibility for selling a product that is inherently dangerous due to its high crystalline silica content" (RJN, Ex. 10: *Moz-Murcia* Complaint, ¶¶ 41, 258.)

"Plaintiff, OSCAR ALVARADO ORTIZ, was thereby exposed to and inhaled respirable crystalline silica . . . As a direct and proximate result of OSCAR ALVARADO ORTIZ's exposure to silica . . . Plaintiff, OSCAR ALVARADO ORTIZ, developed silicosis and other conditions which has required extensive medical treatments and hospitalizations, and for which Plaintiff needs to receive a lung transplant"; "…gross attempt by Francini to disclaim responsibility for selling a product that is inherently dangerous due to its high crystalline silica content" (RJN, Ex. 11: *Ortiz* Complaint, ¶¶ 61, 286.)

///

"Plaintiff, J. GUADALUPE REYES-CUEVAS, was thereby exposed to and inhaled respirable crystalline silica . . . As a direct and proximate result of J. GUADALUPE REYES-CUEVAS' exposure to silica . . . Plaintiff, J. GUADALUPE REYES-CUEVAS, developed silicosis and other conditions which has required medical treatments and hospitalizations, and for which he need to receive a lung transplant"; "…gross attempt by Francini to disclaim responsibility for selling a product that is inherently dangerous due to its high crystalline silica content" (RJN, Ex. 12: *Reyes-Cuevas* FAC, ¶¶ 65, 290.)

"Plaintiff, DENNYS RENE RIVAS-WILLIAMS, was thereby exposed to and inhaled respirable crystalline silica . . . As a direct and proximate result of DENNYS RENE RIVAS-WILLIAMS' exposure to silica . . . Plaintiff, DENNYS RENE RIVAS-WILLIAMS, developed silicosis and other conditions that have required medical treatment and hospitalizations, and for which Plaintiff will need to receive a lung transplant"; "…gross attempt by Francini to disclaim responsibility for selling a product that is inherently dangerous due to its high crystalline silica content" (RJN, Ex. 13: *Rivas-Williams* FAC, ¶¶ 120, 624.)

"Plaintiff, LEOBARDO SEGURA-MEZA, was thereby exposed to and inhaled toxicologically significant amounts of silica . . . As a direct and proximate result of LEOBARDO SEGURA-MEZA's exposure to silica. . . Plaintiff, LEOBARDO SEGURA-MEZA, developed silicosis, progressive massive fibrosis, and other injuries which have required medical treatment and hospitalizations, including lung transplantation"; "…gross attempt by Francini to disclaim responsibility for selling a product that is inherently dangerous due to its high crystalline silica content" (RJN, Ex. 14: *Segura-Meza* SAC, ¶¶ 103, 563.)

"JOSE RAUL GARCIA-LEON, was thereby exposed to and inhaled respirable crystalline silica . . . As a direct and proximate result of JOSE RAUL GARCIA-LEON's exposure to silica . . . JOSE RAUL GARCIA-LEON, developed silicosis and other injuries from which he died on February 16, 2023"; "…gross attempt by

2089136

-12-

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS – CASE NO. 2:23-cv-10047-MRA-MAA**

Francini to disclaim responsibility for selling a product that is inherently dangerous due to its high crystalline silica content" (RJN, Ex. 15: *Solano-Castro* FAC, ¶¶ 62, 347.)

"Plaintiff, Jose Guadalupe Soto-Rodriguez, was thereby exposed to and inhaled respirable crystalline silica . . . As a direct and proximate result of Jose Guadalupe Soto-Rodriguez's exposure to silica . . . Plaintiff, Jose Guadalupe Soto-Rodriguez, developed silicosis and other conditions which have required medical treatments and hospitalizations, and for which Plaintiff needs to receive a lung transplant"; "...gross attempt by Francini to disclaim responsibility for selling a product that is inherently dangerous due to its high crystalline silica content" (RJN, Ex. 16: *Soto-Rodriguez* FAC, ¶¶ 94, 661.)

"Plaintiff, RODOLFO GARCIA-ROSAS, was thereby exposed to and inhaled respirable crystalline silica . . . As a direct and proximate result of RODOLFO GARCIA-ROSAS's exposure to silica . . . Plaintiff, RODOLFO GARCIA-ROSAS, developed silicosis and other related and consequential injuries which have required extensive medical treatments and hospitalizations, and for which Plaintiff needs to receive a lung transplant"; "...gross attempt by Francini to disclaim responsibility for selling a product that is inherently dangerous due to its high crystalline silica content" (RJN, Ex. 17: *Garcia-Rosas* FAC, ¶¶ 36, 261.)

Clearly, the Underlying Actions set forth claims of bodily injury arising at least in part out of the alleged inhalation of silica. This satisfies the unambiguous silica exclusions in both the Citizens and Hanover policies. Accordingly, per the terms of the silica exclusion, "this insurance does not apply."

Here, there is no duty to defend based on the silica exclusion. And "where there is no duty to defend, there cannot be a duty to indemnify." (*Certain Underwriters at Lloyd's of London v. Superior Court*, 24 Cal.4th 945, 958 (2001).)

///

///

2089136

-13-

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS – CASE NO. 2:23-cv-10047-MRA-MAA**

### C.    Plaintiffs Have No Duty To Defend Under The Policies' Pollution Exclusion

As noted above, California courts have upheld "in whole or in part" language and consider it to be an intentional absolute exclusion, excluding coverage for damage resulting from the exclusion.

The California Supreme Court requires courts to "attempt to put itself in the position of a layperson and understand how he or she might reasonably interpret the exclusionary language" to determine whether an injury-causing event would commonly be thought of as pollution, i.e., environmental pollution.  (*MacKinnon v. Truck Ins. Exchange*, 31 Cal.4th 635, 653 (2003).)  Since *MacKinnon*, "courts appear to consider the following factors in determining whether an injury-causing event would commonly be thought of as pollution from a layman's perspective: (1) whether the harm resulted from the by-product of an industrial operation, (2) whether the contaminant in question is regulated, and (3) whether the alleged polluter was aware of the dangers of the contaminant."  (*Travelers Property Casualty Company of America v. City of Los Angeles Harbor Department* ("*Travelers*") (C.D. Cal., Sept. 9, 2016, No. CV 15-7799-GW(AJWX)) 2016 WL 11520822.)) (Citations omitted.)

California courts consider silica to be commonly thought of as a pollutant. (*Garamendi v. Golden Eagle Ins. Co*., 127 Cal.App.4th 480, 485–486 (2005); *The Villa Los Alamos Homeowners Association v. State Farm General Insurance Company*, 198 Cal.App.4th 522, 536 (2011).)  Applying the *MacKinnon* standards, the court in *Garamendi* found the "widespread dissemination of silica dust as an incidental by-product of industrial sandblasting operations most assuredly is what is 'commonly thought of as pollution' and 'environmental pollution.'" (*Garamendi* at 485–486.)

Here, the Citizens and Hanover pollution exclusion language states: "This insurance does not apply to: 'Bodily injury' or 'property damage' which would not have occurred in whole or part but for the actual, alleged or threatened discharge,

-14-

dispersal, seepage, migration, release or escape of 'pollutants' at any time.'" This pollution exclusion language is identical to language the court in *Transamerica,* provided as an example of an absolute exclusion.    (*Transamerica* at 383-84 [insurance policy language related to bodily injury such as "which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, release or escape of pollutants at any time" would be an absolute exclusion.])    The Citizens and Hanover pollution exclusion must therefore be an absolute exclusion.    Moreover, the silica exclusion should be considered an absolute exclusion similar to the pollution exclusion.    Under this broad interpretation, the policy language in the exclusions applies to all other claims alleged in the complaints of the Underlying Actions as a matter of law, as they are a result of the alleged silica exposure.

Further, the pollution exclusion language is not only identical to that in *Garamendi*, so is the policy definition of pollutants.    Therefore, the Court here should also find the dissemination of silica dust as an incidental by-product of industrial stone counter operations are most assuredly what is "commonly thought of as pollution."

All 17 cases meet the three factors enumerated in *Travelers*, such that the injury-causing event would commonly be thought of as pollution from a layman's perspective.    First, the harm alleged in the complaints, which include some variation of negligence, warning defect, design defect, fraudulent concealment, breach of implied warranties, and loss of consortium, are a direct result of the underlying plaintiffs' work related to the "industrial operation" of cutting, grinding, installing and finishing stone to be installed in kitchens and bathrooms.    (*See,* RJN, Ex. 1: *Bustos-Mondragon* FAC, ¶ 32; RJN, Ex. 2: *Estrella-Morena* Complaint , ¶ 49; RJN, Ex. 3: *Gallegos-Botello* FAC, ¶57-58; RJN, Ex. 4: *Gomez-Rivera* SAC, ¶ 81; RJN, Ex. 5: *Gonzalez* SAC , ¶ 73; RJN, Ex. 6: *Luna-Reyes* FAC, ¶ 36; RJN, Ex. 7: *Maciel* Complaint, ¶ 67; RJN, Ex. 8: *Melendez-Murillo* Complaint, ¶ 103; RJN, Ex. 9:

2089136

-15-

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS – CASE NO. 2:23-cv-10047-MRA-MAA**

*Montoya-Bautista* Complaint , ¶ 39; RJN, Ex. 10: *Moz-Murcia* Complaint , ¶ 34; RJN, Ex. 11: *Ortiz* Complaint, ¶ 54; RJN, Ex. 12: *Reyes-Cuevas* FAC, ¶ 63; RJN, Ex. 13: *Rivas-Williams* FAC, ¶ 119; RJN, Ex. 14: *Segura-Meza* SAC, ¶ 102; RJN, Ex. 15: *Solano-Castro* FAC, ¶ 61; RJN, Ex. 16: *Soto-Rodriguez* FAC, ¶ 93; RJN, Ex. 17: *Garcia-Rosas* FAC, ¶ 35.)   Therefore, the harm resulted from the by-product of an industrial operation.   Second, the Federal Government has imposed workplace exposure limits on silica since 1971 with the most recent modification in 2016. 29 C.F.R. §§§ 1910.1053; 1915.1053; 1926.1153. California adopted the Federal OSHA regulations in 2016 California regulates occupational exposure to respirable crystalline silica through Title 8, § 5204, of the California Code of Regulations. Prior to §5204, CCR § 1530.1 controlled exposure to silica resulting from the use of powered tools or equipment on concrete or masonry materials.   Silica is regulated both federally and through California state regulations.   Finally, as a company regularly conducting business in masonry materials, and through decades of federal and state regulations and discussions about the dangers of silica, Francini was aware of the dangers of silica.   (*See e.g.*, RJN, Ex. 1: *Bustos-Mondragon* FAC, ¶¶ 387, 459 ("Defendants were all aware of the toxic and fibrogenic nature of their stone products and that exposure to their products causes silicosis" . . . "Defendants were aware that their artificial stone products contained extremely high concentrations of crystalline silica (approximately 95%), which produced extremely high levels of respirable crystalline silica in their ordinary and expected use"); *see also* RJN, Ex. 2: *Estrella-Morena* Complaint, ¶¶ 418, 506; RJN, Ex. 3: *Gallegos-Botello* FAC, ¶¶ 756, 844; RJN, Ex. 4: *Gomez-Rivera* SAC, ¶¶ 795, 894; RJN, Ex. 5: *Gonzalez* SAC, ¶ 186; RJN, Ex. 6: *Luna-Reyes* FAC, ¶¶ 390, 468; RJN, Ex. 7: *Maciel* Complaint, ¶¶ 440, 504; RJN, Ex. 8: *Melendez-Murillo* Complaint, ¶¶ 482, 570; RJN, Ex. 9: *Montoya-Bautista* Complaint, ¶¶ 401, 460; RJN, Ex. 10: *Moz-Murcia* Complaint, ¶¶ 382, 466; RJN, Ex. 11: *Ortiz* Complaint, ¶¶ 411, 495; RJN, Ex. 12: *Reyes-Cuevas* FAC, ¶¶ 412, 484; RJN, Ex. 13: *Rivas-Williams* FAC, ¶¶ 878, 968; RJN, Ex. 14: *Segura-Meza*

-16-

1   SAC, ¶¶ 804, 858; RJN, Ex. 15: *Solano-Castro* FAC, ¶¶ 485, 535; RJN, Ex. 16: *Soto-*
2   *Rodriguez* FAC, ¶¶ 929, 1010; RJN, Ex. 17: *Garcia-Rosas* FAC, ¶¶ 382, 430.)
3   Therefore, silica is a pollutant, and there is no duty to defend based on the pollution
4   exclusion.

5   **V.    FRANCINI'S AFFIRMATIVE DEFENSES DO NOT DEFEAT JUDGMENT ON THE PLEADINGS**
6

7        Francini's unsupported legal conclusions contained in their affirmative
8   defenses are insufficient to defeat Plaintiffs' motion for judgment on the pleadings as
9   a matter of law.  To be sure, a plaintiff is not entitled to judgment on the pleadings if
10  the answer raises issues of fact or an affirmative defense which, if proved, would
11  defeat plaintiff's recovery. (*General Conference Corp. of Seventh-Day Adventists v.*
12  *Seventh-Day Adventists Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989);
13  *Pit River Tribe v. Bureau of Land Mgmt.*, 793 F.3d 1147, 1159 (9th Cir. 2015).)  But
14  Francini's affirmative defenses do not raise issues of fact which, if proved, would
15  defeat Plaintiffs' request for declaratory relief.

16       Although the Ninth Circuit has not addressed whether *Twombly* and *Iqbal*
17  apply to the pleading of affirmative defenses, "the vast majority of cases presented
18  with the issue have extended *Twombly's* heightened, plausibility pleading standard to
19  affirmative defenses."   (*Barnes v. AT&T Pension Benefit Plan-Nonbargained*
20  *Program*, 718 F.Supp.2d 1167, 1171-72 (N.D.Cal. 2010), (citations omitted).)  And
21  courts in this District have found the plausibility standard applies to affirmative
22  defenses. (*Vogel v. Huntington Oaks Delaware Partners, LLC*, 291 F.R.D. 438 (C.D.
23  Cal. 2013) (citing cases.))   "Applying the standard for heightened pleading to
24  affirmative defenses serves a valid purpose in requiring at least some valid factual
25  basis for pleading an affirmative defense and not adding it to the case simply upon
26  some conjecture that it may somehow apply." (*Barnes*, 718 F.Supp.2d at 1172.) For
27  example, the Insureds' Third Affirmative Defense contends Plaintiffs are estopped
28  from obtaining relief requested with no factual basis. (See *J&J Sports Productions,*

2089136

*Inc. v. Bear*, No. 1:12-cv-01509, 2013 WL 708490, at \*8 (E.D. Cal. Feb. 26, 2013) (finding that estoppel affirmative defense was insufficiently pled under pre-*Twombly*/*Iqbal* fair notice pleading rule).)

Even if *Twombly's* heightened pleading standard does not apply to affirmative defenses, the so-called affirmative defenses fail to provide the "fair notice" required under the pre-*Twombly*/*Iqbal* rule. An affirmative defense must give the "plaintiff fair notice of the nature and grounds for the affirmative defense." (*In re Honest Co., Inc. Sec. Litig.*, 343 F.R.D. 147, 152 (C.D. Cal. 2022).) Although "fair notice" is a low bar that does not require great detail, it does require a defendant to provide "some factual basis" for its affirmative defenses. (*Sherwin-Williams Co. v. Courtesy Oldsmobile-Cadillac, Inc*., No. 1:15-cv-01137, 2016 WL 615335, at \*2 (E.D. Cal. Feb. 16, 2016).) "Simply referring to a doctrine or a statute is insufficient to afford fair notice." (*Gomez v. J. Jacobo Farm Labor Contractor, Inc*., 188 F.Supp.3d 986, 992 (E.D. Cal. 2016) ("This Court will not accept fact-barren affirmative defenses or bare references to doctrines or statutes because such pleadings do not afford fair notice of the nature of the defense pleaded").)

Francini's affirmative defenses are entirely fact-barren, or give bare refences to statutes, none of which provide Plaintiffs with fair notice.

Additionally, Francini attempts to reserves its right to amend its affirmative defenses. But "[a]n attempt to reserve affirmative defenses for a future date is not a proper affirmative defense in itself." (*Joe Hand Promotions, Inc. v. Estradda*, No. 1:10-cv-02165-OWW-SKO, 2011 WL 2413257, at \*5 (E.D. Cal. June 8, 2011) (quoting *Solis v. Zenith Capital, LLC*, No. 08-cv-4854, 2009 WL 1324051, at \*7 (N.D.Cal. May 8, 2009).)

Francini's so-called affirmative defenses, which are fact-barren and insufficiently pled, do not defeat Plaintiffs' motion for judgment on the pleadings.

///

///

1    **VI.    CONCLUSION**

2        For the foregoing reasons, Plaintiffs respectfully request that the Court grant its

3    motion for judgment on the pleadings.    In comparing the allegations in the

4    complaints of the Underlying Actions to the unambiguous terms of the Policies, it is

5    clear that Plaintiffs have no duty to defend, and therefore no duty to indemnify, as a

6    matter of law.    Francini's fact-barren, improper, and insufficiently pled affirmative

7    defenses do not raise fact issues that could defeat this motion.

8

9    Dated:  March 26, 2024            HAYES SCOTT BONINO
                                       ELLINGSON & GUSLANI LLP
10

11                                     By:  _/S/ Ryan Z Keller_____
                                           STEPHEN M. HAYES
12                                         RYAN Z. KELLER
                                           Attorneys for Plaintiffs
13                                         HANOVER AMERICAN INSURANCE
                                           COMPANY and CITIZENS INSURANCE
14                                         COMPANY OF AMERICA

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2089136