**SHERMAN LAW GROUP**
Richard Lloyd Sherman, (SBN 106597)
Abhay Khosla (SBN 223555)
9454 Wilshire Boulevard, Suite 850
Beverly Hills, California 90212-2929
Telephone:  (310) 246-0321
Facsimile:   (310) 246-0305
E-mail: richard@shermanlawgroup.com
        abhay@shermanlawgroup.com

Attorneys for Defendant **FRANCINI, INC.**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **HANOVER AMERICAN INSURANCE COMPANY** and **CITIZENS INSURANCE COMPANY OF AMERICA**,<br><br>Plaintiffs,<br><br>v.<br><br>**FRANCINI, INC.**; and DOES 1 through 100, Inclusive<br><br>Defendant | Case No. 2:23-cv-10047-MRA-MAA<br><br>**DEFENDANT FRANCINI, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:  July 18, 2024<br>Time:  1:30 p.m.<br>Dept:  10B<br><br>Assigned for all Purposes to:<br>Judge Monica Ramirez Almadani<br><br>Action Filed:  November 29, 2023 |

    Defendant Francini, Inc. ("***Francini***") submits the following Memorandum of Points and Authorities in Opposition to Plaintiffs' Hanover American Insurance Company ("***Hanover***") and Citizens Insurance Company of America's ("***Citizens***") Motion for Judgment on the Pleadings ("***Motion***," Dkt. 44-1).

/ / /

/ / /

---

**MEMORANDUM ISO OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS**
48787932.5/067845.0001

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................... 1

II. UNDERLYING FACTS AND ALLEGATIONS .......................................... 4

III. ANALYSIS ..................................................................................................... 7

    A. Plaintiffs Cannot Meet Their Burden, as a Matter of Law ................... 7

    B. The Relevant Legal Authorities Favor Coverage .......................... 7

    C. California Duty to Defend Law Requires A Defense Based on the Bare Potential for Coverage .................................... 8

    D. The Underlying Actions do not Clearly Arise out of Widespread, Conventional Environmental Pollution Within the Meaning of the Total Pollution Exclusion ............................................................ 10

    E. Where the Underlying Actions Allege Injury From Other Substances In addition to Silica, A Duty to Defend is Owed .......................... 14

IV. CONCLUSION ............................................................................................ 16

**MEMORANDUM ISO OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF AUTHORITIES

- **CASELAW**

*Aerojet-General Corp. v. Transport Indemnity Co.* (1997) 17 Cal. 4th 38 ............. 9

*AIU Ins. Co. v. Sup. Ct.* (1990) 51 Cal. 3d 807 ........................................ 7, 9

*American Zurich Ins. Co. v. James Gray*
    2014 WL 11430928 (C.D. Cal. July 25, 2014)
        Case No. SACV 13-1966 AG (JPRx) ................. 1-3, 10, 11, 12, 14, 15, 16

*Amato v. Mercury Cas. Co.* (1983) 18 Cal. App. 4th 1784 .............................. 8

*Atlantic Mutual Ins. Co. v. J. Lamb, Inc.* (2002) 100 Cal. App. 4th 1017 ....... 9, 15

*Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.*
    (1993) 5 Cal. 4th 854 ................................................................ 8

*Buss v. Superior Court* (1997) 16 Cal. 4th 35 ............................................. 9

*Charles E. Thomas Co. v. Transamerica Ins. Group*
    (1998) 62 Cal. App. 4th 379 ...................................................... 13

*Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir. 1984) ........... 7

*E.M.M.I Inc. v. Zurich American Ins. Co.* (2004) 32 Cal. 4th 465 ..................... 7

*Garamendi v. Golden Eagle Ins. Co.* (2005) 127 Cal. App. 4th 480 ............. 10-12

*Gray v. Zurich Ins. Co.* (1966) 65 Cal. 2d 263 ...................................... 8, 15

*Haskel, Inc. v. Superior Court* (1995) 33 Cal. App. 4th 963 ........................... 9

*Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal. 4th 1076 ......................... 10

*Larsen Oil Co. v. Federated Service Ins. Co.*
    859 F. Supp. 434 (D. Oregon, 1994) ............................................. 13

*MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal. 4th 635 ................ 1, 6, 10, 12

*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal. 4th 287 ...... 7, 8, 9, 10, 15

*Santaluz, LLC v. American Home Assurance Co.*
    2010 WL 11509307 *5-6 (S.D. Cal. 2010) ...................................... 12

*Titan Corp. v. Aetna Casualty & Surety Co.* (1994) 22 Cal. App. 4th 457 ......... 13

**MEMORANDUM ISO OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS**

Case 2:23-cv-10047-MRA-MAA   Document 50   Filed 06/26/24   Page 4 of 20   Page ID
 #:5335

*Vandenberg v. Sup. Ct.* (1999) 21 Cal. 4th 815 ............................................. 9

*Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980) ...................................... 7

*Waller v. Truck Inc. Exchange* (1995) 11 Cal. 4th 1 ...................................... 8

*Wesco Insurance Company v. Brad Ingram Construction*
    2024 WL 243344 *2 (9th Cir. 2024) ............................................. 13

*White v. Western Title Ins. Co.* (1985) 40 Cal. 3d 870 ................................. 7-8

- **_STATUTES_**

*California Civil Code* §1644 ............................................................................ 7

- **_SECONDARY SOURCES_**

John K. DiMugno & Paul E.G. Glad, *California Insurance Law Handbook*
    § 45:37 ............................................................................................. 11

MEMORANDUM ISO OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

## I. INTRODUCTION

This Motion arises out of the duty of insurers Hanover and Citizen (collectively "**Plaintiffs**") to defend their insured Francini in seventeen personal injury actions (the "**Underlying Actions**") filed and currently pending before the Los Angeles Superior Court, which are identified in Plaintiffs' Request for Judicial Notice ("**RFJN**") filed in support of the Motion. Plaintiffs Hanover and Citizens seek to avoid their broad and basic obligation to defend their insured Francini, based on the purported application of certain policy exclusions.

However, Plaintiffs' Motion applies those exclusions in an impermissibly overbroad manner that disregards the critical allegations of the Underlying Actions. The Motion fails to advise the Court that this very Court under substantially similar circumstances (*i.e.* for the same Silica and Total Pollution Exclusions at issue here) previously rejected the arguments Plaintiffs are now making (in the context of Motion for Summary Judgment in an insurer contribution action). *American Zurich Ins. Co. v. James Gray*, 2014 WL 11430928 (C.D. Cal. July 25, 2014) Case No. SACV 13-1966 AG (JPRx) ("***American Zurich***").

In American Zurich, Liberty Mutual Insurance Company urged this Court to grant summary judgment based upon a Silica Exclusion and Total Pollution Exclusion (both substantially similar to the ones at issue herein).

The Court looked to the "leading case in California on the application of the pollution exclusion", *MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal. 4th 635, 652-653 ("***MacKinnon***"), which has long held that the pollution exclusion applies solely to traditional environmental pollution—which is far different than the localized dispersal of dust and particulates alleged in American Zurich (or against Francini in the Underlying Actions). Based thereon, the Court rejected Liberty Mutual's claim that it did not owe a duty to defend its mutual insured in relation to two actions asserted against contractors performing demolition and construction work at a Boeing facility, which allegedly permitted "toxins, including dust and

silica, to enter the air at the Boeing job site where [the plaintiffs] worked, which was then breathed by [the plaintiffs]," and instead held that (a) Liberty Mutual could not meet its burden to demonstrate that demolition and construction work was sufficiently widespread to be thought of as traditional environmental pollution under *MacKinnon* and (b) the mere inclusion of silica allegations "cannot negate any possibility of coverage sufficient to relieve Liberty Mutual of a duty to defend" because other harmful chemicals were also allegedly involved. *American Zurich* at *5-6.

Notably, as to the Total Pollution Exclusion, this Court explained why the duty to defend could not be avoided:

> The Court's interpretation of the Policies' Total Pollution Exclusion is consistent with the purpose of CGL policies, which are meant "to provide the insured with the broadest spectrum of protection against liability for unintentional and unexpected personal injury or property damage arising out of the conduct of the insured's business." MacKinnon, 31 Cal. 4th at 654 (internal quotation omitted). Liberty's interpretation of the pollution exclusion, like the insurer's in MacKinnon, "would fundamentally undermine that purpose" and evade the historical purpose of the pollution exclusion "by cutting a broad and arbitrary swath through CGL protections." Id. A reasonable policyholder, especially a policyholder doing work like ICEB does, would not necessarily think of all dust emitted from a demolition workplace as traditional pollution. Id. Thus there is a possibility of coverage and summary judgment is inappropriate

Id. at *6.

As to the Silica Exclusion, this Court similarly explained that it also did not absolve the insurer of its duty to defend:

> Liberty essentially asks the Court to interpret the Silica Exclusion Endorsement as absolving Liberty of a duty to defend or indemnify any time silica is involved in a claim, no matter how many other chemicals are involved too. Silica "is found in many commonplace materials such as sand, glass, concrete and computer chips." Garamendi, 127 Cal. App. 4th at 485. To interpret the Silica Exclusion

> Endorsement to preclude coverage even where it causes harm with dozens of other chemicals (see Molina Complaint ¶ 26) would wipe out an enormous swath of CGL protections, especially in industries like ICEB's. In short, interpreting the exclusion narrowly against Liberty, the fact that silica is involved in a lawsuit cannot negate any possibility of coverage sufficient to relieve Liberty of a duty to defend. Thus the Court cannot conclude that the Silica Exclusion Endorsement conclusively negates any possibility of coverage here and summary judgment is not appropriate.

Ibid.

Like Liberty Mutual in *American Zurich*, Plaintiffs here are attempting to overreach: (1) the Underlying Actions allege that the injured parties would typically work in small shops and/or installed the allegedly offending products in kitchens and bathrooms (i.e. this is not traditional environmental pollution—it is, at best, localized dispersal of dust and other particulates); (2) the allegations are not limited to the existence of silica, but also extend to the allegedly harmful existence of resins, pigments, other additives, metals, and other toxins; and (3) the Underlying Actions similarly assert negligence causes of action as to the conduct of Francini's business. Significantly, Plaintiffs also overlook that at this early stage of the litigation, the Underlying Actions' allegations are not proven facts, but generic allegations that remain subject to investigation and dispute.

Allowing Plaintiffs to escape their primary and basic duty to defend Francini under the circumstances here presented would defeat the objectively reasonable expectation of coverage for any insured. Plaintiffs' purported application of the Total Pollution Exclusion is based on bare allegations that fail to establish the breadth and scope of the alleged dissemination of dust and chemicals as to any particular defendant, and Plaintiffs' purported application of the Silica Exclusion is made in the face of allegations that other allegedly harmful chemicals were involved in causing the injuries. Of course, it would be patently unfair and unreasonably unexpected for an insurer to deprive its insured of a defense in response to allegations that are

MEMORANDUM ISO OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

ultimately proven to be false, *i.e,* that silica was not a cause of the harm.

In sum, the facts and law both favor coverage for Francini. Plaintiffs' Motion should thus be denied in its entirety.

## II.   UNDERLYING FACTS AND ALLEGATIONS

Plaintiffs' attempt to avoid their duty to defend based upon bare allegations of the Underlying Actions falls far short of the mark required, as is more fully set forth below. Significantly, Plaintiffs attempt to describe the allegations of the Underlying Actions with a "broad brush" also improperly obscures the key allegations being made against Francini.

The allegations in the Underlying Actions are disputed. See, Francini's RFJN and Objections filed herewith, Francini Answers in the Underlying Actions (Francini "denies, both generally and specifically, each, every and all purported cause of action or count … denying specifically that Plaintiff have been, are, or will be injured or damaged in the manner or sum alleged, or in any other manner or sums at all"). However, each of the Underlying Actions make two critical allegations which are fatal to Plaintiffs' Motion.

***First,*** **Exhibit 1** to Plaintiffs' RFJN filed in Support of the Motion (Dkt. 44-2) is the First Amended Complaint filed in the matter entitled <u>Bustos-Mondragon, et al., v. Antolini Luigi, et al</u>, Los Angeles County Superior Court Case No. 23STCV01424, on March 20, 2023. The First Amended Complaint includes a cause of action for general negligence resulting in physical injuries (<u>Id.</u> p. 8), and alleges, *inter alia*: "that in addition to having an extremely high crystalline silica content, Defendants' artificial stone products also contained resins, pigments, and other additives to which Plaintiff Fernando Bustos-Mondragon, was also exposed by inhaling dust from cutting, grinding, drilling, and polishing Defendants' products, which also caused damage to his lungs and exacerbated and accelerated his fibrotic lung disease." <u>Id.</u> p. 12, ¶ 29. Mr. Bustos-Mondragon alleges that his injuries arose from his work as a "cutter, fabricator, and installer of stone countertops … mostly for home kitchens and

- 4 -

bathrooms." <u>Id.</u> p. 31, ¶¶ 31-32. Contrary to the notion that the alleged exposure was "widespread," the Complaints allege that this type of work was "typically" performed in "small shops," where they "fabricate the artificial stone slabs into countertops that are then installed in customers' kitchens and bathrooms." <u>Id.</u> p. 39, ¶ 80.

Each of the other Underlying Actions contain the same or substantially the same allegations, see, **Exhibit 2** to Plaintiffs' RFJN, <u>Id.</u> p. 180; p. 187, ¶ 46; p. 218, ¶ 49; p. 226, ¶ 95; **Exhibit 3** to Plaintiffs' RFJN, <u>Id.</u> p. 398; p. 414, ¶ 49; p. 436, ¶ 103; **Exhibit 4** to Plaintiffs' RFJN, <u>Id.</u> p. 707; p. 727, ¶ 76; p. 782, ¶ 137; **Exhibit 5** to Plaintiffs' RFJN, <u>Id.</u> p. 1054; p. 1065, ¶ 71; p. 1101, ¶¶ 73-74; p. 1102, ¶ 75; **Exhibit 6** to Plaintiffs' RFJN, <u>Id.</u> p. 1138; p. 1163, ¶ 37; p. 1163, ¶ 38; p. 1171, ¶ 83; **Exhibit 7** to Plaintiffs' RFJN, <u>Id.</u> p. 1314; p. 1375, ¶ 66; p. 1375, ¶ 69; p. 1383, ¶ 117; **Exhibit 8** to Plaintiffs' RFJN, <u>Id.</u> p. 1536; p. 1571, ¶ 47-48; p. 1578, ¶ 91;[1] **Exhibit 9** to Plaintiffs' RFJN, <u>Id.</u> p. 1750; p. 1775, ¶ 39-40; p. 1783, ¶ 85; **Exhibit 10** to Plaintiffs' RFJN, <u>Id.</u> p. 1933; p. 1937, ¶ 33; p. 1966, ¶ 79; p. 1967, ¶ 86; **Exhibit 11** to Plaintiffs' RFJN, <u>Id.</u> p. 2093; p. 2101, ¶ 53; p. 2141, ¶ 54; p. 2142, ¶ 61; p. 2149, ¶ 99; p. 2150, ¶ 106; **Exhibit 12** to Plaintiffs' RFJN, <u>Id.</u> p. 2289; p. 2345, ¶ 63; p. 2345, ¶ 65; p. 2353, ¶ 110; **Exhibit 13** to Plaintiffs' RFJN, <u>Id.</u> p. 2490; p. 2578, ¶¶ 119-120; p. 2585, ¶ 158; p. 2586, ¶ 165; **Exhibit 14** to Plaintiffs' RFJN, <u>Id.</u> p. 2875; p. 2937, ¶ 143; p. 2938, ¶ 150; p. 3164, ¶ 753; **Exhibit 15** to Plaintiffs' RFJN, <u>Id.</u> p. 3201; p. 3248, ¶¶ 61-62; p. 3255, ¶¶ 106-107; **Exhibit 16** to Plaintiffs' RFJN, <u>Id.</u> p. 3437; p. 3482, ¶¶ 93-95; pp. 3488-89, ¶¶ 137-138; **Exhibit 17** to Plaintiffs' RFJN, <u>Id.</u> p. 3764; p. 3786, ¶¶ 35-37; p. 3794, ¶¶ 81-82.

Plaintiffs attempt to mischaracterize the Underlying Actions, claiming that they concern "industrial stone counter operations" (<u>Id.</u> p. 19:13-17). But this is belied

---

[1] While the Plaintiffs' RFJN references the *Melendez-Murillo* Complaint at ¶ 8, Exhibit 8 (at p. 3), said Complaint does not appear as attached to the RFJN, where the document identified at Exhibit 8 is a copy of the Soto-Rodriquez Complaint (at p. 1536).

by the allegations as to each and every action that the injuries occurred in small fabrication shops, and/or home kitchens and bathrooms.

***Second,*** there are multiple, clear references to the exposures to substances aside from silica, including the resins, metals, and other toxins causing and/or contributing to the injuries alleged. Motion, Dkt. 44-1, pp. 12:23-17:19. This is conspicuously absent (hidden by ellipses) from Plaintiffs' recitation of these allegations.

These two allegations are fatal to Plaintiffs' Motion, based upon the case law cited above and discussed further below. The Silica Exclusion does not preclude a duty to defend where (as is true here) the allegations include potential injury from other toxins as well. *Ibid.* The Total Pollution Exclusion similarly does not apply where dissemination of the allegedly offending materials was not so widespread as to be considered traditional environmental pollution. *Ibid.*; *MacKinnon*, *supra*.

### III.  ANALYSIS

####   A.   Plaintiffs Cannot Meet Their Burden, as a Matter of Law

Plaintiffs concede that in order to prevail on their Motion, they must "clearly" establish on the face of the pleadings that (1) no material issue of fact remains to be resolved; and (2) they are entitled to judgment as a matter of law. *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir. 1984); Motion, Dkt. 44-1, p. 10:5-12. All allegations of fact opposing the Motion must be accepted as true. *Ibid.*

Here, the Plaintiffs cannot ***clearly*** meet this test: (1) the allegations as to exposure and inhalation of toxins in "small shops" and/or "home kitchens and bathrooms" does not rise to the level of widespread industrial pollution (as is required for the Total Pollution Exclusion to preclude a duty to defend), and (2) the Underlying Actions' allegations that the underlying plaintiffs were exposed to multiple other toxins is fatal to any claim that the Silica Exclusions preclude a duty to defend.

///

Because these exclusions ***do not clearly apply***, the Plaintiffs' duty to defend under controlling California law is established. <u>Walker v. Armco Steel Corp.</u>, 446 U.S. 740, 750 (1980) (California law is controlling as to substantive issues in this diversity action); <u>Montrose Chemical Corp. v. Sup. Ct.</u> (1993) 6 Cal. 4th 287, 301 (if an insurer cannot establish the absence of a duty to defend as a matter of law, the duty to defend is thus established). Plaintiffs are thus not entitled to judgment as a matter of law.

### B.      <u>The Relevant Legal Authorities Favor Coverage</u>

As aptly recognized by this Court in <u>American Zurich</u>, it is axiomatic that words in an insurance policy are to be interpreted according to their plain and ordinary meaning. *California Civil Code* §1644; <u>AIU Ins. Co. v. Sup. Ct.</u> (1990) 51 Cal. 3d 807, 814. As explained by the Supreme Court in <u>E.M.M.I Inc. v. Zurich American Ins. Co.</u> (2004) 32 Cal. 4th 465, 471 ("<u>***EMMI***</u>") and as applicable here:

> Furthermore, **policy exclusions are strictly construed [citations],** while exceptions to exclusions are broadly construed in favor of the insured [citations]. "'**[A]n insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear.** As we have declared time and again '**any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect.**' [Citation.] Thus, '**the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language.**' [Citation.] The exclusionary clause 'must be conspicuous, plain and clear.'" [Citation.] This rule applies with particular force when the coverage portion of the insurance policy would lead an insured to reasonably expect coverage for the claim purportedly excluded.' [Citation.]

<u>EMMI</u>, at p. 471 (emphasis added, citations omitted). In order to protect the objectively reasonable expectations of the insured, the ambiguities in the policies should be construed against the insurer, in favor of coverage, affording the greatest possible protection for the insured. <u>EMMI</u>, at pp. 470-471; <u>White v. Western Title Ins.</u>

*Co.* (1985) 40 Cal. 3d 870, 881 ("Whereas coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured… exclusionary clauses are interpreted narrowly against the insurer." (internal quotations and citations omitted)).

A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. *Waller v. Truck Inc. Exchange* (1995) 11 Cal. 4th 1, 18. The language in an insurance policy is to be interpreted as a whole, given the circumstances of the case. *Ibid.* "The proper question is whether the [provision or] word is ambiguous in the context of this policy and the circumstances of this case. [Citation.] 'The provision will shift between clarity and ambiguity with changes in the event at hand.' [Citation.]" *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal. 4th 854, 868.

### C. California Duty to Defend Law Requires A Defense Based on the Bare Potential for Coverage

California insurers owe a duty to defend if there is a "bare potential" or "possibility" that coverage exists. "To prevail, the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*. In other words, the insured need only show that the underlying claim *may* fall within the policy coverage; the insurer must prove it *cannot*." *Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal. 4th 287, 300 ("***Montrose I***"). The Supreme Court has long held that an insurer can avoid the duty to defend only if the underlying action, "can *by no conceivable theory* bring it within the policy coverage." *Gray v. Zurich Ins. Co.* (1966) 65 Cal. 2d 263, 276, fn. 15 (italics added). Indeed, as is applicable here, an insured can create the potential for coverage by merely communicating facts to the insurer which, if true, would lead to the potential for coverage. *Amato v. Mercury Cas. Co.* (1983) 18 Cal. App. 4th 1784, 1792.

In the instant case, Francini has made clear to Plaintiffs that it disputes (a) the allegations of the Underlying Actions; (b) any assertion that there was widespread dispersal of dust in relation to its operations; and (c) that silica from its operations

- 8 -

(as opposed to many of the other substances alleged) played any part at all in the plaintiffs' alleged injuries. See, Francini RFJN; Francini Answers in Underlying Actions.

As to the exclusionary clauses relied on by Plaintiffs here, in order to avoid the duty to defend, California law informs that "an insurer that wishes to rely on an exclusion has the burden of proving, through conclusive evidence, that the exclusion applies in all possible worlds." *Atlantic Mutual Ins. Co. v. J. Lamb, Inc.* (2002) 100 Cal. App. 4th 1017, 1039 ("***Atlantic Mutual***"). Further, in these type of "mixed" cases, where some of the allegations may be uncovered, yet others potentially covered, the scope of the defense obligation has been broadly defined by California courts as a full, complete, and immediate duty. *Haskel, Inc. v. Superior Court* (1995) 33 Cal. App. 4th 963, 976. The California Supreme Court has similarly described the timing and scope of an insurer's duty to defend as follows: "[t]o defend meaningfully, it must defend immediately. To defend immediately, it must defend entirely." *See* *Buss v. Superior Court* (1997) 16 Cal. 4th 35; *Aerojet-General Corp. v. Transport Indemnity Co.* (1997) 17 Cal. 4th 38.

In addition, as to the duty to defend, it has long been the rule that the third party pleader should not be permitted to be the arbiter of coverage. "Predicating coverage upon an injured party's choice of remedy or the form of the action sought is not the law of this state." *Vandenberg v. Sup. Ct.* (1999) 21 Cal. 4th 815, 840, citing *AIU Ins. Co. v. Sup. Ct.* (1990) 51 Cal. 3d 807, 824-825. Thus, it is the facts that are alleged which are controlling, where all the facts alleged, including those asserted by the insured, must be considered and construed in favor of the insured, as the duty to defend is more broad than the duty to indemnify, existing even where coverage is in doubt and may not ultimately develop. *Montrose I*, *supra*, at p. 295.

///

///

///

Finally, as is applicable here, "when the evidence adduced in the declaratory relief action does not permit the court to eliminate the possibility that the insured's conduct falls within the coverage of the policy, 'the duty to defend is then *established*, absent additional evidence bearing on the issue.'" Montrose I, at p. 301, quoting Horace Mann Ins. Co. v. Barbara B. (1993) 4 Cal. 4th 1076, 1085.

In the instant case, Plaintiffs cannot establish operation of their exclusions in all possible worlds by reference to conclusive, undisputed facts. Accordingly, the duty to defend is established and continues. Ibid.

### D. The Underlying Actions do not Clearly Arise out of Widespread, Conventional Environmental Pollution Within the Meaning of the Total Pollution Exclusion

As noted by the American Zurich Court in ruling that the Total Pollution Exclusion did not apply there, the California Supreme Court's 2003 holding in MacKinnon is controlling on the subject. In MacKinnon, the Supreme Court explained that "[e]ven commentators who represent the insurance industry recognize that the broadening of the pollution exclusion was intended primarily to exclude traditional environmental pollution rather than all injuries from toxic substances." MacKinnon at p. 644. Thus, where coverage is interpreted broadly so as to afford the greatest possible protection to the insured and exclusions are to be narrowly interpreted, "limiting the exclusion to environmental pollution … [is] reasonable in light of the purpose of CGL policies" to provide insureds with the broadest spectrum of protection against liability unintentional and unexpected personal injury arising out of the insured's business. Id. at 654.

Like Liberty Mutual in the American Zurich action, Plaintiffs here rely on the opinion in Garamendi v. Golden Eagle Ins. Co. (2005) 127 Cal. App. 4th 480, finding that the "widespread dissemination of silica dust as an incidental by-product of industrial sand blasting operations" at issue there could be considered environmental pollution. However, as noted by a leading insurance treatise, the Garamendi opinion

is of limited and doubtful value.

> The nature of the proceeding in the trial court and the standard of review before the court of appeal in *Garamendi v. Golden Eagle Ins. Co.*, 127 Cal. App. 4th 480, 25 Cal. Rptr. 3d 642 (1st Dist. 2005), **cast doubt on the decision's precedential value**. The court was reviewing the Insurance Commissioner's rejection of a claim in a liquidation proceeding rather than an insurer's denial of coverage. Because the Commissioner's decisions are reviewed under an abuse of discretion standard, the issue before the court was whether the Commissioner's coverage position was reasonable. The court did not need to address whether the policyholder's position also was reasonable for purposes of determining whether the policy was ambiguous.

John K. DiMugno & Paul E.G. Glad, *California Insurance Law Handbook*, § 45:37, fn. 1 (emphasis added).

Further, as noted by the *American Zurich* court in distinguishing the *Garamendi* facts, context matters—the "widespread" nature of the dispersal of dust, traveling over large distances, affecting 47 plaintiffs in *Garamendi*, was not comparable for this Court to find that the Total Pollution Exclusion applied to the dust allegedly being disseminated from the demolition and construction activities at the Boeing site at issue before it. *American Zurich* at *5.

> In the context of dust released from a demolition site, a layperson might reasonably interpret the pollution exclusion to not exclude more confined releases of dust, as such releases may not commonly be thought of as pollution. Thus *Garamendi* does not eliminate the possibility of coverage, and does not justify summary judgment here.

Thus, Liberty Mutual was required to share in the defense with its co-insurer, which had already acknowledged the potential for coverage there presented.

/ / /

MEMORANDUM ISO OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

Similarly, the Underlying Actions allege a ***localized*** dispersal of dust arising from the fabrication and cutting of kitchen and bathroom countertops at small shops and/or inside homes where each action involves injury to a single worker, with no evidence of overlap—a far different situation than was presented in Garamendi. Hanover asserts that the factors in relation to the pollution exclusion are limited and do not include widespread impact (*Motion*, p.18:10-15), but this factor was clearly considered by the MacKinnon Court and certainly courts thereafter. *See,* MacKinnon at pp. 651-652 (e.g., carbon monoxide might be a pollutant when released in an industrial or environmental setting, but not when emitted from a malfunctioning residential heater); Santaluz, LLC v. American Home Assurance Co., 2010 WL 11509307 *5-6 (S.D. Cal. 2010) (dispersal of sewer gas in two adjacent homes from negligently installed lines not widespread enough to meet MacKinnon requirements); American Zurich at *5, as quoted above.

In order to give the false appearance that the operations at issue here were similar to the sand blasting operations at issue in Garamendi, Plaintiffs go so far as to call them "industrial operation[s]", utilizing quotations with a citation to each complaint. (Motion, pp. 19:22-20:6.) However, **none** of Hanover's citations contain an allegation of an "industrial operation"—many of the complaints allege that the work was performed "mostly in homes" or "mostly in home kitchens and bathrooms." E.g., RFJN, Exh. 4, ¶ 81; Exh. 6, ¶ 37; Exh. 15, ¶ 61; Exh. 17, ¶ 35. Surely, if the alleged release of silica dust from a demolition and construction site at a Boeing facility does not constitute traditional environmental pollution, the alleged release of dust in a home kitchen or bathroom would be considered to be the same type of "confined release" not commonly thought of as pollution. American Zurich at *5. Even if it could be said that reasonable minds could differ as to the nature of the allegations, as did the two insurers in *American Zurich*, that is simply not enough to rule as a matter of law that Plaintiffs here have met their burden to prove, through undisputed conclusive facts, that the Total Pollution Exclusion applies to preclude

**MEMORANDUM ISO OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS**

coverage in all possible worlds.

In addition, the Ninth Circuit recently held that wildfire debris from California wildfires that was unloaded at a waste facility did not constitute a "pollutant" for purposes of the pollution exclusion because this was not "an event commonly thought of as pollution" under the *MacKinnon* decision, and that that any doubt as to whether the facts establish a defense duty must be resolved in the insured's favor. *Wesco Insurance Company v. Brad Ingram Construction*, 2024 WL 243344 *2 (9th Cir. 2024).

Finally, Plaintiffs also rely on two pre-*MacKinnon* cases, *Charles E. Thomas Co. v. Transamerica Ins. Group* (1998) 62 Cal. App. 4th 379 ("***Transamerica***") and *Titan Corp. v. Aetna Casualty & Surety Co.* (1994) 22 Cal. App. 4th 457 ("***Titan***") for the *implication* that anytime an Absolute Pollution Exclusion is endorsed to a policy it must be broadly applied to preclude coverage. Motion at p. 11:20-12:10, but close scrutiny reveals that neither case is on point.

Notably, the *Transamerica* action did *not* involve an Absolute Pollution Exclusion, finding that the underlying allegations, including a potentially covered claim for property damage based on loss of diesel fuel, fell outside the pollution exclusion before the court there. *Transamerica* at p. 383. In *dicta* (at pp. 383-384), the *Transamerica* court simply contrasted a federal trial court case from Oregon (also decided nearly 10 years prior to *MacKinnon*) that applied an absolute pollution exclusion under Oregon law to preclude coverage for property damage resulting from the spillage of 873 gallons of heating oil into the soils (which the parties stipulated was a pollutant), regardless of whether or not the damage was caused by the property owner or a third party. *Larsen Oil Co. v. Federated Service Ins. Co.*, 859 F. Supp. 434 (D. Oregon, 1994). The obvious distinction, of course, is that here the facts do not unequivocally (or otherwise) prove the type of widespread, traditional environmental pollution required for operation of the Absolute Pollution Exclusion under *MacKinnon* that would avoid Plaintiffs' duty to defend.

The *Titan* action, also decided prior to *MacKinnon*, is distinguishable—the *Titan* court found that while some of certain clean-up costs ordered by the New Jersey Department of Environmental Protection related to pollutants under an Absolute Pollution Exclusion (e.g., TCE (trichlorethylene) contamination of soils), the action also involved clean-up costs related to solid waste which "was not a contaminant nor was it cleaned up to prevent 'threatened discharge, dispersal, release or escape of pollutants'" within the meaning of the Total Pollution Exclusion, but nonetheless fell within the owned property exclusion of the policy. *Titan* at pp. 470-471.

While Absolute Pollution Exclusions are enforceable in the proper context supported by undisputed facts, they are not enforceable beyond the limiting law of *MacKinnon*, or the disputed facts before the Court here. Here, the allegations of localized dispersal of substances in small shops and/or home bathrooms and kitchens, simply does not clearly rise to the level of traditional environmental pollution. Plaintiffs are thus not entitled to avoid their defense obligations.

### E. Where the Underlying Actions Allege Injury From Other Substances In addition to Silica, A Duty to Defend is Owed

As explained by this Court in *American Zurich*, where the complaint allegations in the subject actions allege injuries from other substances *in addition to silica*, the duty to defend cannot be avoided based on the assertion of a Silica Exclusion, as it "would wipe out an enormous swath of CGL protections," that would not be within the reasonable expectations of the insured. *American Zurich* at *6. Notably, this finding was made where the exclusion extended to "allegations," as does the exclusion before the Court here:

///
///
///
///
///

| American Zurich at *2. | Motion, pp. 8:20-9:12 |
|---|---|
| This insurance does not apply to any liability, damages, loss, injury, demand, claim, or "suit" any part of which is caused by, or allegedly caused by, silica in any form or any substance containing silica, either alone or in combination with other substances or factors, whether included in a product or otherwise. | 2. Exclusions<br><br>This insurance does not apply to:<br><br>**Silica Or Silica-Related Dust**<br>a. "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust"...<br><br>C. The following definitions are added to the **Definitions** Section:<br><br>1. "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.<br>2. "Silica-related dust" means a mixture or combination of silica and other dust or particles. |

This finding, of course, makes logical sense as well, given California duty to defend law requiring that Plaintiffs prove application of their exclusions in all possible worlds, as to any conceivable theory, and in a manner that is consistent with and does not defeat the reasonable expectations of the insured. <u>Atlantic Mutual</u>, <u>supra,</u> at pp. 1037-1039; <u>Montrose I</u> at p. 300; <u>Gray v. Zurich Ins. Co., supra</u>.

Significantly, it is certainly possible that the result of any one or more of the Underlying Actions is a finding that silica had nothing whatsoever to do with the injuries alleged, that unrelated substances were at issue, and/or that Francini's ordinary negligence in relation to the conduct of its business, the very purpose for which one's commercial general liability coverage is purchased, is at issue. Accordingly, consistent with the <u>American Zurich</u> opinion, this court should also find that Plaintiffs here cannot meet their burden to establish operation of the Silica Exclusion consistent with California law.

> To interpret the Silica Exclusion Endorsement to preclude coverage even where it causes harm with dozens of other chemicals (see Molina Complaint ¶ 26) would wipe out an enormous swath of CGL protections, especially in industries like ICEB's. In short, interpreting the exclusion narrowly against Liberty, the fact that silica is involved in a lawsuit cannot negate any possibility of coverage sufficient to relieve Liberty of a duty to defend. Thus the Court cannot conclude that the Silica Exclusion Endorsement conclusively negates any possibility of coverage here and summary judgment is not appropriate.

*American Zurich* at *6.

## IV. CONCLUSION

The allegations of the Underlying Actions (and implications therefrom) are that there was a dissemination of dust that was confined and localized to home kitchens and bathrooms, and that this dust included numerous substances in addition to silica, including resins, pigments, other additives, metals, and other toxins. For the reasons set forth above, Plaintiffs thus have not (and cannot) meet their burden to establish that the Total Pollution Exclusion or the Silica Exclusion apply to the Underlying Actions as matter of law. Accordingly, Francini respectfully requests that Plaintiffs' Motion for Judgment on the Pleadings be denied in its entirety.

Respectfully submitted,

Dated: June 26, 2024            **SHERMAN LAW GROUP**

_____
Richard Lloyd Sherman, Esq.
Attorney for Defendant FRANCINI, INC.