STEPHEN M. HAYES (SBN 83538)
RYAN Z. KELLER (SBN 249193)
HAYES SCOTT BONINO
ELLINGSON & GUSLANI LLP
333 Twin Dolphin Road, Suite 230
Redwood City, California 94065
Telephone: (650) 637-9100
Facsimile: (650) 637-9101

Attorneys for Defendant
HANOVER AMERICAN INSURANCE COMPANY and
CITIZENS INSURANCE COMPANY OF AMERICA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANOVER AMERICAN INSURANCE COMPANY and CITIZENS INSURANCE COMPANY OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>FRANCINI, INC.; and DOES 1 through 100, Inclusive,<br><br>Defendants. | **CASE NO. 2:23-cv-10047-MRA-MAA**<br><br>**PLAINTIFFS HANOVER AMERICAN INSURANCE COMPANY AND CITIZENS INSURANCE COMPANY OF AMERICA'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>**Date:     July 18, 2024**<br>**Time:    1:30 p.m.**<br>**Dept.:    10B**<br><br>**Assigned for all Purposes to:**<br>**Judge Monica Ramirez Almadani**<br><br>Complaint Filed:  November 29, 2023<br>Trial Date:       Not Yet Set |

2126563

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS – CASE NO. 2:23-cv-10047-MRA-MAA**

## I. INTRODUCTION

Defendant fails to overcome the fact that the broad pollution and silica exclusions preclude coverage for the underlying lawsuits, which allege the underlying plaintiffs developed silicosis from exposure to silica.

The seminal California case of *Garamendi* found no duty to defend, and did not permit discovery, based on the same total pollution exclusion found here for bodily injury arising from exposure to silica. This matter is stronger than *Garamendi* because the Policies at issue here also include a broad silica exclusion, and the underlying plaintiffs here all allegedly suffered from silicosis, which is by definition caused by exposure to silica. Not once does defendant mention the word "silicosis" in its opposition because this allegation is fatal, and there is no defense to it.

California courts have consistently held the language of the Citizens and Hanover pollution exclusions are absolute exclusions, or even stronger because they are "total pollution" exclusions. Moreover, the broad silica exclusion, which includes similar language, should be considered an absolute (or total) exclusion like the pollution exclusion. The Policies exclude losses caused, whole or in part, by "pollutants" (which includes silica dust stemming from industrial operations under California law), and/or "silica" or "silica-related dust." The underlying lawsuits all allege losses caused by the underlying plaintiffs' exposure to silica from industrial operations during their employment. Clearly, the allegations and coverage of the underlying lawsuits fall squarely within the silica and/or pollution exclusions and

Plaintiffs have no duty to defend Francini. And where there is no duty to defend, there cannot be a duty to indemnify.

Defendant's opposition made no persuasive arguments for coverage, relying on an unreported, distinguishable case; an irrelevant treatise; and other unpersuasive interpretations of the legal standards surrounding the policy exclusions.

In comparing the allegations in the complaints of the underlying lawsuits to the unambiguous terms of the Policies[1], it is clear that Plaintiffs have no duty to defend, and therefore no duty to indemnify, as a matter of law.

## II. ANALYSIS

### A. Defendant Fails to Rebut the Fact The Policies' Exclusions Preclude Coverage

Silicosis is "caused by prolonged inhalation of silica dusts." *Silicosis*, Marriam Webster Dictionary (2024). Therefore, silica is present in, and a cause of, the injuries alleged in the underlying lawsuits.

*Garamendi* is the seminal California case for applying a total pollution exclusion for bodily injury caused by silica. *Garamendi v. Golden Eagle Ins. Co.*, 127 Cal.App.4th 480, 486 (2005) ("*Garamendi*"). In *Garamendi*, the underlying plaintiffs were employees exposed to silica throughout their employment. *Id.* at 483. It was unclear from the allegations "whether claimant [the insured] engages in

---

[1] The court in *Titan* held that all California courts have thus far found absolute pollution exclusions to be unambiguous. *Titan Corp. v. Aetna Casualty & Surety Co.*, 22 Cal.App.4th 457, 470 (1994). There are no allegations in Francini's answer, or

2126563                               2

sandblasting operations or sells equipment used in such operations." *Id.* at 486. The court found "widespread dissemination of silica dust as an incidental by-product of industrial sandblasting operations most assuredly is what is 'commonly thought of as pollution' and 'environmental pollution.'" *Id.* at 485–486. The Court of Appeal affirmed the trial court's ruling that there was no duty to defend where the complaints were based explicitly on the inhalation of silica dust arising from sandblasting operations, noting that an "insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date." [2] *Id.* at 488.

Here, the Policies include the total pollution exclusion like in *Garamendi*, and a silica exclusion that precludes coverage for bodily injury caused by inhalation of, or ingestion of, "silica" or "silica-related dust." These exclusions preclude coverage for the 17 lawsuits filed against defendant alleging each underlying plaintiff developed silicosis from exposure to silica from working with products manufactured, distributed, and/or supplied by all of the named defendants, including Francini.

---

contentions in opposition that either of these exclusions are ambiguous. Therefore, it is an undisputed fact that these exclusions are unambiguous.

[2] In *Garamendi*, the court refused to permit discovery "given the marginal value of any such discovery and the expedited nature of proceedings under" CA INS § 1032." *Id.* at 489. Here, like in *Garamendi*, discovery is unnecessary to determine the Policies' exclusions preclude coverage. The facts here are even stronger than in *Garamendi* where silicosis was not alleged leaving the potential for silica to not be a cause of the underlying injury, whereas here silicosis has been alleged in all 17 underlying lawsuits. Nor does defendant demand or request discovery in this matter.

2126563                                       3
**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS – CASE NO. 2:23-CV-10047-MRA-MAA**

## B.     Silica Exclusion: Silica Injuries Resulting in Silicosis Alleged in The Underlying Lawsuits Plainly "Arise Out Of" or "Relate To" Silica

The Policies exclude "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust", where "Silica-related dust" means a mixture or combination of silica and other dust or particles.

It is hard to imagine allegations that fall more squarely within this exclusion than where the underlying plaintiffs allege silicosis resulting from silica as is the case here. This protects the objectively reasonable expectations of the insured as the court observed was important in *American Zurich Ins. Co. v. James Gray* 2014 WL 11430928 (C.D. Cal. July 25, 2014) Case No. SACV 13-1966AG(JPRx).) (Opp. at p. 14, lines 17-21.) Defendant's contention that *American Zurich* limits the silica exclusion ignores that it broadly dealt with allegations of "toxic chemical products", and the plaintiffs allegedly suffered from systemic vasculitis, whereas there were no allegations that the plaintiffs developed silicosis, which necessarily results from silica. *Id*. at *1; Opp. at p. 14, lines 17-21.

Defendant fails to overcome the California caselaw that holds "arising out of or in any way related" policy language "broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship." *Medill v. Westport Ins. Corp.*, 143 Cal.App.4th 819, 830 (2006). Additionally, defendant fails to consider the policy language regarding the mixture or

Case 2:23-cv-10047-MRA-MAA   Document 52   Filed 07/03/24   Page 6 of 12   Page ID
 #:5633

combination of silica and other dust or particles. Defendant alleges that the "dust included numerous substances in addition to silica" (Opp. at p. 16, lines 13-14), which falls squarely within the Policies' definition of "Silica-related dust." By defendant's own admission the cause of injuries in the underlying lawsuits are excluded under the Policies.

### C. Total Pollution Exclusion Precludes Coverage For Bodily Injury Due In Part To The Release of Silica in Construction Workplace

#### a. The Policies' Total Pollution Exclusion Is the Broadest of Pollution Exclusions

The Total Pollution Exclusion is another independent basis to find that Plaintiffs have no duty to defend. While enough to preclude coverage on its own, it is made even stronger by the Policies also explicitly precluding coverage for silica.

California courts consider silica to be commonly thought of as a pollutant. *Garamendi, supra,* at 485–486 (2005); see also *The Villa Los Alamos Homeowners Association v. State Farm General Insurance Company*, 198 Cal.App.4th 522, 536 (2011) citing *Garamendi*.

In 1985, the "absolute exclusion" for pollution replaced the "qualified exclusion" because the "qualified exclusion" fell out of favor in response to court decisions interpreting it in favor of coverage. *MacKinnon*, 31 Cal.4th at 644. The *Garamendi* court in 2005 found language identical to the language in the Policies' Total Pollution Exclusion to be even stronger than an "absolute exclusion." *Garamendi*, at 486–488. The court found that the language expanded the exclusion

2126563                                   5
**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS – CASE NO. 2:23-CV-10047-MRA-MAA**

to claims of bodily injury which would not have occurred "but for" the discharge of the pollutant. *Id*. at 488. Not only is the Total Pollution Exclusion in the Policies stronger than that of an absolute exclusion, but the broad and specific silica exclusion bolsters the application of the more general pollution exclusion. See *Ortega Rock Quarry v. Golden Eagle Ins. Corp*. 141 Cal.App.4th 969, 981 (2006) (finding that "In an insurance policy, specific provisions rather than general provisions govern the insurance contract relating to a particular subject, even though the general provision, standing alone, would be broad enough to include the subject to which the more specific provision relates.")

The Citizens and Hanover pollution exclusion language states: "This insurance does not apply to: 'Bodily injury' or 'property damage' which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time.'" The Citizens and Hanover pollution exclusions are "total" exclusions. Moreover, the silica exclusion should be considered an absolute (or total) exclusion like the pollution exclusion. Under this broad interpretation, the policy language in the exclusions applies to all other claims alleged in the complaints of the underlying lawsuits as a matter of law, as they are a result of the alleged silica exposure.

### b. An Exclusion Precluding Coverage for Bodily Injury Caused in Part by the Pollutant of Silica Applies to an Industrial Workplace that Causes Silicosis

This matter is analogous to *Garamendi* in applying the Total Pollution

exclusion to find no duty to defend, as they both involve allegations of bodily injury from exposure to silica in an industrial workplace.

Defendant relies extensively on a single unreported and uncited case in this district with facts and policy language that differ enough to make this unpersuasive authority. (Defendant Francini, Inc.'s Memorandum Of Points And Authorities In Support Of Its Opposition To Motion For Judgment On The Pleadings ("Opp.") citing *American Zurich*.) *American Zurich* relates to multiple co-insurers' coverage dispute for an underlying lawsuit alleging negligence, among other causes of action, against the construction company that was "doing demolition and construction work at the Boeing facility where the plaintiffs worked" when they were exposed to the toxins. *Id.* at *1. This secondhand inhalation from nearby construction work is vastly different than the regular employment as a stone cutter and fabricator installing stone counters daily as your work not merely done "at the …facility where the plaintiffs worked."

Plaintiffs' injuries in the underlying lawsuits all arose out of their occupation as stone cutter and fabricators; this profession is more akin to industrial operation like in *Garamendi*. Additionally, in *American Zurich*, claimants did not have or allege silicosis, or any other disease associated with silica exposure; therefore, there was a potential that silica was not a cause of the injury, whereas here silica is irrefutably the cause of the silicosis injuries alleged in the underlying lawsuits. Further, the language in the silica exclusion here contains "in whole or in part" language which is

not present in the policy language in *American Zurich,* nor discussed in the case. Defendant proclaims this matter and *American Zurich* go hand-in-hand, when in fact they contain fundamental differences that alter the analysis and outcome of coverage.

Additionally, defendant attempts to write-off cases decided before *MacKinnon v. Truck Ins. Exchange*. (Opp. at p. 13 lines 9-28 referring to 31 Cal.4th 635, 653 (2003).) While *MacKinnon* requires courts to "attempt to put itself in the position of a layperson and understand how he or she might reasonably interpret the exclusionary language" to determine whether an injury-causing event would commonly be thought of as pollution, i.e., environmental pollution, it did not overrule all precedent related to policy exclusion interpretation. The policies in *MacKinnon* did not contain "whole or in part language." Both *Transamerica* and *Titan* are still good law, and they support the fact California courts consider "in whole or in part" policy language to be an absolute exclusion, broadly excluding coverage. *Charles E. Thomas Co. v. Transamerica Ins. Group*, 62 Cal.App.4th 379, 384 (1998) ("*Transamerica*"); *Titan Corp. v. Aetna Casualty & Surety Co.*, 22 Cal.App.4th 457, 470 (1994).

Moreover, defendant improperly creates and applies a standard of "widespread, conventional environmental pollution within the meaning of the total pollution exclusion." (Opp at p. 10 lines 9-11.) The Total Pollution Exclusion makes no reference of the term "widespread." The term "widespread" is plainly not included in any standard or test. Two cases cited by both parties reference the term

"widespread" or "spread widely", but neither makes "widespread" a factor to determine what is "pollution." *MacKinnon*, 31 Cal.4th at 651 (references the definition of "disperse" was to "cause to become spread widely"); *Garamendi*, at 486 (2005) (using "widespread" to differentiate between *MacKinnon*'s "residential use of a pesticide for the purpose of killing insects, [vs.] the widespread dissemination of silica dust as an incidental by-product of industrial sandblasting operations"). In fact, *Garamendi* specifically states "there need not be 'wholesale environmental degradation'. . . to constitute pollution", demonstrating an unwillingness to limit the scope of what constitutes a pollution to those that classify as "widespread" or "'wholesale environmental degradation." *Garamendi*, at 486.

Further, defendant alleges this case is so dissimilar from *Garamendi* that it should not apply because the underlying lawsuits "allege a localized dispersal of dust" occurring at "small shops and or inside homes" and was not an industrial operation. (Opp. at p. 12s, lines 1-6.) However, this fails to capture the true language and intent of the complaints, which described the work the underlying plaintiffs performed as "cut, ground, drilled, edged, polished, fabricated and installed artificial stone and natural stone countertops…" for their various stone fabrication and installation employers. The alleged silica-related injuries in the underlying lawsuits arose out of the industrial cutting and fabricating operations of plaintiffs' employment. Irrespective of size or location of the workspace, it is undisputed the cutting, drilling, edging, polishing, fabricating, and installing of stone counters took

place consistently for many years in a work environment, which constitutes traditional environmental pollution within their respective workspace.

Defendant was unable to find any binding or persuasive authority, and it resorted to citing a footnote in a "leading insurance treatise" in an attempt to diminish the persuasive holding in *Garamendi*, which has been good law in California courts for nearly two decades (including being cited by this court five times). (Opp. at p. 10, line 28 to p. 11 line 12)

Defendant also attempts to show other "persuasive" situations that courts have ruled are not commonly thought of as pollutants, such as wildfire debris unloaded at a waste facility, which are irrelevant since California courts have found and upheld that silica is "most assuredly is what is 'commonly thought of as pollution.'" *Garamendi* at 485–486.

Defendant's arguments and legal support are unpersuasive and fail to demonstrate a potential for coverage.

### III.   CONCLUSION

Defendant fails to overcome the fact the pollution and silica exclusions preclude coverage. For the reasons set forth in the opening brief and above, Plaintiffs respectfully request that the Court grant its motion for judgment on the pleadings. In comparing the allegations in the complaints of the underlying lawsuits to the unambiguous terms of the Policies, it is clear that Plaintiffs have no duty to defend, and therefore no duty to indemnify, as a matter of law.

1  Dated: July 3, 2024				HAYES SCOTT BONINO
						ELLINGSON & GUSLANI, LLP
2

3

4						By:   */S/ Ryan Z. Keller*
						STEPHEN M. HAYES
5						RYAN Z. KELLER
						Attorneys for Plaintiffs
6						HANOVER AMERICAN INSURANCE
						COMPANY and CITIZENS INSURANCE
7						COMPANY OF AMERICA