**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HANOVER AMERICAN INSURANCE CO. and CITIZENS INSURANCE COMPANY OF AMERICA,<br>Plaintiffs,<br>v.<br>FRANCINI, INC.; and DOES 1 through 100, Inclusive,<br>Defendants. | Case No. 2:23-cv-10047-MRA-MAA<br>**ORDER GRANTING PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS [ECF 44]** |

Before the Court is Plaintiffs' Motion for Judgment on the Pleadings. ECF 44. The Court read and considered the moving, opposing, and reply papers and held a hearing on the Motion. ECF 64. For the reasons stated herein, the Court **GRANTS** the Motion.

## I. BACKGROUND

Two insurance companies brought this action to resolve whether they have a duty to defend and indemnify Francini, Inc., a company that imports and distributes stone products, in connection with state court litigation against Francini related to its products. ECF 1.

The state litigation involves more than a dozen separate lawsuits by individuals who allege they developed silicosis—a lung disease caused by inhaling silica dust—by working with Francini's quartz stone product.

Plaintiff Hanover American Insurance Company ("Hanover") issued a Commercial General Liability Policy to Defendant Francini, Inc. ("Defendant" or "Francini") with effective dates of August 20, 2016, to August 20, 2017. *Id.* ¶ 7. Citizens Insurance Company of America ("Citizens") issued a Commercial General Liability Policy to Francini with effective dates of August 20, 2019, to August 20, 2021. *Id.* ¶ 8. Both Hanover's and Citizens' (collectively, "Plaintiffs") insurance policies (the "Policies") endorse the same Commercial General Liability Coverage Form (the "Form"). *Id.* ¶ 9.

The Form states that the insurance covers "bodily injury" only if: "(1) [t]he 'bodily injury . . . is caused by an 'occurrence' that takes place in the 'coverage territory,'" and "(2) [t]he 'bodily injury' . . . occurs during the policy period[.]" *Id.* ¶ 9. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* ¶ 12. The Form includes a "Total Pollution Exclusion Endorsement," which modifies the insurance provided to Defendant to exclude "[b]odily injury . . . which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time . . . ." *Id.* ¶ 10 (internal quotation marks omitted). In addition, and most relevant here, the Form includes a "Silica or Silica-Related Dust Exclusion," which modifies the insurance provided to Defendant to exclude "'[b]odily injury' arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of 'silica' or 'silica-related dust[.]'" *Id.* ¶ 11.

Plaintiffs' request for declaratory judgment arises from a series of 17 state lawsuits filed against Francini (and other defendants) between 2021 and 2023, alleging injuries that occurred during the relevant policy periods. *Id.* ¶ 13; ECF 44-1 at 6. On June 7, 2021, after the first case, *Victor Gonzalez, et al. v. Francini, Inc. et al.*, was filed, Plaintiffs sent a letter to Defendant agreeing to participate in its defense under a complete reservation of

rights related to whether the silica and pollution exclusions prevented coverage. ECF 1 ¶ 14. On September 27, 2023, Plaintiffs sent a second letter to Defendant agreeing to participate in its defense against the 16 other suits under the same complete reservation of rights related to the silica and pollution exclusions. *Id.* ¶ 15.

The underlying state actions are all substantially similar. They are brought against Francini and other companies, alleging that underlying plaintiffs suffer from silicosis and related conditions and consequential injuries because of their exposure to silica and silica-related dust while working with underlying defendants' products.[1] *See, e.g.*, ECF 44-2 at 351 (Compl., *Estrella-Moreno, et al. v. All Natural Stone, et al.*, San Francisco County Superior Court Case No. CGC-23-605643, Apr. 5, 2023). Plaintiffs allege they inhaled dust from cutting, grinding, drilling, and polishing these products as part of their work. *Id.*

In each complaint, the allegations against Francini in particular concern the silica-related dust created by working with Francini's stone products. The *Gonzalez* Complaint alleges, for example, that on the Safety Data Sheet for its quartz product, Francini "identifies the ingredients of [its] product as >91% Crystalline Silica and other natural stone and 0-7% Polymeric resin & additives." ECF 44-2 ¶ 252 at 1243. The Safety Data Sheet also warns that the product "[c]auses damage [to the] respiratory system through prolonged or repeated exposure by inhalation." *Id.* ¶ 254 at 1243. The *Gonzalez* Complaint alleges that "[t]his statement is inadequate to prevent silicosis," and that the instruction not to breathe the product is "inadequate and harmful" because "dust is always generated during the fabrication of artificial stone products" and "workers must breathe to work and

---

[1] The Court takes judicial notice of the underlying complaints against Defendant, (ECF 44-2; ECF 53) and Defendant's underlying answers (ECF 51). Neither party opposes this. Under Federal Rule of Evidence 201, [t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Courts "may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal citations omitted).

to live," and the "instruction does not inform workers how they can do their work without breathing dust from the product." *Id.* ¶ 255 at 1243. The instructions to wash hands and face after handling the product also do not "protect workers from silicosis, because crystalline silica does not present an appreciable health hazard by skin absorption." *Id.* ¶ 256 at 1244. The Complaint further states that, although the Safety Data Sheet instructs to "[w]ear respiratory protection," which is important because "adequate respiratory protection is essential to prevent silicosis from fabricating the product," the instruction is "grossly inadequate" without more details. *Id.* ¶ 258 at 1244; *see also, e.g., id.* at 1244-45; *id.* at 111-113 (alleging same); *id.* at 1029-30 (alleging same); *id.* at 1480-83 (alleging same).

Plaintiffs seek declaratory relief that they have no duty to defend or indemnify Defendant in the underlying state actions due to the Policies' pollution and silica exclusions. *Id.* ¶¶ 16-17; 22-23. Plaintiffs contend that an actual controversy exists concerning the rights and duties under the Policies issued to Defendant, and that a judicial determination is necessary and appropriate for the parties to ascertain their rights, duties, and obligations under the Policies. *Id.* ¶¶ 18, 20, 24-25. On February 2, 2024, Defendant timely filed its Answer. ECF 19. On March 26, 2024, Plaintiffs filed their Motion for Judgment on the Pleadings. ECF 44. Defendant opposes the Motion. ECF 50. The Court held a hearing on August 15, 2024. ECF 64. No pretrial or trial dates or deadlines have been set pending resolution of this Motion.

## II. LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Motions for judgment on the pleadings are "functionally identical to Rule 12(b)(6) motions." *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1201 (9th Cir. 2021) (quoting *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011)) (internal quotation marks omitted). Therefore, "when ruling on either type of motion 'courts must consider the complaint in its entirety, as well as other sources . . ., in particular, documents incorporated

into the complaint by reference, and matters of which a court may take judicial notice.'" *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)).

On a motion for judgment on the pleadings, "[j]udgment is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *San Francisco Taxi Coal. v. City & Cnty. of San Francisco*, 979 F.3d 1220, 1223 (9th Cir. 2020). "A plaintiff is not entitled to judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery." *Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989). "Similarly, if the defendant raises an affirmative defense in his answer it will usually bar judgment on the pleadings." *Id.* (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1368 (1969)).

## III. DISCUSSION

### A. Insurance Coverage Principles

Liability insurance policies "provide that the insurer has a duty to indemnify the insured for those sums that the insured becomes legally obligated to pay as damages for a covered claim." *Aerojet-General Corp. v. Transport Indem. Co.*, 17 Cal. 4th 38, 56 (1997).[2] "An insurance policy is interpreted according to the plain meaning a layperson would ordinarily give it unless the parties used a word or phrase in a technical sense or it has special meaning due to usage." *Emps. Mut. Cas. Co. v. Philadelphia Indem. Ins. Co.*, 169 Cal. App. 4th 340, 348 (2008). "Ambiguities or uncertainties are resolved against the insurance company so that, if feasible, the policy will indemnify the loss to which the insurance relates. These rules exist to protect the insured's reasonable expectation of coverage. Coverage clauses are interpreted broadly and exclusionary clauses are interpreted narrowly." *Id.* However, when interpreting insurance policy language, "[c]ourts will not strain to create an ambiguity where none exists." *Waller v. Truck Ins.*

---

[2] In a diversity action, such as this case, California law is controlling as to substantive legal issues. *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 750 (1980).

*Exch., Inc.*, 11 Cal. 4th 1, 18-19 (1995). "Where the policy language is clear and unambiguous, the insured reasonably can expect only the coverage afforded by the plain language of the contract." *Merrill Seeley, Inc. v. Admiral Ins. Co.*, 225 Cal. App. 3d 624, 630 (1990).

An insurer's duty to indemnify "runs to claims that are actually covered, in light of the facts proved. It arises only after liability is established and as a result thereof." *Aerojet-General Corp.*, 17 Cal. 4th at 56. The duty to defend, on the other hand, is broader than the duty to indemnify: the insured is entitled to a defense if the underlying complaint shows that the insured's liability for damages is *potentially* covered under the policy, or if the underlying complaint might be amended to give rise to a liability that would be covered under the policy. *Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287, 299 (1993) (citing *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275-76 (1966)). "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Id.* at 299-300 (citing *United Pac. Ins. Co. v. McGuire Co.*, 229 Cal. App. 3d 1560, 1567 (1991); *CNA Cas. of Cal. v. Seaboard Sur. Co.*, 176 Cal. App. 3d 598, 605 n.1 (1986); *Eichler Homes, Inc. v. Underwriters at Lloyd's London*, 238 Cal. App. 2d 532, 538 (1965)).

Although the duty to defend is broad, it is not unlimited: "it is measured by the nature and kinds of risks covered by the policy." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993). To determine if there is a duty to defend, courts "compar[e] the allegations of the complaint with the terms of the policy." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 19 (1995). "[T]he insurer need not defend if the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." *Montrose*, 6 Cal. 4th at 300 (quoting *Gray.*, 65 Cal. 2d at 276 n.15). This language "cannot reasonably be understood to refer to anything beyond a bare 'potential' or 'possibility' of coverage as the trigger of a defense duty." *Id.* But "[a]n insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date. This approach misconstrues the principle of 'potential liability' under an insurance

policy." *Garamendi v. Golden Eagle Ins. Co.*, 127 Cal. App. 4th 480, 488 (2005) (quoting *Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1114 (1995)).

**B. <u>The Silica Exclusion</u>**

Plaintiffs argue that they do not owe Defendant a duty to defend or indemnify because all the underlying state actions against Francini allege bodily injury arising from silica, and the Policies contain silica and pollution exclusions. ECF 44-1 at 5. Francini responds by arguing that the silica exclusion does not apply because the underlying state actions involve allegations that *other* harmful chemicals, not just silica, caused underlying plaintiffs' injuries. As result, Francini maintains that it remains possible that a court could find that silica "had nothing whatsoever to do with the injuries alleged." ECF 50 at 19.

As noted above, in determining whether the insurer has a duty to defend, "courts must focus on the nature of the risk and the injury, *in light of the policy provisions*, to make that determination." *Vandenberg v. Superior Ct.*, 21 Cal. 4th 815, 840 (1999) (emphasis added). In support of its position, Francini relies heavily on *American Zurich Insurance Company v. James N. Gray Company*, No. SACV 13-1966 AG (JPRx), 2014 WL 11430928 (C.D. Cal. July 25, 2014), in which the court found that the duty to defend could not be avoided based on a silica exclusion, where the complaint in the underlying action alleged injuries from other substances in addition to silica. ECF 50 at 18 (citing *American Zurich*, 2014 WL 11430928, at *6). The plaintiffs in the underlying case worked for Boeing and sued contractor defendants who were doing demolition and construction work at the Boeing facility where plaintiffs worked. *American Zurich*, 2014 WL 11430928, at *1. They alleged that the defendants breached a duty of care by doing their demolition work negligently and causing "toxins, including dust and silica, to enter the air at the Boeing job site where [plaintiffs] worked, which was then breathed by [plaintiffs]." *Id.* Specifically, they alleged being exposed to toxic chemical products "contain[ing] significant concentrations of aromatic solvents, aliphatic solvents, naphthenic solvents, chlorinated solvents, other organic solvents, silica, and other toxic chemicals." *Id.* Based on these allegations, the court found that the silica exclusion in the insurance policies did

not absolve the insurance company of its duty to defend because the insurance company had not eliminated any possibility of coverage where silica, which is found in many commonplace materials, is alleged to cause harm with dozens of other chemicals.

Here, unlike in *American Zurich*, the primary injuries alleged in the underlying state actions are silicosis (which is caused by silica inhalation) and resulting complications from that lung disease—that is, silica is not alleged as merely one of many potential chemicals causing the underlying plaintiffs' injuries, but as the *main* chemical contributing to their injuries. Indeed, the whole of each underlying complaint is focused on the dangers of exposure to crystalline silica that working with artificial stone presents; they include long histories on these silica-specific risks, and narratives about Francini's and other underlying defendants' knowledge of these risks and prior cases against them based on silica exposure. *See generally* ECF 44-2 (attaching underlying complaints as exhibits).

Moreover, on the face of the complaints, all allegations against Francini specifically address the crystalline silica in Francini's artificial stone products. They allege that Francini identifies the ingredients of its stone products as more than 91% Crystalline Silica and other natural stone and 0-7% Polymeric resin and additives; provides insufficient warnings about exposure to crystalline silica; and provides insufficient instructions for preventing exposure to crystalline silica. These allegations are all focused on the risk of silica exposure, silicosis, and injuries related to silicosis that Francini's products allegedly pose.

The Court now compares "the allegations of the complaint with the terms of the policy." *Waller*, 11 Cal. 4th at 19. The silica exclusion provides that the insurance policies do not apply to "bodily injuries" arising "in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, 'silica' or 'silica-related dust.'" *See* ECF 1 at 7. "Silica-related dust" is defined as "a mixture or combination of silica and other dust or particles." *Id.* The Form defines "bodily injury" as "bodily injury, sickness or disease sustained by a person including death resulting from any of these at any time." *Id.* ¶ 12. The allegations against Francini specifically concern the crystalline silica produced

by Francini's quartz product. All the allegations against Francini are specific to silica or silica-related dust. The recovery sought against Francini is based on bodily injuries, sickness, or disease caused by that silica or silica-related dust. The policy language is clear and unambiguous. These bodily injuries, which arise from silica or silica-related dust, fall squarely within the bounds of coverage Plaintiffs sought to exclude from their Policies. *See Montrose*, 6 Cal. 4th at 297 (explaining that "the insurer is not required to defend an action against the insured when the complaint in that action shows on its face that the injury complained of is not only not covered by, but is excluded from the policy"); *cf. 24th & Hoffman Invs., LLC v. Northfield Ins. Co.*, 82 Cal. App. 5th 825, 839 (2022) (explaining that an insurer "is free to limit the risk it assumes by contract, and [courts] may not rewrite the contract for any purpose.").

Thus, the Court finds that Plaintiffs do not have a duty to defend Defendant in the underlying state litigation. And because there is no duty defend, there is also no duty to indemnify. *Certain Underwriters at Lloyd's of London v. Superior Ct.*, 24 Cal.4th 945, 958 (2001).

Because the Court finds that the Silica Exclusion applies, it need not address whether the pollution exclusion absolves Plaintiffs as well from defending Francini in the underlying state actions.

In addition, even though Defendant alleges 31 affirmative defenses in its Answer to the Complaint, *see* ECF 19, it does not argue that these are sufficient to defeat the instant Motion as a matter of law, *see* ECF 50. "Therefore, because Defendant[] ha[s] failed to respond to Plaintiff[s'] argument that Defendant['s] affirmative defenses are [insufficient] as a matter of law, the court concludes that Defendant[] ha[s] waived the argument." *Shagoofa v. Eshaqzi*, No. 8:22-cv-01824-FWS-JDE, 2024 WL 1600657, at *3 (C.D. Cal. Feb. 26, 2024).

### C. <u>Leave to Amend</u>

If the court grants judgment on the pleadings, it may grant the non-moving party leave to amend, grant dismissal, or enter a judgment. *See Lonberg v. City of Riverside*, 300

F. Supp. 2d 942, 945 (C.D. Cal. 2004). "If a court grants a motion for judgment on the pleadings, leave to amend should be granted unless such amendment would be futile." *Sec. & Exch. Comm'n v. Payward, Inc.*, No. 23-cv-06003-WHO, 2025 WL 314001 (N.D. Cal. Jan. 24, 2025) (citing *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Dist. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) ("[Leave to amend] is properly denied . . . if amendment would be futile.").

Here, the Court is skeptical that Defendant can amend the Answer to cure the deficiencies identified herein consistent with the existing Answer and this Order. *See United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) ("Leave to amend is warranted if the deficiencies can be cured with additional allegations that are 'consistent with the challenged pleading' and that do not contradict the allegations in the original [pleading]." (quoting *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990)). Nevertheless, the Court **GRANTS** Defendant the opportunity to amend its Answer consistent with all Rule 11 obligations. Any amended answer shall be filed within **21 days** of the date of this Order. Defendant shall attach to the amended Answer a redline copy reflecting all additions and deletions of material from the Answer. If an amended Answer is not timely filed, the Court will enter judgment in favor of Plaintiffs.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANT**S Plaintiffs' Motion for Judgment on the Pleadings, with leave to amend the Answer.

**IT IS SO ORDERED.**

Dated: March 27, 2025

HON. MONICA RAMIREZ ALMADANI
UNITED STATES DISTRICT JUDGE