1  STEPHEN M. HAYES (SBN 83583)
   shayes@hayesscott.com
2  RYAN Z. KELLER (SBN 249193)
   rkeller@hayesscott.com
3  HAYES SCOTT BONINO ELLINGSON & GUSLANI LLP
4  333 Twin Dolphin Road, Suite 230
   Redwood City, California 94065
5  Telephone:  650.637.9100

6
   Attorneys for Plaintiffs
7  HANOVER  AMERICAN  INSURANCE  COMPANY  and
   CITIZENS INSURANCE COMPANY OF AMERICA
8

9             UNITED STATES DISTRICT COURT

10           CENTRAL DISTRICT OF CALIFORNIA

11 | HANOVER AMERICAN INSURANCE       | CASE NO. 2:23-cv-10047-MRA-MAA
12 | COMPANY and CITIZENS             |
   | INSURANCE COMPANY OF             | PLAINTIFFS HANOVER
13 | AMERICA,                         | AMERICAN INSURANCE
14 |                                  | COMPANY AND CITIZENS
   |              Plaintiffs,          | INSURANCE COMPANY OF
15 |                                  | AMERICA'S MEMORANDUM OF
   |       vs.                        | POINTS AND AUTHORITIES IN
16 |                                  | SUPPORT OF ITS MOTION FOR
17 | FRANCINI, INC.; and DOES 1 through | JUDGMENT ON THE PLEADINGS
18 | 100, Inclusive,                  |
   |                                  | Date:       August 18, 2025
19 |              Defendants.         | Time:       1:30 p.m.
   |                                  | Dept.:      9B
20 |                                  |
21 |                                  | Assigned for all Purposes to:
22 |                                  | Judge Mónica Ramírez Almadani
23 |                                  | Complaint Filed:  November 29, 2023
   |                                  | Trial Date:       Not Yet Set
24
25 ///
26 ///
27 ///
28 ///

2274081

1

2

# TABLE OF CONTENTS

Page(s)

3

I.      INTRODUCTION .................................................................................1

4

II.     FACTUAL BACKGROUND .................................................................3

5

        A.     Underlying Actions ...................................................................3

        B.     Plaintiffs' Insurance Policies....................................................3

6

III.    LEGAL STANDARDS ..........................................................................6

7

        A.     Judgment On The Pleadings .....................................................6

        B.     Policy Interpretation.................................................................7

8

IV.     PLAINTIFFS HAVE NO DUTY TO DEFEND OR INDEMNIFY

9       FRANCINI .............................................................................................7

        A.     Duty To Defend Determined At The Outset.............................7

10

        B.     Interpretation Of Relevant Policy Language ............................8

11

        C.     Plaintiffs Have No Duty To Defend Under The Policies'
               Silica Or Silica-Related Dust Exclusion ..................................9

12

        D.     Plaintiffs Have No Duty To Defend Under The Policies'

13             Total Pollution Exclusion.......................................................16

V.      FRANCINI'S AFFIRMATIVE DEFENSES DO NOT DEFEAT

14      JUDGMENT ON THE PLEADINGS....................................................22

15

VI.     LEAVE TO AMEND WOULD BE FUTILE ........................................24

VII.    CONCLUSION ....................................................................................25

16

17

18

19

20

21

22

23

24

25

26

27

28

-i-

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
JUDGMENT ON THE PLEADINGS – CASE NO. 2:23-cv-10047-MRA-MAA**

1

# TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*24th & Hoffman Investors, LLC v. Northfield Insurance Company*,
  82 Cal.App.5th 825 (2022) ...................................................................7, 8

5

*AIU Ins. Co. v. Superior Court*,
  51 Cal.3d 807 (1990) ...............................................................................7

6

7

Aram Logistics v. United States Liability Insurance Company,
2024 WL 390076, at

8

*6...................................................................................................................24

9

*Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*,
  718 F.Supp.2d 1167 (N.D. Cal. 2010)...........................................17,23

10

*Certain Underwriters at Lloyd's of London v. Superior Court*,
  24 Cal.4th 945 (2001) ............................................................................13

11

12

*Charles E. Thomas Co. v. Transamerica Ins. Group*,
  62 Cal.App.4th 379 (1998) ..........................................................7, 8, 15

13

*Doleman v. Meiji Mut. Life Ins. Co.*,
  727 F.2d 1480 (9th Cir. 1984) ................................................................6

14

*Garamendi v. Golden Eagle Ins. Co.*,
  127 Cal.App.4th 480 (2005) ...............................................14, 15, 17,18 25

15

16

*General Conference Corp. of Seventh-Day Adventists v. Seventh-Day
  Adventists Congregational Church*, 887 F.2d 228 (9th Cir. 1989)..............17,22

17

*Gomez v. J. Jacobo Farm Labor Contractor, Inc.*,
  188 F.Supp.3d 986 (E.D. Cal. 2016) ..........................................18,23

18

19

Griffin Dewatering Corp. v. Northern Ins. Co. of New York,
176 Cal.App.4th 172, 178, n.3
(2009)................................................................................................... 17

20

21

Haas v. Travelex Insurance Services Inc.,
  555 F.Supp.3d 970, 975 (C.D. Cal. 2021)..................................................24

22

*In re Honest Co., Inc. Sec. Litig.*,
  343 F.R.D. 147 (C.D. Cal. 2022)...........................................................18,23

23

24

*Inns-by-the-Sea v. California Mutual Ins. Co.*,
  71 Cal.App.5th 688 (2021) ..................................................................7, 8

25

*J&J Sports Productions, Inc. v. Bear*,
  No. 1:12-cv-01509, 2013 WL 708490 (E.D. Cal. Feb. 26, 2013)................17,23

26

27

28

2274081

-ii-

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
JUDGMENT ON THE PLEADINGS – CASE NO. 2:23-cv-10047-MRA-MAA**

*Joe Hand Promotions, Inc. v. Estradda*,
No. 1:10-cv-02165-OWW-SKO, 2011 WL 2413257 (E.D. Cal. June
8, 2011) ...........................................................................................18,24

*MacKinnon v. Truck Ins. Exchange*,
31 Cal.4th 635 (2003) .............................................................14,18,20

*McGlinchy v. Shell Chemical Co.*,
845 F.2d 802 (9th Cir.1988) ................................................................6

*Northfield Ins. Co. v. Sandy's Place, LLC*,
530 F. Supp. 3d 952 (E.D. Cal. 2021) ...............................................6

*Ocean Towers Hous. Corp. v. Evanston Ins. Co.*,
772 F.App'x 459 (9th Cir. 2019) .....................................................6, 7

*Pit River Tribe v. Bureau of Land Mgmt.*,
793 F.3d 1147 (9th Cir. 2015) ......................................................17,22

*Qwest Communications Corp. v. City of Berkeley*,
208 F.R.D. 288 (N.D. Cal. 2002) ........................................................6

*Sherwin-Williams Co. v. Courtesy Oldsmobile-Cadillac, Inc.*,
No. 1:15-cv-01137, 2016 WL 615335 (E.D. Cal. Feb. 16, 2016)................18,23

*Solis v. Zenith Capital, LLC*, No. 08-cv-4854, 2009 WL 1324051, at *7
(N.D. Cal. May 8, 2009)

*The Villa Los Alamos Homeowners Association v. State Farm General
Insurance Company*, 198 Cal.App.4th 522 (2011)...........................14, 17,20,21

*Titan Corp. v. Aetna Casualty & Surety Co.*,
22 Cal.App.4th 457 (1994) ..................................................................7

*Travelers Property Casualty Company of America v. City of Los Angeles
Harbor Department*, No. CV 15-7799-GW(AJWX)) 2016 WL
11520822 (C.D. Cal. 2016)............................................................14, 15,18,20

*Vogel v. Huntington Oaks Delaware Partners, LLC*,
291 F.R.D. 438 (C.D. Cal. 2013)...................................................17,23

*Waller v. Truck Ins. Exchange, Inc.*,
11 Cal.4th 1 (1995) ..........................................................................7, 8

*Westoil Terminals Co. v. Indus. Indem. Co.*,
110 Cal.App.4th 139 (2003) ................................................................7

**Statutes**

Civ. Code, § 1636 .................................................................................7

**Regulations**

Title 8, § 5204, of the California Code of
Regulations.............................................................................................19

2274081

-iii-

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
JUDGMENT ON THE PLEADINGS – CASE NO. 2:23-cv-10047-MRA-MAA**

# I.    INTRODUCTION

Plaintiffs' motion for judgment on the pleadings should be granted again as there is no potential for coverage, and thus no duty to defend, under Plaintiffs' insurance policies. Defendant has proven that leave to amend would be futile.

As this court properly ruled on March 27, 2025, Plaintiffs Hanover American Insurance Company ("Hanover") and Citizens Insurance Company of America ("Citizens") (collectively "Plaintiffs") insurance policies exclude coverage for the 17 underlying state court actions referenced in the Complaint and Plaintiffs have no duty to defend or indemnify their insured, Defendant Francini, Inc. ("Francini.") The additional 52[1] complaints cited in Francini's Counterclaims are substantively identical, and thus they must suffer the same fate (collectively, the 69 lawsuits at issue in the Complaint and Counterclaims are referred to as the "Underlying Actions"). The Underlying Actions are nearly all filed by one law firm with a copycat approach where the allegations are often repeated verbatim.[2]

Plaintiffs issued commercial general liability policies to Francini which contain both a broad silica or silica-related dust exclusion and a total pollution exclusion. These exclusions preclude coverage for the Underlying Actions filed against Francini alleging each plaintiff developed silicosis from exposure to silica or silica-related dust from working with products manufactured, distributed, and/or supplied by all the named defendants, including Francini.

Insurance policy interpretation is governed by state law. California courts have consistently held the language of the policies' applicable exclusions are absolute

---

[1] The Counterclaims erroneously cite 53 additional actions; however, the *Melendez-Murillo* action, case number 23STCV08596, is already included in the 17 lawsuits at issue in the Complaint.

[2] The Metzger Law Group filed, or is co-counsel for, 67 out of 69 Underlying Actions. Waters Kraus Paul & Siegel filed *Hugo Casteneda Merida* matter, case no. 24STCV11894. The Ammons Law Firm LLP, Johnston & Hutchinson LLP, and Law Offices of Roland L. Tijerina filed *Ignacio Ladino-Castillo* matter, case no. 24STCV29112. They all apply the same format will nearly identical allegations.

-1-

exclusions, excluding coverage for damage resulting from the exclusion. The policies exclude losses caused, in whole or in part, by "silica" or "silica-related dust" and/or "pollutants". The Underlying Actions all allege losses caused by plaintiffs' exposure to silica or silica-related dust. Silica is a pollutant under California law. Clearly, the allegations and coverage of the Underlying Actions fall squarely within the silica and/or pollution exclusions and Plaintiffs have no duty to defend Francini. And where there is no duty to defend, there cannot be a duty to indemnify.

In granting Plaintiffs' motion for judgment on the pleadings, this court found there was no duty to defend or indemnify Francini in the 17 underlying actions under the policies. The order further held that while the court was "skeptical that Defendant can amend the answer to cure the deficiencies identified", Francini was permitted to file an amended answer. Francini's amended answer, including the amended affirmative defenses, [Dkt. 71] fails to cure the deficiencies identified in the order. There are also no allegations contained in Francini's counterclaim that would defeat this motion.

Francini's counterclaims erroneously allege the nature of injuries plead in the underlying lawsuits have "evolved" to make claims for "bodily injuries separate and apart from silicosis;" however, this argument is unpersuasive as the paragraphs of the underlying actions cited in the counterclaim supporting these "evolved" claims, were already before the court when it granted Plaintiffs' motion for judgment on the pleadings regarding the 17 underlying actions. (Counterclaims, ¶¶ 3, 4; see also Amended Answer, ¶ 13; cf. Request for Judicial Notice ("RJN") [Dkt. 44-2], Ex. 3: Gallegos-Botello FAC, ¶¶ 49, 50, 58; RJN Ex. 4: Gomez-Rivera SAC, ¶¶ 77, 78, 92; RJN Ex. 13: Rivas-Williams FAC, ¶¶ 109, 110, 120; RJN Ex. 14: Segura-Meza SAC, ¶¶ 93, 94, 103; RJN, Ex. 16: Soto-Rodriguez Complaint, ¶¶ 83, 84, 94.) Further, as this court previously ruled, all the alleged contaminants causing bodily injury are either silica or "silica-related dust" (defined in part as "a mixture or combination of silica and other dust or particle"). Even if the alleged contaminants are not deemed to

be silica or "silica-related dust", they are at least "pollutants" (defined in part as "any solid, liquid, gaseous or thermal irritant or contaminant"), and thus there is no potential for coverage.

At a minimum, the alleged bodily injury of silicosis arose "in part" out of the alleged inhalation of, or ingestion of, "silica" or "silica-related dust", and thus the silica or silica-related dust exclusion precludes coverage.

Similarly, the alleged bodily injury would not have occurred "in part" but for the alleged release of "pollutants", meaning any solid, liquid, gaseous or thermal irritant or contaminant, and thus the total pollution exclusion precludes coverage.

Based on the allegations of the complaints and plain reading of the policy terms, Plaintiffs have no duty to defend or indemnify Francini in the Underlying Actions. Accordingly, the court should grant this Rule 12(c) motion for judgment on the pleadings.

## II.   FACTUAL BACKGROUND

### A.   Underlying Actions

Sixty-nine (69) lawsuits were filed from 2021-2024 against Francini and other defendants for alleged damages that occurred during the relevant policy period(s), wherein each plaintiff alleges they developed silicosis, and related injuries, from exposure to silica from working with products manufactured, distributed, and/or supplied by all the named defendants. (Complaint, ¶13; Counterclaims, ¶2; Request for Judicial Notice ("RJN") Exhs, 1-69.)

### B.   Plaintiffs' Insurance Policies

Hanover American Insurance Company issued Commercial General Liability Policy # ZZ3 D016527 00 to the named insured, Francini, Inc. (Complaint, ¶ 7, Exh. A.) Citizens Insurance Company of America issued Commercial General Liability Policy # ZB3 H024264 00 to the named insured, Francini, Inc. (Complaint, ¶ 8, Exh. B), which was renewed, Policy # ZB3 H024264 01. (Complaint, ¶ 8, Exh. C.) The Hanover and Citizens' policies are collectively referred to as the "Policies".

-3-

The Commercial General Liability Coverage Form - Occurrence, CG 0001 4/13, is endorsed on the Policies. The Insuring Agreement of that form states, in pertinent part, as follows (Complaint, ¶ 9, Exh. A, p. 214; Exh. B, p. 606; Exh. C, p. 986.):

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

    1.    **Insuring Agreement**

        **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" … to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" … to which this insurance does not apply...

The Policies contain the Total Pollution Exclusion Endorsement, CG 2149 9/99, which modifies the pollution exclusion. This endorsement states in pertinent part as follows (Complaint, ¶ 10, Exh. A, p. 247; Exh. B, p. 631; Exh. C, p. 1012.):

**TOTAL POLLUTION EXCLUSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

    **(1)** "Bodily injury" … which would not have occurred in whole or part

2274081

but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time…

The Policies contain the Silica or Silica-Related Dust Exclusion, CG 2196 3/05, which states in relevant part as follows (Complaint, ¶ 11, Exh. A, p. 257; Exh. B, p. 646; Exh. C, p. 1027.):

### SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of

**Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust"…

…

**C.** The following definitions are added to the **Definitions** Section:

**1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

Section V - Definitions contained in the Commercial General Liability Coverage Form - Occurrence, CG 0001 4/13. The following definitions apply (Complaint, ¶ 12, Exh. A, p. 206, 228; Exh. B, p. 598, 620; Exh. C, p. 978, 1000.):

**4. Bodily Injury Redefined** {as modified by the Commercial General Liability Broadening Endorsement, 4212915 6/15.}

SECTION V – DEFINITIONS, Definition **3.** "bodily injury" is replaced by the following:

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".

…

…

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

## III.    LEGAL STANDARDS

### A.    Judgment On The Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." (Fed. R. Civ. P. 12(c).) Judgment on the pleadings, pursuant to Federal Rules of Civil Procedure 12(c), is proper when the moving party clearly establishes on the face of the pleadings that (1) no material issue of fact remains to be resolved; and (2) it is entitled to judgment as a matter of law. (*Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir. 1984).)

A Rule 12(c) motion for judgment on the pleadings may be made by either party. A plaintiff may move for judgment on the pleadings if the answer fails to controvert material facts alleged in the complaint. (*Qwest Communications Corp. v. City of Berkeley*, 208 F.R.D. 288, 291 (N.D. Cal. 2002).) All allegations of fact by the party opposing the motion are accepted as true, and they are construed in the light most favorable to that party. (*Qwest Communications,* 208 F.R.D. at 291; *McGlinchy*

*v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir.1988).) Uncontested allegations to which the other party had an opportunity to respond are taken as true. (*Qwest Communications*, 208 F.R.D. at 291.)

## B. Policy Interpretation

Insurance policy interpretation is governed by state law. In California, policy interpretation is a question of law to be evaluated by the court. (*Northfield Ins. Co. v. Sandy's Place, LLC*, 530 F. Supp. 3d 952, 962 (E.D. Cal. 2021).) "Where an exclusion is clear and unambiguous, it is given its literal effect." (*Westoil Terminals Co. v. Indus. Indem. Co.*, 110 Cal.App.4th 139, 146 (2003).)

As explained by the California Supreme Court, "Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id.*, § 1639.)" (*AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 821–822 (1990).)

Moreover, Courts will not strain to create insurance policy ambiguity where none exists.[3] (*Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 18, 44 (1995); *Inns-by-the-Sea v. California Mutual Ins. Co.*, 71 Cal.App.5th 688, 967 (2021)), and an insurer is free to limit the risks it assumes in its contracts. (*24th & Hoffman Investors, LLC v. Northfield Insurance Company*, 82 Cal.App.5th 825, 833 (2022).)

## IV. PLAINTIFFS HAVE NO DUTY TO DEFEND OR INDEMNIFY FRANCINI

### A. Duty To Defend Determined At The Outset

"The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." (*Ocean Towers Hous. Corp. v. Evanston Ins. Co.*, 772 F.App'x 459, 460 (9th Cir. 2019) (quoting *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1081 (1993)).) Courts should "compare[ ] the allegations of the underlying complaints with

---

[3] There are no allegations that the policy is ambiguous in Francini's amended answer.

2274081

-7-

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS – CASE NO. 2:23-cv-10047-MRA-MAA**

the terms of the [ ] Exclusion in the [ ] policies" to determine if there is "no potential for coverage and thus no duty to defend." (*Id.*)

"Under California law, an insurer's duty to defend is determined by 'those facts known by the insurer *at the inception of a third party lawsuit,'* or 'from the facts and inferences known to an insurer from the pleadings, available information and its own investigations *at the time of the tender of defense'*. … there are no California cases holding that unpled facts, occurring after the filing of the third party's complaint, are sufficient to establish an insurer's duty to defend." (*Storek v. Fidelity & Guar. Ins. Underwriters, Inc.*, 504 F.Supp.2d 803, 812 (N.D. Cal. 2007).) (Citations omitted.) (Emphasis in original.)

## B.    Interpretation Of Relevant Policy Language

California courts have upheld "in whole or in part" policy language and consider it to be an absolute exclusion, excluding coverage for damage resulting from the exclusion. (*Charles E. Thomas Co. v. Transamerica Ins. Group*, 62 Cal.App.4th 379, 384 (1998) ("*Transamerica*"); *Titan Corp. v. Aetna Casualty & Surety Co.*, 22 Cal.App.4th 457, 470 (1994).) The court in *Transamerica* found the Transamerica policy language to be a limited exclusion, differentiating it from an absolute exclusion that includes "in whole or in part" language. (*Transamerica* at 383-84 [the Transamerica policy language is "clear and unambiguous. It only excludes losses 'arising out of any request, demand or order'", whereas insurance policy language related to bodily injury such as "which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, release or escape of pollutants at any time" would be an absolute exclusion.]) The court reasoned that if "*Transamerica* had truly intended an 'absolute' exclusion of pollution-related liability it could have said so." (*Ibid*. [citing *Larsen Oil Co. v. Federated Service Ins. Co.*, 859 F.Supp. 434, 436 (D.Or.1994) [the policy excluded losses "which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, release or escape of pollutants at any time"].)

### C. Plaintiffs Have No Duty To Defend Under The Policies' Silica Or Silica-Related Dust Exclusion

#### i. All Underlying Actions Allege Silicosis Arising From Silica

The Policies' silica exclusion language states in part: "This insurance does not apply to: 'Bodily injury' arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, 'silica' or 'silica-related dust'…"

All of the Underlying Actions allege bodily injury arising at least in part out of the inhalation of silica resulting in silicosis. Examples from the initial 17 complaints are below; all are in the Appendix. (Appendix at No. 1)

"Plaintiff, FERNANDO BUSTOS-MONDRAGON. . . was thereby exposed to and inhaled respirable crystalline silica . . . as a direct and proximate result of which he developed silicosis and other conditions that have required medical treatments and hospitalizations, and for which Plaintiff will need to receive a lung transplant"; "…gross attempt by Francini to disclaim responsibility for selling a product that is inherently dangerous due to its high crystalline silica content" (RJN, Ex. 1: *Bustos-Mondragon* FAC, ¶¶ 33, 260.)

"Plaintiff, JORGE ESTRELLA-MORENO. . . was thereby exposed to an inhaled respirable crystalline silica. . . As a direct and proximate result of JORGE ESTRELLA-MORENO's exposure to silica. . . Plaintiff, JORGE ESTRELLA-MORENO, developed silicosis and other conditions which have required medical treatments and hospitalizations, and for which Plaintiff needs to receive a lung transplant"; "… Francini, Inc. …misrepresented facts and concealed information from Plaintiff and his employers regarding the true nature and severity of the hazards of its stone products… thereby suggesting that the product is not hazardous, although the ordinary and expected use of the product generates extremely hazardous respirable crystalline silica that causes silicosis and death." (RJN, Ex. 2: *Estrella-Moreno* Complaint, ¶¶ 50, 460.)

2274081

"Plaintiff, ANGEL GALLEGOS-BOTELLO, was thereby exposed to and inhaled respirable crystalline silica . . . As a direct and proximate result of ANGEL GALLEGOS-BOTELLO's exposure to silica . . . Plaintiff, ANGEL GALLEGOS-BOTELLO, developed silicosis and other conditions which have required medical treatments and hospitalizations, and for which Plaintiff needs to receive a lung transplant"; "…gross attempt by Francini to disclaim responsibility for selling a product that is inherently dangerous due to its high crystalline silica content" (RJN, Ex. 3: *Gallegos-Botello* FAC, ¶¶ 58, 517.)

"Plaintiff, ADAN GOMEZ-RIVERA, was thereby exposed to and inhaled respirable crystalline silica . . . As a direct and proximate result of ADAN GOMEZ-RIVERA's exposure to silica . . . Plaintiff, ADAN GOMEZ-RIVERA, developed silicosis and other conditions which have required medical treatments and hospitalizations, and for which Plaintiff needs to receive a lung transplant"; "…gross attempt by Francini to disclaim responsibility for selling a product that is inherently dangerous due to its high crystalline silica content" (RJN, Ex. 4: *Gomez-Rivera* SAC, ¶¶ 92, 549.)

"VICTOR GONZALEZ, was thereby exposed to and inhaled toxicologically significant amounts of silica …. As a direct and proximate result of VICTOR GONZALEZ's exposure to silica … VICTOR GONZALEZ, developed silicosis, pulmonary fibrosis, and other related and consequential injuries which required extensive medical treatment, including hospitalizations, and from which he died on September 13, 2021" (RJN, Ex. 5: *Gonzalez* SAC, ¶ 74.)

The Counterclaims' 52 additional complaints have nearly identical allegations. Again, examples are below; all are in the Appendix. (Appendix at No. 2)

"Plaintiff, RAFAEL GARCIA-GUERRA. . . was thereby exposed to and inhaled respirable crystalline silica . . . as a direct and proximate result of which Plaintiff, RAFAEL GARCIA-GUERRA developed silicosis, pulmonary fibrosis, progressive massive fibrosis, and other forms of lung damage, and therefore has a

-10-

significantly increased risk of developing other silica-related diseases such as lung cancer, chronic kidney disease, and autoimmune disorders such as rheumatoid arthritis, systemic lupus erythematosus, and systemic sclerosis (scleroderma). . . for which Plaintiff, RAFAEL GARCIA-GUERRA needs and is awaiting a lung transplant"; ". . . gross attempt by Francini to disclaim responsibility for selling a product that is inherently dangerous due to its high crystalline silica content" (RJN, Ex. 35: *Garcia-Guerra* FAC, ¶¶ 75-76, 695.)

"Plaintiff Ignacio Ladino Castillo, was thereby exposed to and inhaled respirable crystalline silica . . . As a direct and proximate result of his exposure to silica . . . Plaintiff Ignacio Ladino Castillo, developed lung disease characterized by silicosis, and other forms of lung damage, and therefore has a significantly increased risk of developing other silica-related diseases such as lung cancer, chronic kidney disease, and autoimmune disorders such as rheumatoid arthritis, systemic lupus erythematosus, and systemic sclerosis (scleroderma). . . Plaintiff Ignacio Ladino Castillo has had to receive substantial medical treatment, and will likely require a lung transplant. (RJN, Ex. 43: *Castilo* Complaint, ¶ 51-53.)

"HUGO A. CASTENEDA was thereby exposed to and inhaled toxicologically significant amounts of silica .... As a direct and proximate result of HUGO A. CASTENEDA's exposure to silica … HUGO A. CASTENEDA, developed silicosis, pulmonary fibrosis, and other related and consequential injuries which required extensive medical treatment, including hospitalizations, and which will continue to require extensive medical treatments and hospitalizations, including lung transplantation." (RJN, Ex. 26: *Castenda* Complaint, ¶ 80-81.)

"Plaintiff, ARAMIS MIGUEL CARMONA GARIZAO . . . was thereby exposed to and inhaled respirable crystalline silica . . . as a direct and proximate result of which Plaintiff, ARAMIS MIGUEL CARMONA GARIZAO, developed silicosis, pulmonary fibrosis, progressive massive fibrosis, and other forms of lung damage, and therefore has a significantly increased risk of developing other silica-

related diseases such as lung cancer, chronic kidney disease, and autoimmune disorders such as rheumatoid arthritis, systemic lupus erythematosus, and systemic sclerosis (scleroderma) . . . for which Plaintiff, ARAMIS MIGUEL CARMONA GARIZAO has had to receive extensive substantial medical treatment"; ". . . gross attempt by Francini to disclaim responsibility for selling a product that is inherently dangerous due to its high crystalline silica content" (RJN, Ex. 25: *Garizao* Complaint, ¶¶ 89-90; 808.)

"Plaintiff, KARAPET SHLARYAN. . . was thereby exposed to and inhaled respirable crystalline silica . . . as a direct and proximate result of which Plaintiff, KARAPET SHLARYAN developed silicosis, pulmonary fibrosis, progressive massive fibrosis, and other forms of lung damage, and therefore has a significantly increased risk of developing other silica-related diseases such as lung cancer, chronic kidney disease, and autoimmune disorders such as rheumatoid arthritis, systemic lupus erythematosus, and systemic sclerosis (scleroderma). . . for which Plaintiff, KARAPET SHLARYAN, has had to receive extensive substantial treatment including hospitalizations and surgeries, including a lung biopsy"; ". . . gross attempt by Francini to disclaim responsibility for selling a product that is inherently dangerous due to its high crystalline silica content" (RJN, Ex. 42: *Shlaryan* Complaint, ¶¶ 71-72; 790.)

Silicosis is a progressive, incurable, fibrotic lung disease caused by inhalation of respirable crystalline silica dust. (*Clemco Indus. v. Com. Union Ins. Co*., 665 F. Supp. 816 (N.D. Cal. 1987); RJN, ¶ 71: Jennifer Flattery et al., *Notes from the Field: Surveillance of Silicosis Using Electronic Case Reporting* — California, December 2022–July 2023, 72 Morbidity & Mortality Wkly. Rep. 1275 (2023), https://www.cdc.gov/mmwr/volumes/72/wr/pdfs/mm7246a4-H.pdf.) All Underlying Actions allege plaintiffs have developed the fibrotic lung disease silicosis. While all plaintiffs allege silicosis, some plaintiffs allege additional bodily injuries of "progressive massive fibrosis" resulting from silica and "**other silica-related**

2274081

-12-

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS – CASE NO. 2:23-cv-10047-MRA-MAA**

**diseases**". (Appendix at No. 3). Progressive massive fibrosis is a complication of silicosis, in fact, it is the most advanced form of silicosis. (RJN, ¶ 72: Cecile Rose et al., *Severe Silicosis in Engineered Stone Fabrication Workers — California, Colorado, Texas, and Washington*, 2017–2019, 68 Morbidity & Mortality Wkly. Rep. 813 (2019), https://www.cdc.gov/mmwr/volumes/68/wr/mm6838a1.htm; RJN, ¶ 73: Mine Safety & Health Admin., *Respirable Crystalline Silica Rulemaking*, U.S. Dep't of Labor, https://www.msha.gov/regulations/rulemaking/silica.)

Clearly, the Underlying Actions set forth claims of bodily injury arising at least in part out of the alleged inhalation of silica. This satisfies the unambiguous silica exclusions in both the Citizens and Hanover policies. Accordingly, per the terms of the silica exclusion, "this insurance does not apply."

Here, there is no duty to defend based on the silica exclusion. And "where there is no duty to defend, there cannot be a duty to indemnify." (*Certain Underwriters at Lloyd's of London v. Superior Court*, 24 Cal.4th 945, 958 (2001).)

### ii. All Bodily Injuries Arise From Silica Or Silica-Related Dust

The Policies' silica exclusion not only precludes coverage for bodily injuries arising, "in whole or in part out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, 'silica'" but also "silica-related dust" (defined in part as "a mixture or combination of silica and other dust or particle").

Here, all of the Underlying Actions allege bodily injury arising at least in part out of the inhalation of silica or silica-related dust. The Underlying Actions allege defendants' "products were toxic and that they contained silica and metals that cause fibrotic lung disease upon inhalation." Specifically, the Underlying Actions allege "**Plaintiff …inhaled silica and metal dust and particles from said products that were generated and released** during the foregoing intended use of said toxic mineral products" and that plaintiffs' injuries were caused by the exposure and inhalation of "stone **dust containing silica and other toxins and carcinogens**, as well as artificial stone **dust containing respirable crystalline silica**, … **metals**, …

2274081

-13-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS – CASE NO. 2:23-cv-10047-MRA-MAA

and volatile organic compounds…"] (Appendix at No. 4)

Francini attempts, in its Crossclaim, to allege that the nature of injuries plead in the underlying lawsuits have "evolved" to make claims for "bodily injuries separate and apart from silicosis," alleging the underlying plaintiffs may present evidence of injuries from metals. However, the allegations are that the plaintiffs' bodily injuries were caused by "stone dust" that contains silica and other toxins, and artificial stone dust containing silica and metals; thus, they merely allege that there is a <u>mixture or combination</u> of silica and toxins, or silica and metals.

Silica-related dust is a <u>mixture or combination</u> of silica and other dust or particles. While all Underlying Actions refer to metal dust exposure, this exposure allegedly occurred contemporaneously and in combination with plaintiffs' exposure to silica dust during the fabricating process. This one dust releasing event allegedly generated and released dust including metal dust and silica dust. Francini has not, and cannot show, the metal dust is allegedly separate and distinguishable from the silica-related dust released in the fabricating process. Moreover, the Underlying Actions do not even allege bodily injuries that are *entirely separate and independent* from silica. (*See e.g.*, RJN, Ex. 2: *Estrella-Moreno* Complaint, ¶¶ 51, 397, 413; see Appendix at No. 8.) ("The intended use of [defendants'] products generated and released toxic airborne dusts" "Plaintiff …inhaled silica and metal dust and particles from said products that were generated and released.".)

Silica plays an essential role in all the Underlying Actions. All bodily injuries alleged in the Underlying Actions at the very least arise in part out of the actual, alleged, threatened or suspected inhalation or ingestion of, "a mixture or combination of silica and other dust or particles" – i.e., silica-related dust. Similarly, the fibrotic lung diseases other than silicosis are referenced as "other silica-related diseases" or at least stated in the context of silica or silica-related dust. For instance, the Underlying Actions acknowledge that exposure to silica is a known cause of pulmonary fibrosis. "Inhalation of crystalline silica can cause pulmonary fibrosis". (Appendix at No. 5)

The Underlying Actions do not allege plaintiffs' pulmonary fibrosis was caused by anything other than silica or silica-related dust, nor could they show the injury was caused by dust without silica, as the dust was allegedly generated and released simultaneously with silica dust while fabricating the stone. There are no allegations of separate events that do not involve silica and only involve other contaminants.

As another example, the Underlying Actions allege bodily injuries of pulmonary nodules, but do not allege the injury was caused by a source other than silica or silica-related dust. "Simple chronic silicosis is also called nodular silicosis, characterized by pulmonary nodules less than 10 mm in diameter . . . Simple silicosis may transition to complicated silicosis as the nodules progress." (RJN, ¶ 70: Lauren Baum & Thomas C. Arnold, *Silicosis*, in StatPearls (StatPearls Publishing, Aug. 6, 2023), https://www.ncbi.nlm.nih.gov/books/NBK594245/.) Pulmonary nodules are also found with progressive massive fibrosis (the most advanced form of silicosis). (*See e.g.*, RJN, Ex. 2: *Estrella-Moreno* Complaint, ¶ 221.)

As noted above, defendants' products all contain silica, various metals, and other components which are released into dust contemporaneously when plaintiffs were grinding, cutting, sanding, or otherwise fabricating defendants' stones. Francini has not and cannot distinguish between the mixture of ultrafine and nanosized particles that are generated during plaintiffs' stone fabrication. In fact, the Underlying Actions all note the alleged bodily injuries are related (*See e.g.*, RJN, Ex. 44: *Sanchez* Complaint, ¶ 1271 ["exposure to each of Defendants' stone products . . . caused Plaintiff to suffer from specific illnesses, to wit, silicosis, pulmonary fibrosis, and related medical conditions"]; see Appendix at Nos. 1-2.) Whether it is pulmonary nodules, pulmonary fibrosis, or other fibrotic lung disease, the Underlying Actions alleged bodily injuries arose at least in part out of the alleged inhalation of silica-related dust and "this insurance does not apply."

Additionally, the paragraphs of the allegedly "evolved" Underlying Action cited in the Counterclaim are identical to those that were already before the court

when it granted Plaintiffs' motion for judgment on the pleadings regarding the 17 underlying actions. (Counterclaims, ¶¶ 3, 4; see also Amended Answer, ¶ 13; *cf.* Request for Judicial Notice ("RJN") [Dkt. 44-2], Ex. 3: Gallegos-Botello FAC, ¶¶ 49, 50, 58; Ex. 4: Gomez-Rivera SAC, ¶¶ 77, 78, 92; Ex. 13: Rivas-Williams FAC, ¶¶ 109, 110, 120; Ex. 14: Segura-Meza SAC, ¶¶ 93, 94, 103; RJN, Ex. 16: Soto-Rodriguez Complaint, ¶¶ 83, 84, 94.) The allegations relied on by Francini fail to properly plead "these distinct injuries from metals" are in fact "distinct" from the known silica-related injuries. However, even if Francini properly alleged the Underlying Actions make claims for bodily injuries which arise from Metals only, they would be barred by the total pollution exclusion.

### D.    Plaintiffs Have No Duty To Defend Under The Policies' Total Pollution Exclusion

As noted above, California courts have upheld "in whole or in part" language and consider it to be an absolute exclusion, excluding coverage for damage resulting from the exclusion.

Here, the Citizens and Hanover pollution exclusion language states: "This insurance does not apply to: 'Bodily injury' or 'property damage' which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time.'"

The Policies' pollution exclusion language is identical to language the court in *Transamerica* provided as an example of an absolute exclusion. (*Transamerica* at 383-84 [insurance policy language related to bodily injury such as "which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, release or escape of pollutants at any time" would be an absolute exclusion.]) The Citizens and Hanover pollution exclusion must therefore be an absolute exclusion. For the same reason, the silica exclusion should also be considered an absolute exclusion. Under this broad interpretation, the policy language in the exclusions applies to all other claims alleged in the complaints of the

-16-

Underlying Actions as a matter of law, as they are a result of the alleged silica exposure.

### i.    Plaintiffs' Pollution Exclusion Is The Strongest Type

"To the degree that there may be any difference between the 'total pollution exclusion' and the more common 'absolute pollution exclusion,' it appears that the 'total' one excludes a little more than the 'absolute' one, that is, less favorable to the insured." (*Griffin Dewatering Corp. v. Northern Ins. Co. of New York*, 176 Cal.App.4th 172, 178, n.3 (2009).)

In addition, the court in *The Villa Los Alamos Homeowners Assn.*, *infra*, citing *Garamendi*, *infra*, found that it was prudent, but not required, to include a specific exclusion for the type of pollutant the insurer seeks to exclude: "it would not be surprising for an insurer looking to bar coverage for asbestos claims to include an explicit provision making that exclusion clear. However, the prudence in including a specific provision governing asbestos claims did not 'restrict the scope of the pollution exclusion." (*Id.* at 541, citing *Garamendi, infra,* at 488.)

Here, the Policies include the strongest possible pollution exclusion, the total pollution exclusion. Also, Plaintiffs took the "prudent" step of including a silica or silica-related dust exclusion in addition to the total pollution exclusion to emphasize that silica was a "pollutant" that was precluded.

### ii.    Silica Is Considered A "Pollutant" Under The Total Pollution Exclusion

California courts consider silica to be commonly thought of as a pollutant for purposes of a pollution exclusion. (*Garamendi v. Golden Eagle Ins. Co*., 127 Cal.App.4th 480, 485–486 (2005); *The Villa Los Alamos Homeowners Association v. State Farm General Insurance Company*, 198 Cal.App.4th 522, 536 (2011).) Applying the *MacKinnon* standards, the court in *Garamendi* found the "widespread dissemination of silica dust as an incidental by-product of industrial sandblasting operations **most assuredly is what is 'commonly thought of as pollution'** and

-17-

1   'environmental pollution.'" (*Garamendi* at 485–486.) (Emphasis added.) In

2   *Garamendi*, the Court of Appeal affirmed the trial court's ruling that "concluded

3   Golden Eagle properly rejected the tenders of defense based on the pollution

4   exclusion contained in its commercial general liability policy." (*Id.* at 482.)

5       The Citizens and Hanover pollution exclusion language is identical to that in

6   *Garamendi*, as is the policy definition of "pollutants". Therefore, the Court here

7   should also find the release of silica dust as an incidental by-product of industrial

8   stone counter operations is most assuredly "commonly thought of as pollution."

9               **iii.    The Injury-Causing Event Is Thought Of As Pollution**

10      The California Supreme Court requires courts to "attempt to put itself in the

11  position of a layperson and understand how he or she might reasonably interpret the

12  exclusionary language" to determine whether an injury-causing event would

13  commonly be thought of as pollution, i.e., environmental pollution. (*MacKinnon v.*

14  *Truck Ins. Exchange*, 31 Cal.4th 635, 653 (2003).) Since *MacKinnon*, "courts appear

15  to consider the following factors in determining whether an injury-causing event

16  would commonly be thought of as pollution from a layman's perspective: (1) whether

17  the harm resulted from the by-product of an industrial operation, (2) whether the

18  contaminant in question is regulated, and (3) whether the alleged polluter was aware

19  of the dangers of the contaminant." (*Travelers Property Casualty Company of*

20  *America v. City of Los Angeles Harbor Department* ("*Travelers*"), No. CV 15-7799-

21  GW(AJWX)) 2016 WL 11520822 (C.D. Cal. 2016).)) (Citations omitted.)

22      All Underlying Actions meet the three factors enumerated in *Travelers*, such

23  that the injury-causing event would commonly be thought of as pollution from a

24  layman's perspective. First, the harm alleged in the complaint is the direct result of

25  the underlying plaintiffs' work related to the **"industrial operation"** of cutting,

26  grinding, installing and finishing stone to be installed in kitchens and bathrooms. (*See*

27  Appendix at No. 6.)    Therefore, the harm resulted from the by-product of an

28  industrial operation.

Second, the **Federal Government has regulated these operations by imposing workplace exposure limits on silica since 1971** with the most recent modification in 2016. (29 C.F.R. §§ 1910.1000; 1910.1053; 1915.1053; 1926.1153.) Under this same code section, the Federal Government imposes workplace exposure limits on the metals plaintiffs were allegedly exposed, including aluminum, antimony, arsenic, chromium, cobalt, copper, iron, manganese, nickel, titanium, tungsten, and vanadium ("Metals"). (29 C.F.R. §§ 1910.1000 Table Z-1; 1910.1018; 1910.1026; 1910.1028.)

California adopted the Federal OSHA regulations in 2016. California regulates occupational exposure to respirable crystalline silica through Title 8, § 5204, of the California Code of Regulations. Prior to §5204, CCR § 1530.1 controlled exposure to silica resulting from the use of powered tools or equipment on concrete or masonry materials. CCR § 1530.1 regulates certain Metals, such as Chromium. California further regulates occupational exposure to Metals through CCR § 5155.

Silica and Metals are regulated both federally and through California state regulations. Finally, as a company regularly conducting business in masonry materials, and through decades of federal and state regulations and discussions about the dangers of silica and Metals, Francini was aware of the dangers of silica and Metals. (*See e.g.*, RJN, Ex. 1: *Bustos-Mondragon FAC*, ¶¶ 387, 459 ("**Defendants were all aware** of the toxic and fibrogenic nature of their stone products and that exposure to their products causes silicosis" . . . "**Defendants were aware** that their artificial stone products contained extremely high concentrations of crystalline silica (approximately 95%), which produced extremely high levels of respirable crystalline silica in their ordinary and expected use". . . "Defendants fraudulently concealed . . . that their products were toxic and that they **contained silica and metals** that cause fibrotic lung disease upon inhalation." . . . "Plaintiff …inhaled **silica and metal dust and** particles from said products that were generated and released during the foregoing intended use of said toxic mineral products") (Emphasis added.); *see also*

1    Appendix at No. 7.)

2    Therefore, under *MacKinnon* and *Travelers*, the injury-causing event would

3    commonly be thought of as pollution from a layman's perspective.

4    **iv.    Widespread Dissemination Is Not Required For The Total Pollution Exclusion To Apply**

5    **a.    A Toxin Like Asbestos Or Silica "Release[d]" Into The Air Making The Air Unsafe Satisfies The Pollution Exclusion**

6

7    The localized release of "pollutants" can trigger the total pollution exclusion,

8    despite the anticipated argument that the exclusion only applies when "pollutants" are

9    disseminated on a widespread basis.

10    In analyzing a pollution exclusion that precluded coverage for any loss caused

11    by the "presence, release, discharge or dispersal of pollutants", the court in *The Villa*

12    *Los Alamos Homeowners Assn. v. State Farm General Ins. Co.*, 198 Cal.App.4th 522,

13    540 (2011), concluded that there was the "release" of asbestos in the air, even though

14    the contaminant was not "widely dispersed".

15    "[T]he terms 'release' and 'escape' in a pollution exclusion 'connote some sort

16    of freedom from containment' [citation]; 'the word 'dispersal,' when in conjunction

17    with 'pollutant,' is commonly used to describe the spreading of pollution widely

18    enough to cause its dissipation and dilution." (*Id.* at 539.)

19    "[T]here need not be 'wholesale environmental degradation, such as occurred

20    at, for example, Love Canal, or the Stringfellow Acid Pits,' to constitute

21    [environmental] pollution." (*Id.* at 540.) "A one-time event can be a polluting event

22    if it creates 'impurity, something objectionable and unwanted.'" (*Id.* at 541.) The

23    court found, **"The release of asbestos from a product into the air people breathe**

24    **constitutes a health hazard for which no level of exposure is safe**." (*Ibid.*)

25    (Emphasis added.) The court concluded, **"The release of asbestos in this case**

26    **constituted environmental pollution within the meaning of the pollution**

27    **exclusion**." (*Id.* at 542.) (Emphasis added.)

28

2274081

Similarly, here, the Underlying Actions further allege that there "**is no toxicological evidence of a 'safe' threshold of crystalline silica content**." (*See, e.g.*, RJN Ex. 13: *Rivas-Williams* FAC, ¶¶ 197; 652; RJN, Ex. 16: *Soto-Rodriguez* Complaint, ¶¶ 169, 709.) (Emphasis added)

### b. <u>The Underlying Actions Allege A "Release" Of Pollutants – The Same Language Found in the Total Pollution Exclusion</u>

The allegations in the Underlying Actions include the "release" of silica and silica-related dust into the air from fabricating defendants stone products. (*See e.g.*, RJN, Ex. 3: Gallegos-Botello FAC, ¶¶ 59, 287, 711 ("The intended use of [defendants'] products generated and released toxic airborne dusts" …"The extreme hazard of artificial stone is due to … the crystalline **silica particles that are released into the air** when fabricators use powered tools to cut artificial stone." (Emphasis added); *see* Appendix at No. 8)  … "Plaintiff… was exposed to each of Defendants' products … and to silica, metals and other toxins contained therein and released therefrom."); *see e.g.*, RJN, Ex. 2: *Estrella-Moreno* Complaint, ¶¶ 51, 397, 413 ("intended use of said products by Plaintiff … resulted in the generation and **release of toxic airborne dusts**" "**Plaintiff …inhaled silica and metal dust and particles from said products that were generated and released** during the foregoing intended use of said toxic mineral products" "regarding toxic and fibrogenic chemicals released from their products" and "regarding toxic and fibrogenic chemicals, including silica and metals, released from their product") (Emphasis added); *see* Appendix at No. 8)

As in *The Villa Los Alamos Homeowners Assn.*, the allegations in the Underlying Actions include the "release" of silica into the air.

### c. <u>The Underlying Actions Allege "Large Amounts" or "Massive Amounts" Of Silica Dust (a "Pollutant") Requiring Wearing a Respirator to Prevent Silicosis</u>

The Underlying Actions allege either that "cutting, grinding, drilling, chipping,

edging, and/or polishing (collectively 'fabricating') stone products produces **large amounts** of respirable crystalline silica dust which stone fabrication workers inhale typically causing **chronic silicosis** as well as lung cancer **and various other silica-related diseases**", or their products "create **massive amounts** of respirable crystalline silica dust when they are cut, ground, drilled, edged, and polished…" (*See, e.g.*, RJN, Ex. 1: *Bustos-Mondragon* FAC, ¶ 451; RJN, Ex. 3: Gallegos-Botello FAC, ¶ 48.) (Emphasis added. ); *see* Appendix at No. 9)

Further, "Defendants were aware that their artificial stone products contained **extremely high concentrations of crystalline silica** (approximately 95%), **which produced extremely high levels of respirable crystalline silica** in their ordinary and expected use".) (Emphasis added.) (*See* p. 17-18 for citations.)

Also, the Underlying Actions allege Francini's Safety Data Sheet advises workers to "Wear respiratory protection", which the plaintiffs contend is important because "adequate respiratory protection is essential to prevent silicosis from fabricating the product, but the instruction is grossly inadequate, because it **fails to specify the type of respirator that workers must wear to prevent silicosis**", and/or finding the respirator recommended by Francini to be "grossly inadequate". (*See, e.g.*, RJN, Ex. 1: *Bustos-Mondragon* FAC, ¶ 255-256; RJN, Ex. 2: *Estrella-Moreno* Complaint, ¶ 463-464.) (Emphasis added); *see* Appendix at No. 7.)

## V.    FRANCINI'S AFFIRMATIVE DEFENSES DO NOT DEFEAT JUDGMENT ON THE PLEADINGS

Francini's unsupported legal conclusions contained in their affirmative defenses are insufficient to defeat Plaintiffs' motion for judgment on the pleadings as a matter of law. Francini's affirmative defenses do not raise issues of fact which, if proved, would defeat Plaintiffs' request for declaratory relief. (See *General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventists Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989); *Pit River Tribe v. Bureau of Land Mgmt.*, 793 F.3d 1147, 1159 (9th Cir. 2015).)

2274081

-22-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS – CASE NO. 2:23-cv-10047-MRA-MAA

Although the Ninth Circuit has not addressed whether *Twombly* and *Iqbal* apply to the pleading of affirmative defenses, "the vast majority of cases presented with the issue have extended *Twombly's* heightened, plausibility pleading standard to affirmative defenses." (*Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*, 718 F.Supp.2d 1167, 1171-72 (N.D. Cal. 2010), (citations omitted).) And courts in this District have found the plausibility standard applies to affirmative defenses. (*Vogel v. Huntington Oaks Delaware Partners, LLC*, 291 F.R.D. 438 (C.D. Cal. 2013) (citing cases.)) "Applying the standard for heightened pleading to affirmative defenses serves a valid purpose in requiring at least some valid factual basis for pleading an affirmative defense and not adding it to the case simply upon some conjecture that it may somehow apply." (*Barnes*, 718 F.Supp.2d at 1172.) For example, the Insureds' Third Affirmative Defense contends Plaintiffs are estopped from obtaining relief requested with no factual basis. (See *J&J Sports Productions, Inc. v. Bear*, No. 1:12-cv-01509, 2013 WL 708490, at *8 (E.D. Cal. Feb. 26, 2013) (finding that estoppel affirmative defense was insufficiently pled under pre-*Twombly*/*Iqbal* fair notice pleading rule).)

Even if *Twombly's* heightened pleading standard does not apply to affirmative defenses, the so-called affirmative defenses fail to provide the "fair notice" required under the pre-*Twombly*/*Iqbal* rule. An affirmative defense must give the "plaintiff fair notice of the nature and grounds for the affirmative defense." (*In re Honest Co., Inc. Sec. Litig.*, 343 F.R.D. 147, 152 (C.D. Cal. 2022).) Although "fair notice" is a low bar that does not require great detail, it does require a defendant to provide "some factual basis" for its affirmative defenses. (*Sherwin-Williams Co. v. Courtesy Oldsmobile-Cadillac, Inc*., No. 1:15-cv-01137, 2016 WL 615335, at *2 (E.D. Cal. Feb. 16, 2016).) "Simply referring to a doctrine or a statute is insufficient to afford fair notice." (*Gomez v. J. Jacobo Farm Labor Contractor, Inc*., 188 F.Supp.3d 986, 992 (E.D. Cal. 2016) ("This Court will not accept fact-barren affirmative defenses or bare references to doctrines or statutes because such pleadings do not afford fair

2274081

-23-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
JUDGMENT ON THE PLEADINGS – CASE NO. 2:23-cv-10047-MRA-MAA

notice of the nature of the defense pleaded").)

Francini's affirmative defenses are entirely fact-barren, or give bare refences to statutes, none of which provide Plaintiffs with fair notice.

Additionally, Francini attempts to reserve its right to amend its affirmative defenses. But "[a]n attempt to reserve affirmative defenses for a future date is not a proper affirmative defense in itself." (*Joe Hand Promotions, Inc. v. Estradda*, No. 1:10-cv-02165-OWW-SKO, 2011 WL 2413257, at *5 (E.D. Cal. June 8, 2011) (quoting *Solis v. Zenith Capital, LLC*, No. 08-cv-4854, 2009 WL 1324051, at *7 (N.D. Cal. May 8, 2009).)

Francini's affirmative defenses, which are fact-barren and insufficiently pled, do not defeat Plaintiffs' motion for judgment on the pleadings.

## VI.   LEAVE TO AMEND WOULD BE FUTILE

"If judgment on the pleadings is appropriate, a court has discretion to grant the non-moving party leave to amend, grant dismissal, or enter a judgment… [However,] leave to amend 'is properly denied . . . if amendment would be futile.'" (*Haas v. Travelex Insurance Services Inc*., 555 F.Supp.3d 970, 975 (C.D. Cal. 2021).)

The court in *Aram* found the insurer "owes no duty defend based upon mere speculation as to claims that" an underlying plaintiff might have brought or might bring in the future. (*Aram Logistics v. United States Liability Insurance Company*, 2024 WL 390076, at *6 (S.D. Cal., Jan. 31, 2024, No. 3:23-CV-01869-H-DEB). "An insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at **some** future date. (*Id.*) This approach misconstrues the principle of 'potential liability' under an insurance policy." (*Gunderson v. Fire Ins. Exch*., 37 Cal. App. 4th 1106, 1114 (1995).) Thus, 'the insured may not speculate about unpled third party claims to manufacture coverage.' (*Hurley Constr. Co. v. State Farm Fire & Cas. Co*., 10 Cal.App.4th 533, 538 (1992); *see also Hudson Ins. Co. v. Colony Ins. Co*., 624 F.3d 1264, 1267–68 (9th Cir. 2010) ('These cases concluded that there was

2274081

-24-

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
JUDGMENT ON THE PLEADINGS – CASE NO. 2:23-cv-10047-MRA-MAA**

1   no potential for coverage, not because the complaint did not list a particular legal

2   cause of action, but because the complaint did not allege any facts supporting a

3   covered cause of action.').”

4       In *Garamendi*, *supra* (finding the pollution exclusion precluded a duty to

5   defend in the silica context), the court rejected that discovery should be permitted:

6   “the complaints are based explicitly on the inhalation of silica dust arising from

7   sandblasting operations. 'An insured may not trigger the duty to defend by

8   speculating about extraneous 'facts' regarding potential liability or ways in which the

9   third party claimant might amend its complaint at some future date.” (*Garamendi*. at

10  488.)

11      Here, Francini has not and cannot allege any facts supporting a covered cause

12  of action related to the Underlying Actions. All damages alleged in the Underlying

13  Actions relate to bodily injury arising in whole or in part of from inhalation of silica

14  or silica-related dust. Further, the bodily injury would not have occurred in whole or

15  part but for the alleged release of “pollutants”. As the Policies exclude coverage for

16  the injuries alleged in the Underlying Actions, there can be no potential for Francini

17  to allege facts in a potential additional amended complaint, thus leave to amend here

18  would be futile.

19  **VII.  CONCLUSION**

20      Plaintiffs request that the Court affirm its prior holding, and grant Plaintiffs'

21  motion for judgment on the pleadings without leave to amend. In comparing the

22  allegations in the complaints of the Underlying Actions to the unambiguous terms of

23  the Policies, Plaintiffs have no duty to defend, and therefore no duty to indemnify, as

24  a matter of law. Francini's affirmative defenses do not raise factual issues, and

25  Francini's counterclaims do not make any allegations that could defeat this motion;

26  rather, they essentially cite more underlying complaints filed by the same attorney

27  with the same allegations that also do not trigger a duty to defend.

28

1

Dated:  May 29, 2025

2

HAYES SCOTT BONINO
ELLINGSON & GUSLANI LLP

3

By: _/S/ Ryan Z Keller_
STEPHEN M. HAYES
RYAN Z. KELLER
Attorneys for Plaintiffs
HANOVER AMERICAN INSURANCE
COMPANY and CITIZENS INSURANCE
COMPANY OF AMERICA

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-26-