1   FENNEMORE LLP
    Timothy C. Earl, SBN 174967
2     *tearl@fennemorelaw.com*
    Sharon A Huerta, SBN 186998
3     *shuerta@fennemorelaw.com*
    600 B Street, 17th Floor
4   San Diego, CA 92101
    Tel: (619) 233-4100 / Fax: (619) 231-4372
5

6   Attorneys for Defendant and Counterclaimant
    FRANCINI, INC.
7

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10  HANOVER AMERICAN              Case No. 2:23-cv-10047
    INSURANCE COMPANY and
11  CITIZENS INSURANCE COMPANY    **FRANCINI, INC.'S OPPOSITION
                                  TO PLAINTIFFS' MOTION FOR
12              Plaintiffs,       JUDGMENT ON THE
                                  PLEADINGS (2)**
13  v.

14  FRANCINI, INC.; and DOES 1 through
    100, inclusive,              **JURY TRIAL DEMANDED**
15
                Defendants.
16
    ─────────────────────────────
17
    AND RELATED CROSS-ACTION.
18

19

20

21

22

23

24

25

26

27

28

FENNEMORE LLP     Case No. 2:23-cv-10047
ATTORNEYS AT LAW  ─────────────────────────────────────────────
SAN DIEGO           FRANCINI, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR
                         JUDGMENT ON THE PLEADINGS (2)
52376282.6

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ........................................................................................ 1

II.   SUMMARY OF RELEVANT FACTS ........................................................ 4

    A.   The Stone Worker Cases Have Evolved ........................................... 4

    B.   The Plaintiffs in the Stone Worker Cases Allege Bodily Injuries Caused by Non-Silica, Non-Dust Constituents .................................. 5

    C.   Francini's Counterclaim Adequately Alleges the Existence of the Non-Silica, Non-Dust Allegations .............................................. 8

III.  ARGUMENT ............................................................................................... 9

    A.   Francini has Adequately Alleged the Potential for Coverage ............. 9

    B.   A Showing That Silica Dust Predominates or Generated the Stone Worker Cases Does not Defeat Hanover's Duty to Defend ..... 10

    C.   Factual Disputes Related to Causation and the Specific Injuries Caused by Non-Silica, Non-Dust Constituents Prevent This Court From Granting Hanover's Motion ......................................... 12

    D.   Hanover's Pollution Exclusions do not Apply at all to the Localized Exposure Allegations Here at Issue ................................. 16

        1.   MacKinnon Controls ................................................................. 17

        2.   The Underlying Plaintiffs Do Not Allege Injury From Traditional Environmental Pollution ........................................... 18

        3.   The Underlying Plaintiffs Allege Confined Exposure to Silica, Metals, and VOCs ........................................................ 20

IV.   CONCLUSION ......................................................................................... 25

FENNEMORE LLP
ATTORNEYS AT LAW
SAN DIEGO

Case No. 2:23-cv-10047                    i

FRANCINI, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS (2)

52376282.6

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Amato v. Mercury Casualty Co.,*
5
   18 Cal. App. 4th 1784 (1993)..................................................................16

6

*American Zurich Ins. Co. v. James N. Gray Company¸*
7
   No. SACV 13-1966 .....................................................................*passim*

8

*Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co.,*
9
   45 Cal. App. 4th 1 (1996)...........................................................7, 12, 15

10

*Atlantic Mutual Ins. Co. v. J. Lamb, Inc.,*
   100 8 Cal. App. 4th 1017 (2002)...........................................................9

11

*Buss v. Sup. Ct.,*
12
   16 Cal. 4th 35 (1997)..................................................................3, 16

13

*Charles E. Thomas Co. v. Transamerica Ins. Group,*
14
   62 Cal. App. 4th 379 (1998)..................................................................24

15

*Cold Creek Compost, Inc. v. State Farm Fire & Cas. Co.,*
16
   156 Cal. App. 4th 1469 (2007)..............................................................22

17

*Designs, Inc. v. Old Navy, LLC,*
18
   647 F.3d 419 (2nd Cir. 2011)...............................................................13

19

*E.M.M.I. Inc. v. Zurich American Ins. Co.*
20
   (2004) 32 Cal. 4th 465...................................................................9, 11

21

*EFK Invs., LLC v. Peerless Ins.,*
   2014 WL 4802920 (N.D. Cal. Sept. 26, 2014).....................................17

22

*Garamendi v. Golden Eagle Ins. Co.,*
23
   127 Cal. App. 4th 480 (2005).........................................19, 21, 22, 23

24

*Gray v. Zurich Ins. Co.,*
25
   65 Cal. 2d 263 (1966).......................................................................10

26

*Great Am. Assurance Co. v. MS Indus. Sheet Metal,*
27
   2012 WL 13018550 (C.D. Cal. Jan. 31, 2012).......................17, 20, 21

28

FENNEMORE LLP
ATTORNEYS AT LAW
SAN DIEGO

Case No. 2:23-cv-10047        ii

FRANCINI, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS (2)

52376282.6

*Health Net, Inc. v. RLI Ins. Co.*,
   206 Cal. App. 4th 232 (2012).......................................................................................... 3

*Horace Mann Ins. Co. v. Barbara B.*,
   4 Cal. 4th 1076 (1993)...........................................................................*11, 20, 21, 22*

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018)..................................................................................... 2, 4

*Larsen Oil Co. v. Federated Service Ins. Co.*,
   859 F. Supp. 434 (D. Or. 1994)...................................................................................24

*Liberty Surplus Ins. Corp. v. Ledesma & Meyer Constr. Co.*,
   5 Cal. 5th 216 (2018)..............................................................................................2, 3, 4

*Lively v. WAFRA Investment Advisory Group, Inc.*,
   6 F.4th 293 (2nd Cir. 2021) ........................................................................................ 12

*MacKinnon v. Truck Ins. Exch.*,
   31 Cal. 4th 635 (2003)..........................................................................................*passim*

*Massey v. Ojaniit*,
   759 F.3d 343 (4th Cir. 2014)....................................................................................... 13

*McGlinchy v. Shell Chemical Co.*,
   845 F.2d 802 (9th Cir.1988) ........................................................................................ 12

*Millennium Labs., Inc. v. Darwin Select Ins. Co.*,
   2014 WL 12102168 (S.D. Cal. May 13, 2014) .................................................... 16

*Montrose Chemical Corp. v. Sup. Ct.*,
   6 Cal. 4th 287 (1993)..................................................................... 10, 14, 15, 16

*Nat'l Fire Ins. Co. of Hartford v. Martinelli*,
   2008 WL 2725070 (E.D. Cal. July 11, 2008) ......................................................... 22

*National Foam, Inc. v. Zurich American Ins. Co.*,
   768 F. Supp. 1009 (N.D. Cal. 2025)................................................................. 17, 19

*Pension Trust Fund for Operating Engineers v. Federal Ins. Co.*,
   307 F.3d 944 (9th Cir. 2002).................................................................................. 2, 10

*Santaluz, LLC v. Am. Home Assurance Co.*,
   2010 WL 11509307, *6 (S.D. Cal. Aug. 6, 2010)................................................ 20

FENNEMORE LLP
ATTORNEYS AT LAW
SAN DIEGO

Case No. 2:23-cv-10047                    iii

FRANCINI, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR
JUDGMENT ON THE PLEADINGS (2)

52376282.6

*Titan Corp. v. Aetna Casualty & Surety Co.*,
    22 Cal. App. 4th 457 (1994) ............................................................. 10, 15, 24, 25

*Walker v. Armco Steel Corp.*,
    446 U.S. 740 (1980) ................................................................................. 14

*Webb v. Trader Joe's Co.*,
    999 F.3d 1196 (9th Cir. 2021) .................................................................. 12

*Wesco Insurance Company v. Brad Ingram Construction*,
    2024 WL 243344 (9th Cir. 2024) ............................................................. 23

*White v. Western Title Ins. Co.*,
    40 Cal. 3d 870 (1985) ................................................................................. 9

**Statutes**

29 Code of Fed. Reg. § 1910.1000 ................................................................... 19

40 Code of Fed. Reg. § 401.15 (2011) ............................................................. 18

33 United States Code § 1317 ......................................................................... 18

42 United States Code § 7412(b) ..................................................................... 19

**Other Authorities**

California Insurance Law Handbook, § 45:37 .................................................. 22

FENNEMORE LLP
ATTORNEYS AT LAW
SAN DIEGO

1  Defendant and Counterclaimant Francini, Inc. ("Francini") submits this
2  Opposition to the Motion for Judgment on the Pleadings ("Motion," Dkt. 82-1) filed
3  by Plaintiffs and Counterdefendants Hanover American Insurance Company and
4  Citizens Insurance Company of America's (collectively, "Hanover").

5  ## I.    <u>INTRODUCTION</u>

6  This is an insurance coverage action.  Francini, a material supplier, is one of
7  many businesses being sued in dozens of lawsuits seeking damages for bodily injury
8  allegedly caused to workers who grind, cut, and otherwise "fabricate" engineered
9  stone ("Stone Worker Suits").  If Francini has any hope of being able to pay its share
10  of the tens-of-millions-of-dollars in settlements and judgments sought in the Stone
11  Worker Suits, it is because of the insurance it has dutifully maintained since the
12  inception of its business in 1996.  With this litigation, Hanover seeks to take back the
13  coverage it promised to provide Francini, thus depriving both Francini and the
14  underlying plaintiffs of the benefit of that insurance.  Hanover's arguments are
15  misguided and without merit, and the Motion should be denied.

16  The primary question before the Court is simple: Has Francini alleged
17  "sufficient factual matter" to make "plausible" its claim that Hanover has a duty to
18  defend under the insurance policies that Francini purchased?  The answer is "yes."
19  As Francini has alleged, it is currently being sued in dozens of underlying cases
20  alleging that the underlying plaintiffs have suffered, *inter alia*, pulmonary fibrosis
21  and other bodily injury that is, or potentially could be, caused by exposure to:

22  - harmful gases (vapors) such as benzene, toluene, acetone and other volatile
23    organic compounds (VOCs) that are allegedly generated when the resins used
24    in engineered stone are heated by the grinders and other power tools used
25    during the fabrication process;[1] and

26  ---

[1] *See, e.g.*, Gonzalez Quiroz Third Amended Complaint ("TAC"), Los Angeles County Superior
27  Court Case No. 24STCV01477 (Sept. 20, 2024),  ¶¶ 98, 301, 464:15-20; see also Chandnee
   Ramkissoon, et al., *Engineered Stone Fabrication Work Releases Volatile Organic Compounds*
28  *Classified as Lung Irritants*, 67 Annals Work Exposures & Health 288 (2023),
   https://doi.org/10.1093/annweh/wxac068  "2023 Engineered Stone Study"; Hanover's Request for
   Case No. 2:23-cv-10047                    1

FENNEMORE LLP
ATTORNEYS AT LAW
SAN DIEGO

FRANCINI, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR
JUDGMENT ON THE PLEADINGS (2)
52376282.6

- fumes, smoke, aerosols, and mists consisting of or containing injurious carbonaceous material, metals, and other non-silica harmful constituents.[2]

Francini's allegations in this regard establish that there is a duty to defend, *i.e.*, that there is, at minimum, a "potential for coverage" under the terms of the insurance policy at issue here. *Liberty Surplus Ins. Corp. v. Ledesma & Meyer Constr. Co.*, 5 Cal. 5th 216, 222 (2018); *see also Pension Trust Fund for Operating Engineers v. Federal Ins. Co.*, 307 F.3d 944, 951 (9th Cir. 2002) (because even "remote facts buried within causes of action . . . are sufficient to invoke the defense duty," it is irrelevant to the duty to defend that noncovered injuries "predominate or generate" the underlying litigation).

Since the allegations contained in the underlying actions make "plausible" Francini's claim that there is at least a "potential for coverage," and thus a duty to defend, the Motion should be denied. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) ("Dismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.") (citations and internal quotations omitted). Stated differently, Hanover's Motion could be granted if and only if Hanover **proves** under the facts alleged, when accepted as true and with all inferences drawn in favor of Francini, *Khoja*, 899 F.3d at 1012, that the exclusions from coverage upon which Hanover relies eliminate any "potential for coverage," *Ledesma*, 5 Cal. 5th at 222.

*First*, under bedrock California law Hanover must prove, by reference to undisputed facts, *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1085 (1993),

---

Judicial Notice (Dkt. 82-2) ("HRFJN"), ¶ 27, Ex. 27; Francini's Request for Judicial Notice filed ("FRFJN"), ¶ 1, Ex. 76.

[2] As more fully set forth below, Gonzalez Quiroz TAC ¶¶ 388 ("smoke and vapors"); 392 ("organic vapors"); 635 ("metal fumes"); 768 ("vapours or fumes"); 779 ("[]/fumes/gas/mist/vapors/spray"); 783 ("MMA [methyl methacrylate] vapor"); 856 (drawing a distinction between "dust" and "fumes"); 913 ("operations will release metal dusts or fumes"); 981 ("[]/fumes/gas/mist/vapors/spray"); 983 ("unspecified vapors"); 1066 ("[]/fumes/gas/mist/vapors/spray"); 1069 (alleging that "particulate filter respirator provides no protection for toxic vapors"); 1188 (drawing a distinction between "silica dust" and "other airborne particulates and fumes"). HRFJN, ¶ 27, Ex. 27.

FRANCINI, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS (2)

1  that there is *no* "potential for coverage" and thus *no* duty to defend, *Ledesma*, 5 Cal.

2  5th at 222.  This, in turn, requires Hanover to prove that the exclusions bar coverage

3  both "specifically," *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003), and

4  "completely," *Health Net, Inc. v. RLI Ins. Co.*, 206 Cal. App. 4th 232, 263 (2012),

5  which requires Hanover to conclusively show that 100% of the underlying plaintiffs'

6  alleged bodily injuries were in fact caused by excluded materials, such as silica.

7  Hanover cannot meet that burden, primarily because the cause of *each* bodily injury

8  is a disputed question of fact.  The Motion should be denied for this reason alone.

9      *Second*, any argument that the allegations of bodily injury caused by silica

10  predominate the Stone Worker Suits, or are the most important, misconstrues the duty

11  to defend.  California law is clear that ***the duty to defend is triggered by even the***

12  ***slightest thread or possibility*** of potential coverage existing under a tiny portion of

13  an underlying plaintiffs' claims.  *Buss v. Sup. Ct.*, 16 Cal. 4th 35, 49 (1997) (defense

14  owed as to the entirety of the action where only one of 27 claims potentially covered).

15      *Third*, as a matter of fact and science, VOCs are not dust, they are gases.[3]  The

16  gases, fumes, smoke, aerosols, and mists referenced in the Stone Worker Suits are

17  also not dust.  As clearly alleged in the underlying Stone Worker Suits, and stated in

18  the 2023 Engineered Stone Study, these toxins allegedly cause bodily injuries

19  separate and apart from silica and silica related dust.  The determination of whether

20  and what injuries are caused by the various constituents encountered in the

21  fabricating process involves fact-intensive, disputed, expert-driven issues to be

22  resolved in the Stone Cutter Cases, not as a matter of law in a motion for judgment

23  on the pleadings in a coverage action.  *Horace Mann*, 4 Cal. 4th at 1085 (where facts

24  relevant to duty to defend are in dispute in the underlying action, the insurer must

25  defend until those disputed facts are resolved).

26  ///

---

[3] What are volatile organic compounds (VOCs)? | US EPA ("Volatile organic compounds (VOCs) are emitted as gases from certain solids or liquids. VOCs include a variety of chemicals, some of which may have short- and long-term adverse health effects."); HRFJN, ¶ 2, Ex. 77.

FENNEMORE LLP
ATTORNEYS AT LAW
SAN DIEGO

*Fourth*, Hanover is wrong that the Pollution Exclusion bars coverage for the type of localized, micro-exposure to harmful chemicals alleged here.  Motion, p. 22:11.  In *MacKinnon*, the California Supreme Court made clear that the standard form pollution exclusion—such as those found in the Hanover policies—only bars coverage for "traditional environmental pollution into the air, water, and soil." *MacKinnon*, 31 Cal. 4th at 642.  Such exclusions do not, by contrast, bar coverage when, as here, a person is injured by the "negligent use or handling of toxic substances that occur[s] in the normal course of business." *Id.*; *see also id.* at 654 (pollution exclusion does not bar coverage for death caused by exposure to pesticide that a worker sprayed around a house).

In short, as Hanover's Motion presents no proof whatsoever as to the nature and effect of the multitude of toxins identified, instead relying solely on the bare argument of counsel, Hanover has failed and cannot carry the burden placed upon it by well-established California substantive law, *Ledesma*, 5 Cal. 5th at 222 (insurer must prove absence of any potential for coverage by indisputable proof), and federal procedural law, *Khoja*, 899 F.3d at 1008 (dismissal is appropriate only when pleading fails to state a cognizable claim).

## II.    SUMMARY OF RELEVANT FACTS

### A.    The Stone Worker Cases Have Evolved

Hanover filed this lawsuit seeking a declaration that it had no duty to defend 17 Stone Worker Cases.  The early lawsuits sought recovery for bodily injuries allegedly sustained by individuals involved in fabricating manufactured and marble stone products "typically" performed in "small shops," where they "fabricate the artificial stone slabs into countertops that are then installed in customers' kitchens and bathrooms."  E.g., *Bustos-Madragon* Complaint, p. 39, ¶ 80; HRFJN, ¶ 1, Ex. 1. These lawsuits had filing dates from November 1, 2022, through February 2, 2024. HRFJN, ¶¶ 1-17.

///

FENNEMORE LLP
ATTORNEYS AT LAW
SAN DIEGO

Case No. 2:23-cv-10047                    4

FRANCINI, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS (2)

52376282.6

Since that time, the number of lawsuits filed by these same law firms against Francini alone ballooned and now total 117.  HRFJN, ¶¶ 1-52; FRFJN, ¶¶ 3-50.  As is evident, Francini, whose sole business is supplying stone, is not the only defendant in these actions, and Plaintiffs are not the only insurer seeking to avoid obligations in relation to these lawsuits.  *Id*.  The proliferation of this litigation is causing a crisis in the industry and the related insurance crisis afflicting the insureds, the underlying plaintiffs, and the entire court system.

As the Stone Worker Cases have evolved, there has been a notable expansion of the allegations, and the underlying plaintiffs are now clearly alleging bodily injuries allegedly caused by exposure to non-silica, non-dust constituents of engineered stone products, as discussed next.

**B.      The Plaintiffs in the Stone Worker Cases Allege Bodily Injuries Caused by Non-Silica, Non-Dust Constituents**

As alleged in Francini's Counterclaim at issue here, the allegations and claims of the underlying plaintiffs have evolved over time with the underlying plaintiffs placing new focus and emphasis on distinct bodily injuries separate from and independent of the silica and silicosis that this Court found were "the primary injuries alleged" in the earlier lawsuits.  (Order, Dkt. 66, p. 8:4.)

The fact that the underlying plaintiffs in the Stone Worker Cases are seeking recovery for non-silica, non-dust constituents of engineered stone is made clear in the allegations of a case like Gonzalez Quiroz, which includes allegations that:

- "the toxicological properties of the resin, metallic pigments and other additives of the product that are produced during fabrication processes as particles and probably metal fumes, thereby increasing the respiratory toxicity of the product."  Complaint ¶ 635, HRFJN, ¶ 27, Ex. 27.

- although material Safety Data Sheets warn against breathing "vapours or fumes that may be evolved during processing"—the warning is allegedly

FRANCINI, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS (2)

"inadequate . . . because it does not inform the workers how to process the product without breathing . . . vapors." *Id.* at ¶ 768.

- warnings about not breathing "fumes/gas/mist/vapors/spray" are inadequate to protect the workers from exposure to the harmful constituents allegedly contained in such byproducts of the fabrication process. *Id.* at ¶ 779.

- NIOSH analyses of VOC gases emitted during the fabrication process "revealed that methyl metha-crylate (MMA) was the most abundant compound, with a generation rate of 6.9 mg g$^{-1}$ (0.69% of the mass removed from sawing Corian® became MMA vapor)." *Id.* at ¶ 783.

Discovery served by the underlying plaintiffs in the Stone Worker Cases also reflects that they seek recovery for bodily injuries allegedly caused by non-silica, non-dust harmful constituents to which they are allegedly exposed. For example:

> . . . Fabrication workers who cut, grind, drill, chip, edge, and/or polish artificial stone products are not only exposed to high concentrations of respirable crystalline silica, but are also exposed to other toxic substances in artificial stone, including metals used as pigments and polymeric resins as binders. ***In addition to crystalline silica, pulmonary fibrosis (scarring of the lung tissue) is caused by many metals that are constituents of artificial stone, including aluminum, antimony, arsenic, chromium, cobalt, copper, iron, manganese, nickel, titanium, tungsten, and vanadium. Some of these metals also cause an immunologic lung disease called hypersensitivity pneumonitis*** characterized by granulomas in lung tissue that also causes pulmonary fibrosis. Fabricating artificial stone products ***also produces volatile organic compounds (VOCs), the predominant species being styrene, but also including phthalic anhydride, benzene, ethylbenzene, and toluene. Styrene and phthalic anhydride are respiratory irritants that cause various pulmonary effects including asthma, bronchiolitis obliterans, decreased lung function as well as sclerosis and fibrosis.***

E.g., Eleazar Resendiz Cortes's Responses to Special Interrogatories, Interrogatory No. 4, p. 4:13-19 (emphasis added); Ismael Manzano Chavarria's Responses to Form Interrogatories, Interrogatory No. 17.1, pp. 17:16-22, 17:27-18:3 (emphasis added);

FENNEMORE LLP
ATTORNEYS AT LAW
SAN DIEGO

Case No. 2:23-cv-10047                    6
FRANCINI, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS (2)
52376282.6

Declaration of Jennifer Cormier filed herewith, ¶¶ 3-6.  See also, Francini's Appendix filed herewith referencing similar allegations in the underlying plaintiffs' pleadings.

There is, further, evolving research on the potential for non-lung injuries resulting from exposure to carcinogens and vapors allegedly released during the fabrication process.  2023 Engineered Stone Study, p. 5 ("Benzene, despite being measured at low concentrations, is classified as a Group 1 human carcinogen [] and exposure to toluene vapour can be detrimental to the central nervous system [].") Significantly, Plaintiffs' silica exclusion limits coverage only for "'Bodily Injury' arising, in whole or in part . . . out of silica or silica related dust."  Motion, p. 9:3-24. There is no dispute that the underlying actions include allegations of silica related injuries; these allegations are, however, not controlling, where the ***proper inquiry*** is whether the underlying actions allege ***any*** bodily injury at all caused by substances separate and apart from silica and silica related dust.

According to Francini's allegations, these exemplary allegations, and the expert article cited herein, VOCs, fumes, gas, mist, vapors, and sprays are claimed to be injuring the underlying plaintiffs' lungs in separate and distinctly different ways than silica and/or silica related dust.  As applied to coverage for asbestos contamination, the *Armstrong* Court advised that the "physiological processes that actually occur upon inhalation of asbestos-related fibers [] continue" over time because of the gradual cellular and eventual systemic effects on the body.  45 Cal. App. 4th at 44.  Likewise, the effect of the fumes, gas, mist, vapors, and spray, and in particular the gaseous VOCs, on the body occur over time having differing alleged physiological effects.

It is exactly these, even cellular, physiological processes that are relevant to the potential for coverage and the true nature and cause of the underlying plaintiffs' injuries that require determination by presentation of expert evidence to the trial courts.  Undoubtedly, the allegations, coupled with the expert articles and investigation of these issues, establish the potential that the non-silica contaminants

FENNEMORE LLP
ATTORNEYS AT LAW
SAN DIEGO

Case No. 2:23-cv-10047                          7

FRANCINI, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR
JUDGMENT ON THE PLEADINGS (2)

52376282.6

by Hanover's policies caused covered bodily injuries separate and distinct from those caused either by silica or silica related dust.  Thus, the duty to defend exists.

**C.**     **Francini's Counterclaim Adequately Alleges the Existence of the Non-Silica, Non-Dust Allegations**

While Francini disputes the allegations being made against it in the Stone Worker Cases, it has incorporated those allegations into its own Counterclaim that the Motion seeks to dismiss.  Such allegations include:

- The underlying complaints ***"specifically include, identify, and make claim for bodily injuries separate and apart from silicosis caused by substances separate and apart from silica and/or pollutants,*** including but not limited to fibrotic lung disease caused by the inhalation of the metals allegedly contained in the products at issue."  Counterclaim ¶ 3.

- The Stone Worker Cases allege that "workers who cut, grind, drill, chip, edge, and/or polish artificial stone products are . . . exposed to other toxic substances in artificial stone, including metals used as pigments and polymeric resins as binders."  Counterclaim ¶ 4.

- Allegations that "pulmonary fibrosis (scarring of the lung tissue) is caused by many metals that are constituents of artificial stone, including aluminum, antimony, arsenic, chromium, cobalt, copper, iron, manganese, nickel, titanium, tungsten, and vanadium. Some of these metals also cause an immunologic lung disease called hypersensitivity pneumonitis characterized by granulomas in lung tissue that also causes pulmonary fibrosis."  Counterclaim ¶ 4.

Counterclaim, Dkt. 71, p. 13, ¶¶ 3-4, p. 16, ¶ 11 (emphasis added); *Joaquin Fernando Alvarado, et al. v. 405 Cabinets, Inc., et al.*, Orange County Superior Court Case No. 30-2025-01460547-CU-TT-CXC (Feb. 18, 2025) (emphasis added), FRFJN, ¶ 3, Ex.

FENNEMORE LLP
ATTORNEYS AT LAW
SAN DIEGO

Case No. 2:23-cv-10047                8
FRANCINI, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR
JUDGMENT ON THE PLEADINGS (2)
52376282.6

78.[4]  In contrast, the Court's prior Order on this matter referenced a complaint filed April 5, 2023 as the exemplar supporting its conclusion.  Order, Dkt. 66, p. 3:5-4:10.

## III.  ARGUMENT

### A.  Francini has Adequately Alleged the Potential for Coverage

Whereas here Hanover seeks to avoid its duty to defend based on application of exclusions, California's bar is set extremely high:  "an insurer that wishes to rely on an exclusion has the burden of proving, through conclusive evidence, that the exclusion applies in all possible worlds," *Atlantic Mutual Ins. Co. v. J. Lamb, Inc.*, 100 8 Cal. App. 4th 1017, 1039 (2002).  This, Hanover has not and cannot do.  As explained by the Supreme Court in *E.M.M.I. Inc. v. Zurich American Ins. Co.* (2004) 32 Cal. 4th 465, 471 ("***EMMI***") and as applicable here:

> Furthermore, **policy exclusions are strictly construed [citations],** while exceptions to exclusions are broadly construed in favor of the insured [citations].  **'"[A]n insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear.** As we have declared time and again **'any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect.'** [Citation.] Thus, **'the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language.'** [Citation.] The exclusionary clause 'must be conspicuous, plain and clear.'" [Citation.]  This rule applies with particular force when the coverage portion of the insurance policy would lead an insured to reasonably expect coverage for the claim purportedly excluded.' [Citation.]

*EMMI*, at 471 (emphasis added, citations omitted).  In order to protect the objectively reasonable expectations of the insured, the ambiguities in the policies should be construed against the insurer, in favor of coverage, affording the greatest possible protection for the insured.  *EMMI*, at 470-71; *White v. Western Title Ins. Co.*, 40 Cal.

---

[4] While pending at the time of the filing of the Counterclaim, the Alvarado Action was inadvertently omitted from Francini's Exhibit A listing of pending cases at issue.  Counsel have met and conferred in this regard and agree that, to the extent necessary, any allegations regarding the Alvarado Complaint can be addressed by Plaintiffs in Reply without objection.  Notably, these very same allegations appear in the Gonzalez Quiroz Complaint specifically addressed by Plaintiffs in its Motion, including at Complaint ¶¶ 96, 97, and 111.  HRFJN, ¶ 17, Ex. 17.

FENNEMORE LLP
ATTORNEYS AT LAW
SAN DIEGO

Case No. 2:23-cv-10047                                9
FRANCINI, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS (2)
52376282.6

3d 870, 881 (1985) ("Whereas coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured… exclusionary clauses are interpreted narrowly against the insurer." (internal quotations and citations omitted)).  Hanover has failed to meet its burden to demonstrate that its exclusions unambiguously apply to avoid the duty to defend in relation to the facts and context at issue here.

### B.    A Showing That Silica Dust Predominates or Generated the Stone Worker Cases Does not Defeat Hanover's Duty to Defend

Hanover's arguments and the Court's prior Order impermissibly broad brush the underlying allegations as being *primarily*, *mainly*, and/or *focusing* on silica, silica related dust, and/or silicosis.  Even if that characterization were true, the plain meaning of these words means that these allegations do not stand alone; there are additional allegations beyond those argued to be "primary" which *require* consideration.  As explained in *North Counties Engineering, Inc. v. State Farm Gen. Ins. Co.*, "A duty to defend exists when the lawsuit against the insured seeks damages *on any theory* that, if proved, would be covered by the policy."  224 Cal. App. 4th 902, 919 (2014) (emphasis added).  The corollary to this rule was first stated by the Supreme Court in *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 276 n.15 (1966), and repeated in *Montrose Chemical Corp. v. Sup. Ct.*, 6 Cal. 4th 287 (1993), holding that a defense is excused only when "the third party complaint *can by no conceivable theory raise a single issue* which could bring it within the policy coverage."  *Id.* at 300.  Significantly, if coverage depends on an unresolved factual dispute, the very existence of that dispute establishes a possibility of coverage and thus a duty to defend.  *Horace Mann*, 4 Cal. 4th at 1085.

Whether Hanover or this Court believe these allegations to be true, capable of proof, or as not reflecting the gravamen of the underlying plaintiffs' claims is immaterial; the very existence of these allegations is sufficient to create the possibility of coverage, triggering the duty to defend.  *Montrose*, 6 Cal. 4th at 300; *North Counties*, 22 Cal. App. 4th at 920 (courts must look for *any* evidence or allegations that support the duty to defend); *Pension Trust,* 307 F.3d at 951 (duty to defend does

FENNEMORE LLP
ATTORNEYS AT LAW
SAN DIEGO

Case No. 2:23-cv-10047                    10
FRANCINI, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR
JUDGMENT ON THE PLEADINGS (2)
52376282.6

1  not "turn on whether facts supporting a covered claim predominate or generate the

2  claim," and even "remote facts buried within causes of action that may potentially

3  give rise to coverage are sufficient to invoke the defense duty").

4      Francini again submits that this Court's prior ruling in *American Zurich* got it

5  right and should be followed here. *American Zurich Ins. Co. v. James N. Gray*

6  *Company¸* No. SACV 13-1966 AG (JPRx), 2014 WL 11430928 (C.D. Cal. July 25,

7  2014) ("***American Zurich***").  As this Court previously noted,

8          The plaintiffs in the underlying case at issue there worked for
       Boeing and sued contractor defendants who were doing demolition and
9       construction work at the Boeing facility where plaintiffs worked.
       *American Zurich*, 2014 WL 11430928, at *1. They alleged that the
10      defendants breached a duty of care by doing their demolition work
       negligently and causing "toxins, including dust and silica, to enter the
11      air at the not absolve the insurance company of its duty to defend
       because the insurance company had not eliminated any possibility of
12      coverage where silica, which is found in many commonplace materials,
       is alleged to cause harm with dozens of other chemicals.  Boeing job
13      site where [plaintiffs] worked, which was then breathed by [plaintiffs]."
       *Id.* Specifically, they alleged being exposed to toxic chemical products
14      "contain[ing] significant concentrations of aromatic solvents, aliphatic
       solvents, naphthenic solvents, chlorinated solvents, other organic
15      solvents, silica, and other toxic chemicals." *Id.* Based on these
       allegations, the court found that the silica exclusion in the insurance
16      policies did not absolve the insurance company of its duty to defend
       because the insurance company had not eliminated any possibility of
17      coverage where silica, which is found in many commonplace materials,
       is alleged to cause harm with dozens of other chemicals.
18
19
20
21

22  Order, Dkt. 66, pp. 7:19-8:3.  In error, and in a manner incompatible with established

23  duty to defend law, the Court went on to find *American Zurich* distinguishable based

24  on what it characterized as the "primary allegations," with silica being the "main

25  chemical contributing to their injuries," further characterizing the "focus" of the

26  allegations as being based on silica exposure.  *Id.* at p. 8:4-11.

27      As has been clearly demonstrated, the evolving allegations make clear that, as

28  in *Zurich American*, a multitude of other chemicals (per above discovery responses,

FENNEMORE LLP
ATTORNEYS AT LAW
SAN DIEGO

Case No. 2:23-cv-10047                    11
FRANCINI, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR
JUDGMENT ON THE PLEADINGS (2)
52376282.6

at current count 12 additional metals, and five VOCs, many of which are identified as fumes or vapors, and not dust) are allegedly causing bodily injuries unrelated to silica or silica dust.  As California law also makes clear, regardless of how prevalent the silica allegations are, these additional allegations, no matter how small, must control in relation to the duty to defend.  *Horace Mann*, 4 Cal. 4th at 1083 (although lacking in specificity, "complaint evinced a possibility" for liability outside of the largely excluded conduct); *Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co.*, 45 Cal. App. 4th 1, 97-98 (1996) (court must look for any evidence, no matter how small, that supports coverage).

**C.**    <u>**Factual Disputes Related to Causation and the Specific Injuries Caused by Non-Silica, Non-Dust Constituents Prevent This Court From Granting Hanover's Motion**</u>

In order to prevail on the Motion, Hanover must "clearly" establish on the face of the pleadings that (1) no material issue of fact remains to be resolved; and (2) it is entitled to judgment as a matter of law.  *Doleman,* 727 F.2d at 1482.  Indeed, Hanover agrees that all allegations of fact opposing the Motion must be accepted as true and construed in the light most favorable to Francini.  *Id.*; *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir.1988); Motion, p. 10:26-11:1.  Notably, the Court should not engage in weighing evidence or credibility.  *Lively v. WAFRA Investment Advisory Group, Inc.*, 6 F.4th 293, 304 (2nd Cir. 2021).

Motions for judgment on the pleadings are "functionally identical to Rule 12(b)(6) motions."  *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1201 (9th Cir. 2021) (quoting *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011)) (internal quotation marks omitted).  Therefore, "when ruling on either type of motion 'courts must consider the complaint in its entirety, as well as other sources . . ., in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"  *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)).  Documents for

FENNEMORE LLP
ATTORNEYS AT LAW
SAN DIEGO

Case No. 2:23-cv-10047                    12

FRANCINI, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS (2)

52376282.6

consideration include the pleadings, any documents attached to or mentioned in the pleadings, documents not attached but "integral" to the claims, and matters subject to judicial notice. *Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2nd Cir. 2011); *Massey v. Ojaniit*, 759 F.3d 343, 347-348 (4th Cir. 2014).

These rules require that the Court accept as true Francini's allegations, particularly whereas here, these allegations are plainly supported by the pleadings and evidence adduced in the underlying actions, including:

- That the underlying plaintiffs' claims have evolved over time to specifically include, identify, and make claim for bodily injuries separate and apart from silicosis caused by substances separate and apart from silica and/or silica related dust. Counterclaim, Dkt. 71, p. 13, ¶ 3; p. 16, ¶ 11.

- That the underlying plaintiffs are presenting expert and other evidence (including discovery) asserting these separate and distinct claims. Counterclaim, Dkt. 71, p. 15, ¶ 5.

- That these more robust and specific claims are not only being made in the underlying actions specifically identified herein but are being asserted in all similarly situated actions.  Counterclaim, Dkt. 71, p. 16, ¶ 11.

Hanover's efforts to shift the burdens, asserting that Francini cannot show that the additional toxins identified were separate and distinguishable from silica, Motion, p. 18:9-15, should be disregarded, where the law requires **Hanover** to prove operation of its exclusions by reference to undisputed facts.  *Horace Mann*, 4 Cal. 4th at 1085. While there can be no doubt that the underlying actions seek damages for injuries caused by silica, there can also be no doubt that they seek damages for separate bodily injuries caused by toxins separate and apart from silica and silica related dust (as more fully set forth above, the allegations include reference to vapors "(VOCs), the predominant species being styrene, but also including phthalic anhydride, benzene, ethylbenzene, and toluene. Styrene and phthalic anhydride are respiratory irritants that cause various pulmonary effects including asthma, bronchiolitis obliterans,

FENNEMORE LLP
ATTORNEYS AT LAW
SAN DIEGO

Case No. 2:23-cv-10047                    13

FRANCINI, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR
JUDGMENT ON THE PLEADINGS (2)

52376282.6

decreased lung function as well as sclerosis and fibrosis."). The factual evidence is, at best, in dispute. Construing the exclusion narrowly and accepting all inferences in favor of Francini, Hanover's duty to defend is triggered by these separate allegations that Hanover has not and cannot disprove, as required by its burden.

As Hanover's exclusions **do not clearly apply**, Hanover's duty to defend is established. *Walker v. Armco Steel Corp*., 446 U.S. 740, 750 (1980) (California law is controlling as to substantive issues in diversity action); *Montrose*, 6 Cal. 4th at 301 (if an insurer cannot prove the absence of a duty to defend as a matter of law, the duty to defend is established). Thus, Hanover is not entitled to judgment.

Here, the factual disputes are many; however, the most glaring disputes, which will no doubt be resolved by expert evidence in the underlying actions, include:

- Whether, as a matter of fact and science, each and every bodily injury alleged, *if any*, was caused by silica, silica-related dust, or some other toxin the plaintiffs were allegedly exposed to, such as metals,[5] VOCs, vapors, and fumes, containing, among other things, *vapors* that are known carcinogens (benzene) and known to be damaging to the central nervous system (toluene).

- Whether, as a matter of fact and science, the VOC gases, or any of the other fumes, mist, vapors, and spray identified as causing and/or contributing to the underlying plaintiffs' bodily injuries constitute "silica-related dust".

- Whether, as a matter of fact and science, the multitude of metals identified as causing and/or contributing to the underlying plaintiffs' bodily injuries constitute "silica-related dust".

- The exact nature and extent of the underlying plaintiffs' injuries alleged as supporting their claims for damages.

As explained in *North Counties*, in order to rule as the law requires, the Court

---

[5] Hanover's assertion that "even if Francini properly alleged the Underlying Actions make claims for bodily injuries which arise from Metals only, they would be barred by the total pollution exclusion" (Motion, p. 20:8-10), only proves the fact that this is a reasonable interpretation and possibility--thus establishing the duty to defend owed. Moreover, Hanover's application of the pollution exclusion to these localized exposures is flawed and cannot be adopted by this Court.

FENNEMORE LLP
ATTORNEYS AT LAW
SAN DIEGO

FRANCINI, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS (2)

52376282.6

must determine whether there is ***any evidence or allegation*** that might support a conclusion that there is a duty to defend, as opposed to looking only at the evidence that implies otherwise. *North Counties*, 22 Cal. App. 4th at 920.  For example, where the trial court's response was that *most* of the work at issue there fell within the professional services exclusion and the trial court itself characterized the case as being "about" a sophisticated project involving professional engineering services, the Court advised:  "While we may not agree with such description, we must ask how can a court determine what a case is 'about' until it hears the case.  And until it hears the case, the evidence is unknown. . . .  The law requires a trial court . . . to look for any evidence that might support [the insureds], and draw all inferences in their favor.  The court here acted 180 degrees contrary.  And reached the wrong conclusion.  There was evidence supporting [the insurer's] duty to defend." *Id.* at 921-22.

*North Counties* is similarly instructive on the required consideration of evidence in favor of coverage in relation to construction work that indisputably fell outside of the professional services exclusion: "'. . . He's being sued for the construction work.  He's being sued for everything NCD did.  He's being sued for that, too.' Counsel for State Farm responded: 'I don't disagree with that, your Honor.' Indeed, the trial court itself acknowledged as much, commenting that if 'there was construction activity in fairness to the facts of this case, *most* of [it] is being done by NCD not NCE.' (Italics added.) Maybe so.  Maybe not.  But the fact that *any* of it was being done by an insured is enough." *Id.* at 928; see also *Armstrong*, 45 Cal. App. 4th at 97-99 (the policy is triggered, no matter what the level of contamination, no matter how small the quantity of released asbestos fibers, so long as it occurred during the policy period).

These controlling authorities inform that this Court must solely analyze whether the alleged injuries have the "bare 'potential' or 'possibility'"[6] of being partially or

---

[6] The question of potential causation is different from the factually intensive question of causation. The former requires any bare possibility while the latter requires weighing evidence presented at trial. *Montrose*, 6 Cal. 4th at 300; *Armstrong*, 45 Cal. App. 4th at 36.

FENNEMORE LLP
ATTORNEYS AT LAW
SAN DIEGO

FRANCINI, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS (2)

52376282.6

wholly caused by the non-excluded toxins that are plainly identified and alleged. *Montrose*, 6 Cal. 4th at 300.  The existence of an insurer's duty to defend "turns not upon the ultimate adjudication of coverage under its policy of insurance, but upon those facts known by the insurer at the inception of a third party lawsuit.  Hence, the duty may exist even where coverage is in doubt and ultimately does not develop." *Id.* at 295.

Despite Hanover's misleading citation to the contrary, Motion, p. 12:6-10, it is well established that *all facts* before the court in determining the duty to defend, including extrinsic evidence adduced after the filing of the complaint, *must be considered* with all inferences and disputes being resolved in favor of the insured and coverage.  *Id.* at 300 ("[t]he duty to defend is determined by reference to the policy, the complaint, and all facts known to the insurer from any source."); *Amato v. Mercury Casualty Co.*, 18 Cal. App. 4th 1784 (1993) (insured can create a duty to defend by merely communicating facts to insurer which, if true, would establish coverage); *Millennium Labs., Inc. v. Darwin Select Ins. Co.*, 2014 WL 12102168, *5 (S.D. Cal. May 13, 2014) (duty to defend triggered based on information contained in later adduced allegations and discovery responses).

The multitude of California Supreme Court duty to defend opinions emphasizes looking for even the slightest implication or inference of coverage to protect the reasonable expectations of the insureds.  *Montrose*, 6 Cal. 4th at 295-96 (citing *Horace Mann*, 4 Cal. 4th 1076) (insureds' need to call on insurers' superior resources is significant motive for purchase of insurance; accordingly, courts are consistently solicitous of these expectations).  As explained nearly thirty years ago, when it comes to "claims that are at least potentially covered, the insurer gives, and the insured gets, just what they bargained for, the mounting and funding of a defense." *Buss*, 16 Cal. 4th at 49.  This is what the law requires based on the facts alleged and at issue here.

### D.    <u>Hanover's Pollution Exclusions do not Apply at all to the Localized Exposure Allegations Here at Issue</u>

Hanover's attempt to create the illusion that it has some type of super-pollution

FENNEMORE LLP
ATTORNEYS AT LAW
SAN DIEGO

Case No. 2:23-cv-10047                16

FRANCINI, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR
JUDGMENT ON THE PLEADINGS (2)

52376282.6

exclusion fails because: (1) the California Supreme Court's opinion in *MacKinnon* provides the controlling standard, including as to Hanover's absolute pollution exclusion—whether the underlying plaintiffs' alleged injuries arise from events commonly thought of as traditional environmental pollution; (2) exposure to silica in the context at issue is not traditional environmental pollution, where the underlying lawsuits allege harm from exposures occurring in "small shops" with installations into "kitchens and bathrooms"; and (3) the underlying actions do not allege, and Hanover cannot otherwise prove, the widespread contamination characteristic of environmental pollution under *MacKinnon*.

No layperson or policyholder, particularly not a product supplier like Francini, would consider silica, metals, or VOCs as traditional environmental pollutants in the products-liability context of the underlying lawsuits. Silica is not a pollutant under traditional environmental laws, and the mechanism of harm alleged is not exposure to silica, metals, or VOCs through general environmental pollution. The mechanism of alleged harm is direct exposure through the underlying plaintiffs' fabrication of the products in the ordinary course of business. This is not pollution. *National Foam, Inc. v. Zurich American Ins. Co.*, 768 F. Supp. 1009, 1017-1019 (N.D. Cal. 2025) ("[T]he Allen plaintiffs allege direct exposure to National Foam's products during their ordinary use, which is not pollution.").

### 1. *MacKinnon* Controls

Application of the pollution exclusion begins with *MacKinnon*.[7] There are four key building blocks to *MacKinnon*'s analysis:

First, *MacKinnon* emphasized that the pollution exclusion's historical purpose was to preclude coverage for traditional environmental pollution, explaining that the exclusion was a response to "anti-pollution laws enacted between 1966 and 1980"

---

[7] *MacKinnon* applies to the Total Pollution Exclusion. *Great Am. Assurance Co. v. MS Indus. Sheet Metal*, No. SACV11754JSTMLGX, 2012 WL 13018550, *3 (C.D. Cal. Jan. 31, 2012) (pollution exclusion interpreted in *MacKinnon* was "materially identical" to the Total Pollution Exclusion, stating "*MacKinnon* and its progeny controls"); *EFK Invs., LLC v. Peerless Ins.*, No. 13-CV-5910 YGR, 2014 WL 4802920, *5 (N.D. Cal. Sept. 26, 2014) (same conclusion).

FENNEMORE LLP
ATTORNEYS AT LAW
SAN DIEGO

FRANCINI, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS (2)

52376282.6

(*e.g.*, the Clean Air Act, CERCLA).  31 Cal. 4th at 643, 645, 653.

Second, the Court explained that the terms used in the exclusion, like "disperse," when used in reference to a pollutant, should be interpreted to mean the wide spread of pollution, rather than confined exposures.  *Id.* at 651 ("To 'disperse' is defined, variously as 'to cause to become spread *widely*' . . ..  The notion of 'dispersal' as a *substantial* dissemination is reinforced by its use with the term 'pollutant.'") (emphasis original).

Third, the Court recognized that a reasonable policyholder would not understand its CGL policy and a pollution exclusion "to exclude coverage for *anything* that irritates," it being "far more reasonable that a policyholder would understand it as being limited to irritants and contaminants commonly thought of as pollution."  *Id.* at 653.

Finally, the Court ruled that "limiting the exclusion to environmental pollution appears reasonable in light of the purpose of CGL policies—which is to provide the insured with the broadest spectrum of protection against liability for unintentional and unexpected personal injury" arising out of the insured's business.  *Id.* at 654.

*MacKinnon*, thus, held that the pollution exclusion applies only to traditional environmental pollution and *not* to all injuries involving the negligent use or handling of toxic substances in the normal course of business.  *Id.* at 642, 645, 655-56.  On the facts, *MacKinnon* concluded that the mechanism of harm at issue there – the "normal, though negligent, residential application of pesticides" – was not pollution within the meaning of the exclusion.  *Id.* at 654.  That same analysis applies equally here.

### 2.    The Underlying Plaintiffs Do Not Allege Injury From Traditional Environmental Pollution

Silica is not what a layperson would consider as a traditional environmental pollutant.  In evaluating the meaning of the pollution exclusion, *MacKinnon* identified environmental, anti-pollution legislation as a relevant consideration.  *MacKinnon*, 31 Cal. 4th at 653.  As relevant here, silica is not a "toxic pollutant" under the Clean Water Act.  33 U.S.C. § 1317, 40 C.F.R. § 401.15 (2011).  Nor is it

FENNEMORE LLP
ATTORNEYS AT LAW
SAN DIEGO

Case No. 2:23-cv-10047                18
FRANCINI, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR
JUDGMENT ON THE PLEADINGS (2)

52376282.6

a "hazardous air pollutant[]" under the federal Clean Air Act. 42 U.S.C. § 7412(b).[8] Nor does Hanover make any affirmative showing that silica, metals, or VOCs, which also allegedly causing bodily injury, are traditional environmental pollutants within the meaning of *MacKinnon*. Hanover must demonstrate that ***any and all*** substances identified are traditional environmental pollutants to avoid the duty to defend.

Silica, metals, and VOCs are not the same as asbestos, and this case is not like *Villa Los Alamos Homeowners Assn. v. State Farm General Ins. Co.*, which Hanover cites. 198 Cal. App. 4th 522 (2011). In *Villa Los Alamos*, the court found asbestos to be a pollutant where it was widely disbursed throughout the air within a three-story apartment complex and outside of the building into adjoining outdoor spaces and streets. *Id.* at 540. Recognizing "it is proper to consider state and federal environmental laws when determining whether a particular substance is a 'pollutant,'" *Villa Los Alamos* relied on the categorization of asbestos as a pollutant under the Clean Water Act and Clean Air Act to conclude the widespread dissemination of asbestos constituted an environmental pollution event. *Id.* at 536. The same is simply not true of silica, metals, or the VOCs at issue here.

Further, "courts recognize that 'pollution' is not just a class of substances . . ., but also a mechanism of harm." *National Foam*, 768 F. Supp. 3d at 1017. When plaintiffs are allegedly harmed by direct exposure to the stone products, the pollution exclusion does not apply. *Id.* at 1017 ("[T]he harms did not arise from 'pollution' in any recognizable sense. The [] plaintiffs allege that they were exposed to PFAS in their ordinary use of [the] products, not via general environmental pollution (i.e., a

---

[8] Federal OSHA regulations identify silica as a potential air contaminant. 29 C.F.R. 1910.1000. But workplace safety regulations, which cover a vast array of subjects and materials, are not the same as the traditional environmental laws cited in *MacKinnon*. The examples of traditional environmental pollution discussed by *MacKinnon* included things like remediation of hazardous wastes, environmental catastrophes related to intentional industrial pollution, and pesticide runoff into soil and groundwater. 31 Cal. 4th at 645, 652, 653. Ultimately, as *Garamendi* recognized, "the mere fact that silica, like almost anything else, may be an irritant or contaminant under some circumstances is not dispositive." 127 Cal. App. 4th at 486. Here, the circumstances do not support a ruling that silica exposure to a worker while fabricating or installing residential stone countertop products is traditional environmental pollution.

FENNEMORE LLP
ATTORNEYS AT LAW
SAN DIEGO

Case No. 2:23-cv-10047                    19
FRANCINI, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS (2)

52376282.6

1    contaminated water supply).").

2         Significantly, Hanover's reliance on the regulation of operations and the

3    setting of exposure levels as to various substances, Motion, p. 23, only proves the

4    point – there are expected and safe levels of exposure in the ordinary course of

5    business that could not possibly be considered widespread, traditional environmental

6    pollution, nor can the assertion that a large amount of dust is created in a small,

7    confined space injuring only a single worker. The coverage promised must be viewed

8    in the light most favorable to the reasonable expectations of the insured – providing

9    the broadest spectrum of protection against liability for unintentional and unexpected

10   personal injury arising out of the insured's business. *MacKinnon*, 31 Cal. 4th at 654.

11        **3.    The Underlying Plaintiffs Allege Confined Exposure to Silica,**

12              **Metals, and VOCs**

13        In applying the pollution exclusion, *MacKinnon* and other California courts

14   have considered whether the dissemination of the alleged pollutant is widespread or

15   confined. *Santaluz, LLC v. Am. Home Assurance Co.*, No. 09CV2033 JAH(POR),

16   2010 WL 11509307, *6 (S.D. Cal. Aug. 6, 2010) (rejecting application of Total

17   Pollution Exclusion to a release of sewer gas into homes because "the dispersal of

18   the sewer gas was not widespread enough"); *MS Indus. Sheet Metal,* 2012 WL

19   13018550, *4 (rejecting insurer's denial of coverage based on pollution exclusions

20   where the plaintiffs were exposed to toxic chemicals "in a localized area").

21   Residential bathrooms and kitchens are clearly confined spaces. The allegations of

22   the underlying lawsuits refute Hanover's reliance on the Total Pollution Exclusion.

23        This Court's decision in *American Zurich* illustrates how *MacKinnon* applies.

24   2014 WL 11430928. In *American Zurich*, the underlying plaintiffs alleged bodily

25   injuries from their "demolition and construction work" at a Boeing facility, which

26   exposed them to "toxins, including dust and silica" that "enter[ed] the air at the Boeing

27   job site." *Id*. at *1. Zurich sought contribution for the claim from Liberty Mutual, which

28   denied coverage under its CGL policy based on the Total Pollution Exclusion. *Id*. at *2.

FENNEMORE LLP
ATTORNEYS AT LAW
SAN DIEGO

Case No. 2:23-cv-10047                          20
FRANCINI, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR
JUDGMENT ON THE PLEADINGS (2)
52376282.6

Applying *MacKinnon*, the Court considered "how a layperson would reasonably interpret" the exclusion and determined that Liberty Mutual "cannot show there is no possibility of coverage, because it cannot conclusively show that the alleged activity is traditionally thought of as pollution under *MacKinnon*'s guiding principles." *Id.* at *4. Specifically, the court held that "[a] reasonable layperson or policyholder wouldn't necessarily think of the release of 'toxins, including silica and dust' in the demolition business as traditional pollution," particularly where plaintiffs were injured via "more confined releases of dust." *Id.* at *4-5. And because the Total Pollution Exclusion "[did] not plainly and clearly exclude the release of 'toxins, including silica and dust' in the demolition business," there was a possibility of coverage precluding summary judgment for the insurer. *Id.* at *4.

This same analysis applies here. No reasonable layperson would consider the fabrication, polishing, and installation of bathroom and kitchen countertops, and the related direct exposure to silica, metals, or VOCs in confined indoor spaces, to fit within the traditional environmental terms of art "discharge, dispersal, seepage, migration, release or escape." There are no allegations of "widespread release of silica-containing dust into the air." *American Zurich*, at *5. As in *American Zurich*, the Bodily Injury Lawsuits' allegations reflect "confined releases of dust … not commonly be thought of as pollution." *Id.* The Court's analysis here is even more straightforward than in *American Zurich*, which concerned "demolition and construction work" within an entire Boeing facility. *Id.* at *1.

Like Liberty Mutual in the *American Zurich* action, Hanover here relies on *Garamendi v. Golden Eagle Ins. Co.*, 127 Cal. App. 4th 480 (2005), finding that the "widespread dissemination of silica dust as an incidental by-product of industrial sand blasting operations" at issue there could be considered environmental pollution. However, as noted by a leading insurance treatise, the *Garamendi* opinion is of limited and doubtful value.

Fennemore LLP
Attorneys at Law
San Diego

Case No. 2:23-cv-10047                    21
FRANCINI, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS (2)

52376282.6

> The nature of the proceeding in the trial court and the standard of review before the court of appeal in *Garamendi v. Golden Eagle Ins. Co.*, 127 Cal. App. 4th 480, 25 Cal. Rptr. 3d 642 (1st Dist. 2005), **cast doubt on the decision's precedential value**. The court was reviewing the Insurance Commissioner's rejection of a claim in a liquidation proceeding rather than an insurer's denial of coverage. Because the Commissioner's decisions are reviewed under an abuse of discretion standard, the issue before the court was whether the Commissioner's coverage position was reasonable. The court did not need to address whether the policyholder's position also was reasonable for purposes of determining whether the policy was ambiguous.

John K. DiMugno & Paul E.G. Glad, *California Insurance Law Handbook*, § 45:37, fn. 1 (emphasis added).

Further, as noted by the *American Zurich* court in distinguishing *Garamendi*, context matters—the "widespread" nature of the dispersal of dust, traveling over large distances, affecting 47 plaintiffs in *Garamendi*, was not comparable for this Court to find that the Total Pollution Exclusion applied to the dust allegedly being disseminated from the demolition and construction activities at the Boeing site at issue before it. *American Zurich*, at *5.

> In the context of dust released from a demolition site, a layperson might reasonably interpret the pollution exclusion to not exclude more confined releases of dust, as such releases may not commonly be thought of as pollution. Thus *Garamendi* does not eliminate the possibility of coverage, and does not justify summary judgment here.

Accordingly, Liberty Mutual was required to share in the defense with its co-insurer, which had already acknowledged the potential for coverage there presented.

Notably, the few cases that have cited *Garamendi* approvingly featured similar allegations of "widespread" dispersal. *See Cold Creek Compost, Inc. v. State Farm Fire & Cas. Co.*, 156 Cal. App. 4th 1469, 1480-81 (2007) ("[T]he widespread dissemination of offensive and injurious odors from a commercial compost facility is 'environmental pollution' under *MacKinnon*"); *Nat'l Fire Ins. Co. of Hartford v.*

FENNEMORE LLP
ATTORNEYS AT LAW
SAN DIEGO

Case No. 2:23-cv-10047                    22

FRANCINI, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR
JUDGMENT ON THE PLEADINGS (2)

52376282.6

*Martinelli*, No. 07-CV-01056-AWI-GSA, 2008 WL 2725070, *11 (E.D. Cal. July 11, 2008) ("[T]he widespread flooding of a substantial amount of saltwater/brine from a commercial process pond onto adjacent agricultural land" was environmental pollution).[9]

In contrast, the Ninth Circuit recently held that wildfire debris from California wildfires unloaded at a waste facility did not constitute a "pollutant" for purposes of the pollution exclusion because this was not "an event commonly thought of as pollution" under *MacKinnon*, reaffirming that that any doubt as to whether the facts establish a duty to defend must be resolved in the insured's favor. *Wesco Insurance Company v. Brad Ingram Construction*, 2024 WL 243344 *2 (9th Cir. 2024).

The underlying actions here allege a ***localized*** dispersal of dust arising from the fabrication and cutting of kitchen and bathroom countertops at small shops and/or inside homes where each action involves injury to a single worker, with no evidence of overlap—a far different situation than was presented in *Garamendi*.

In order to give the false appearance that the operations at issue here were similar to the sand blasting operations at issue in *Garamendi*, Hanover go so far as to call them "industrial operation[s]", utilizing quotations with a citation to each complaint. (Motion, p 18:24-27.) However, **none** of Hanover's citations contain an allegation of an "industrial operation"—many of the complaints allege that the work was performed "mostly in homes" or "mostly in home kitchens and bathrooms." E.g., HRFJN, Exh. 4, ¶ 81; Exh. 6, ¶ 37; Exh. 15, ¶ 61; Exh. 17, ¶ 35. Surely, if the alleged release of silica dust from a demolition and construction site at a Boeing facility does not constitute traditional environmental pollution, the alleged release of dust in a home kitchen or bathroom would be considered as the same type of "confined release" not commonly thought of as pollution. *American Zurich*, at *5.

---

[9] This case is distinguishable from *Villa Los Alamos*, where the dissemination of asbestos was clearly widespread. 198 Cal. App. 4th at 540 ("[A]sbestos . . . became airborne and spread throughout building 300, including its corridors, stairwells, in residential units, inside the HVAC system, and onto the exterior grounds…and in parking lots and a private street.").

Case No. 2:23-cv-10047                      23
FENNEMORE LLP
ATTORNEYS AT LAW
SAN DIEGO
FRANCINI, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR
JUDGMENT ON THE PLEADINGS (2)
52376282.6

Even if it could be said that reasonable minds could differ as to the nature of the allegations, as did the two insurers in *American Zurich*, that only solidifies the duty to defend, rendering it impossible for Hanover to meet their burden to prove, through undisputed, conclusive facts, that the Total Pollution Exclusion applies to preclude coverage in all possible worlds.

Finally, Hanover also relies on two pre-*MacKinnon* cases, *Charles E. Thomas Co. v. Transamerica Ins. Group*, 62 Cal. App. 4th 379 (1998) and *Titan Corp. v. Aetna Casualty & Surety Co.*, 22 Cal. App. 4th 457 (1994) for the *implication* that anytime an absolute pollution exclusion is endorsed to a policy it must be broadly applied to preclude coverage.  Motion, p. 12:12-28.  But close scrutiny reveals that neither case is on point.

Notably, the *Transamerica* action did *not* involve an absolute pollution exclusion, finding that the underlying allegations, including a potentially covered claim for property damage based on loss of diesel fuel, fell outside the pollution exclusion before the court there.  *Transamerica*, 62 Cal. App. 4th at 383.  In *dicta*, the *Transamerica* court simply contrasted a federal trial court case from Oregon (also decided well before *MacKinnon*) that applied an absolute pollution exclusion under Oregon law to preclude coverage for property damage resulting from the spillage of 873 gallons of heating oil into the soils (which the parties stipulated was a pollutant), regardless of whether the damage was caused by the property owner or a third party.  *Id.* at 383-84.  *Larsen Oil Co. v. Federated Service Ins. Co.*, 859 F. Supp. 434 (D. Or. 1994).  The obvious distinction, of course, is that here the facts do not unequivocally (or otherwise) prove the type of widespread, traditional environmental pollution required for the operation of the absolute pollution exclusion under *MacKinnon* that would avoid Hanover's duty to defend.

The *Titan* opinion, also decided before *MacKinnon*, is distinguishable—the *Titan* court found that while some of certain clean-up costs ordered by the New Jersey Department of Environmental Protection related to pollutants under an absolute

FENNEMORE LLP
ATTORNEYS AT LAW
SAN DIEGO

Case No. 2:23-cv-10047                              24
FRANCINI, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR
JUDGMENT ON THE PLEADINGS (2)

52376282.6

1  pollution exclusion (e.g., trichlorethylene contamination of soils), the action also

2  involved clean-up costs related to solid waste which "was not a contaminant nor was

3  it cleaned up to prevent 'threatened discharge, dispersal, release or escape of

4  pollutants'" within the meaning of the exclusion, but nonetheless fell within the

5  owned property exclusion of the policy. *Titan*, 22 Cal. App. 4th at 470-71.

6      While absolute pollution exclusions are enforceable in the proper context

7  supported by undisputed facts, they are not enforceable beyond the limiting law of

8  *MacKinnon*, or the disputed facts before the Court here.  Here, the allegations of

9  localized dispersal of substances in small shops and/or home bathrooms and kitchens,

10  do not clearly rise to the level of traditional environmental pollution.  Hanover is not

11  entitled to avoid its defense obligation.

**IV.    CONCLUSION**

13      There can be no question that the evolved allegations made by the underlying

14  plaintiffs raise the requisite bare potential for coverage in their clear identification of

15  a multitude of unexcluded toxins and distinct bodily injuries.  These include the VOC

16  gases, which cannot in any way be mistaken for dust, that have the potential for

17  causing, at a minimum, cancer and damage to the central nervous system.  Hanover's

18  bare argument of counsel proves nothing and fails to meet any burden.  The duty to

19  defend is owed and unavoidable on these facts.

Dated:    July 11, 2025          FENNEMORE LLP


                                 By:    */s/ Sharon A. Huerta*
                                        Sharon A. Huerta
                                        Timothy C. Earl
                                        Attorneys for Defendant and
                                        Counterclaimant, FRANCINI, INC.

FENNEMORE LLP
ATTORNEYS AT LAW
SAN DIEGO

Case No. 2:23-cv-10047          25

FRANCINI, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR
JUDGMENT ON THE PLEADINGS (2)

52376282.6