UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:23-cv-10047-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Hanover American Insurance Co. et al. v. Francini, Inc.* | | |

| Present: The Honorable | MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE |
|---|---|

| Melissa H. Kunig | None Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings:    (IN CHAMBERS) ORDER DENYING PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS [82]**

Before the Court is Plaintiffs' Motion for Judgment on the Pleadings. ECF 82. The Court read and considered the moving, opposing, and reply papers and held a hearing on the Motion on November 24, 2025. ECF 91. For the reasons stated herein, the Court **DENIES** the Motion.

## I.    BACKGROUND

This is an insurance coverage dispute arising out of personal injury claims brought by stoneworkers against various manufacturers and distributors of artificial stone products. Plaintiffs and Counter-Defendants Hanover American Insurance Company ("Hanover") and Citizens Insurance Company of America ("Citizens") (collectively, "Insurers" or "Plaintiffs") brought this action against Defendant and Counter-Claimant Francini, Inc. ("Defendant" or "Francini"), seeking a declaratory judgment that they owe no coverage or defense to Francini under various insurance policies for 17 underlying personal injury actions (the "Underlying Actions"). In the Underlying Actions, the plaintiffs (the "Underlying Plaintiffs") allege that Francini's product contained hazardous substances including respirable crystalline silica, as well as metals and volatile organic compounds, which caused injuries including silicosis and other medical conditions. The thrust of the Insurers' Complaint and the instant Motion is that coverage under the insurance policies issued to Francini is precluded by the "Silica Exclusion," and separately, by the "Total Pollution Exclusion" contained in the policies.

### A.    The Underlying Actions

One such Underlying Action was filed by Cesar Manuel Gonzalez Quiroz. Mr. Quiroz's complaint includes the following allegations relevant to the instant Motion:

- "All stone products contain crystalline silica in varying concentrations from the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:23-cv-10047-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Hanover American Insurance Co. et al. v. Francini, Inc.* | | |

lowest concentration of about 3-5% in marble to about 93-95% in traditional artificial stone."  ECF 83-1 ¶ 79.

- The fabrication of stone products "produces large amounts of respirable crystalline silica dust which stone fabrication workers inhale, typically causing chronic silicosis as well as lung cancer and various other silica-related diseases." *Id.* ¶ 81.

- Fabrication workers "are not only exposed to high concentrations of respirable crystalline silica, but are also exposed to other toxic substances in artificial stone, including metals used as pigments and polymeric resins as binders." *Id.* ¶ 82.

- "In addition to crystalline silica, pulmonary fibrosis (scarring of the lung tissue) is caused by many metals that are constituents of artificial stone, including aluminum, antimony, arsenic, chromium, cobalt, copper, iron, manganese, nickel, titanium, tungsten, and vanadium." *Id.* ¶ 83.

- "Fabricating artificial stone products also produces volatile organic compounds (VOCs), the predominant species being styrene, but also including phthalic anhydride, benzene, ethylbenzene, and toluene.  Styrene and phthalic anhydride are respiratory irritants that cause various pulmonary effects including asthma, bronchiolitis obliterans, decreased lung function as well as sclerosis and fibrosis." *Id.* ¶ 84.

- "Throughout the course of his work" as a stone cutter, Mr. Quiroz "worked with inherently hazardous stone products manufactured, imported, supplied, distributed, contracted, and/or brokered, by [Francini].  [Mr. Quiroz] was thereby exposed to and inhaled stone dust containing silica and other toxins and carcinogens, as well as artificial stone dust containing respirable crystalline silica (including quartz and cristobalite), metals . . . and volatile organic compounds from polymeric resins and other binders (including phthalic anhydride, benzene, ethylbenzene, and toluene) emitted from these products)." *Id.* ¶ 97.

- "As a direct and proximate result of his exposure to silica, metals and other toxins within said stone products . . . [Mr. Quiroz] developed lung disease characterized by pulmonary nodules, silicosis, pulmonary fibrosis, progressive massive fibrosis, and other forms of lung damage, and therefore has a significantly increased risk of developing other silica-related diseases such as lung cancer, chronic kidney disease, and autoimmune disorders such as rheumatoid arthritis, systemic lupus erythematosus, and systemic sclerosis (scleroderma)." *Id.* ¶ 98.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:23-cv-10047-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Hanover American Insurance Co. et al. v. Francini, Inc.* | | |

- "At no time did [Mr. Quiroz] personally ascertain any ingredients or contaminants of the stone products to which he was exposed in the course of his work that caused his lung disease; [Mr. Quiroz] personally remains ignorant of the identity of those hazardous substances to which he was exposed at work that caused his lung disease." *Id.* ¶ 105.

- "As a result of [Mr. Quiroz's] exposure to each of Defendants' stone products, silica, metals and other toxins entered [Mr. Quiroz's] body and caused Plaintiff to suffer from specific illnesses, to wit, silicosis and related medical conditions, as set forth in more detail herein." ECF 83-2 ¶ 1088.

- "Each of Defendants' stone products contained silica and toxic metals, that entered [Mr. Quiroz's] body and was a substantial factor in causing, prolonging, and aggravating his silicosis and his related and consequential injuries." *Id.* ¶ 1089.

These allegations or substantially similar allegations appear in the complaint of each Underlying Action.

**B.     The Policies and Exclusions**

Hanover issued a general commercial liability policy to Francini, with effective dates from August 20, 2016, to August 20, 2017.  ECF 1 ¶ 7.  Citizens issued a general commercial liability policy to Francini, with effective dates, including the renewal period, from August 20, 2019, to August 20, 2021.  *Id.* ¶ 8.  Hanover and Citizens' policies are collectively referred to as the "Policies."  Under the Policies, the Insurers agreed to "pay those sums that [Francini] becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies."  *Id.* ¶ 9.  The Insurers agreed to defend Francini in any suit seeking such damages.  *Id.*

The Policies contain a "Total Pollution Exclusion," which provides that insurance does not apply to:

"Bodily injury" . . . which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

*Id.* at 247.  The Policies also contain an exclusion for silica or silica-related dust (the "Silica Exclusion").  *Id.* at 257.  The Silica Exclusion provides that insurance does not apply to:

"Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:23-cv-10047-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Hanover American Insurance Co. et al. v. Francini, Inc.* | | |

*Id.* The Policies define silica as "silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds." *Id.* "Silica-related dust" is defined as "a mixture or combination of silica and other dust or particles." *Id.*

## C.  Procedural History

The Insurers brought this action against Francini on November 29, 2023, seeking a declaratory judgment that they do not have a duty to defend or indemnify Francini in the Underlying Actions because the Silica Exclusion and the Total Pollution Exclusion bar coverage for those suits. ECF 1. Francini filed an answer on February 2, 2024. ECF 19. On March 26, 2024, the Insurers filed a motion for judgment on the pleadings, ECF 44, which Francini opposed, ECF 51. After a hearing, the Court granted the Insurers' motion with leave to amend the answer ("First MJOP Order"). ECF 66. The Court concluded that because the Silica Exclusion applied to the Underlying Actions, the Insurers owed no duty to defend or indemnify Francini. *Id.*

Francini filed its amended answer and counterclaim on May 1, 2025. ECF 71. Francini's counterclaim seeks a declaration that the Insurers owe it a duty to defend and indemnify in an additional 53 underlying state actions. *Id.* at 13 ¶ 3.[1] Francini alleges that, since the Insurers filed their complaint, the allegations and claims in the Underlying Actions have "evolved" to include injuries caused by non-silica, non-dust constituents of engineered stone products (*i.e.*, injuries that, according to Francini, would not fall within the Silica Exclusion). *Id.*; ECF 87 at 10.[2]

The Insurers filed the instant Motion for Judgment on the Pleadings on June 20, 2025. ECF 82. Francini opposed. ECF 87.

Since the Court issued the First MJOP Order, several additional coverage actions have been filed by other insurance providers and stone companies concerning the same Underlying Actions and similar silica and pollution policy exclusions. Those actions have been noticed as related to

---

[1] The Insurers point out that one of the additional actions listed in Francini's counterclaim was already included in the 17 Underlying Actions identified in Plaintiffs' complaint. ECF 82-1 at 5 n.1. Thus, the total number of Underlying Actions is 69.

[2] The Court takes judicial notice of the underlying complaints against Francini. ECF 82-2; ECF 87-7. Under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Courts "may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:23-cv-10047-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Hanover American Insurance Co. et al. v. Francini, Inc.* | | |

the instant action and transferred to the undersigned judge pursuant to General Order 24-04. *See Pacific Shore Stones, LLC et al. v. Allied Property and Casualty Co. et al.* No. 2:25-cv-04370-MRA-MAA (C.D. Cal. May 14, 2025); *Regent Insurance Company et al. v. Cambria Enterprises et al.*, No. 2:25-cv-04142-MRA-MAA (C.D. Cal. May 8, 2025); *Surface Warehouse, LP v. The Charter Oak Fire Insurance Company et al.*, No. 2:25-cv-03895-MRA-MAA (C.D. Cal. May 1, 2025); *Regent Insurance Company et al. v. Stone Source LLC*, No. 2:25-cv-06702-MRA-MAA (C.D. Cal. July 22, 2025). The insurers filed motions for judgment on the pleadings in every action, including the instant action, and four of the motions were heard on November 24, 2025. ECF 91.

## II.    LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Motions for judgment on the pleadings are "functionally identical to Rule 12(b)(6) motions." *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1201 (9th Cir. 2021) (quoting *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011)) (internal quotation marks omitted). Therefore, "when ruling on either type of motion 'courts must consider the complaint in its entirety, as well as other sources . . . in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)).

On a motion for judgment on the pleadings, "[j]udgment is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *San Francisco Taxi Coal. v. City & Cnty. of San Francisco*, 979 F.3d 1220, 1223 (9th Cir. 2020). "A plaintiff is not entitled to judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery." *Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989). "Similarly, if the defendant raises an affirmative defense in his answer it will usually bar judgment on the pleadings." *Id.* (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1368 (1969)).

## III.    DISCUSSION

### A.    Insurance Coverage Principles

"A liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." *Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287, 295 (1993) (cleaned up). A "carrier must defend a suit which [p]otentially seeks damages within the coverage of the policy." *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275 (1966). "Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:23-cv-10047-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Hanover American Insurance Co. et al. v. Francini, Inc.* | | |

owe a duty to defend its insured in an action in which no damages ultimately are awarded," or in an action where damages arise from an injury that is ultimately determined to fall outside the scope of the policy or within an exclusion. *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993); *see also Saylin v. California Ins. Guarantee Assn.*, 179 Cal. App. 3d 256, 263 (1986) ("[T]he duty [to defend] may exist even where coverage is in doubt and ultimately does not develop." (internal quotation marks omitted)).

The duty to defend is triggered by a "bare 'potential' or 'possibility' of coverage." *Montrose*, 6 Cal. 4th at 300. To prevail in an action seeking declaratory relief on the issue of the duty to defend, "the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*." *Id.* "The duty to defend does not usually turn on whether facts supporting a covered claim predominate or generate the claim." *Pension Tr. Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 951 (9th Cir. 2002). "Thus, even where . . . the allegations in the underlying complaint are primarily focused on non-covered claims, the Court 'look[s] not to whether noncovered acts predominate in the third party's action, but rather to whether there is any potential for liability under the policy.'" *KM Strategic Mgmt., LLC v. Am. Cas. Co. of Reading PA*, 156 F. Supp. 3d 1154, 1168 (C.D. Cal. 2015) (quoting *Horace Mann*, 4 Cal. 4th at 1084).

"The determination whether the insurer owes a duty to defend is usually made in the first instance by comparing the allegations of the complaint with the terms of the policy." *Horace Mann*, 4 Cal. 4th at 1081. "Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." *Id.* (citing *Gray*, 65 Cal. 2d at 276). Stated differently, "facts known to the insurer and extrinsic to the third party complaint can generate a duty to defend, even though the face of the complaint does not reflect a potential for liability under the policy." *Montrose*, 6 Cal. 4th at 296 (citing *Gray*, 65 Cal. 2d at 276). On the other hand, "the insured may not speculate about unpled third party claims to manufacture coverage." *Albert v. Mid-Century Ins. Co.*, 236 Cal. App. 4th 1281, 1290 (2015) (quotation marks omitted); *The Upper Deck Co. v. Fed. Ins. Co.*, 358 F.3d 608, 616 (9th Cir. 2004)). "The possibility of an amendment does not require the insurer to speculate about any conceivable claim that a plaintiff might bring against the insured or to spin out wild theories of recovery for every conceivable damage." *The Upper Deck Co.*, 358 F.3d at 616.

In a "mixed" action, in which some of the claims are at least potentially covered and the others are not, the insurer has a duty to defend the action in its entirety. *Buss v. Superior Ct.*, 16 Cal. 4th 35, 48 (1997).

**B.      The Silica Exclusion**

The Insurers argue that they owe no duty to defend or indemnify Francini in the Underlying

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:23-cv-10047-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Hanover American Insurance Co. et al. v. Francini, Inc.* | | |

Actions because each Underlying Plaintiff alleges bodily injury arising at least in part out of the inhalation of silica or silica-related dust. ECF 82-1 at 17. The Insurers point to allegations that the Underlying Plaintiffs "inhaled silica and metal dust and particles," and contend that their injuries were caused by the exposure to and inhalation of "stone dust containing silica and other toxins and carcinogens." *Id.* The Insurers argue that to the extent that the Underlying Plaintiffs allege exposure to other toxic substances, such allegations merely allege exposure to "silica-related dust," which is covered by the Silica Exclusion. *Id.*

Francini argues that the Underlying Plaintiffs allege that they suffered bodily injury as a result of exposure to VOCs and metals, which by definition are not silica or silica-related dust. ECF 87 at 12. Francini points to the allegations in its counterclaim that the Underlying Plaintiffs make claims separate and apart from silica, including that fibrotic lung disease is caused by the inhalation of metals. *Id.* at 13. Francini argues that whether silica or silica-related injuries "predominate" in the Underlying Actions is irrelevant, and because there are factual disputes concerning the causes of the specific injuries alleged in the Underlying Complaints, the Court cannot grant the Insurers' Motion. *Id.* at 19.

The Silica Exclusion bars from coverage any bodily injury "arising, in whole or in part" out of silica or silica-related dust. Thus, in considering the Insurers' Motion, the Court must consider whether there is a possibility that the Underlying Actions involve bodily injuries that do not "arise from" silica or silica-related dust. The Court answers this question by looking at the Underlying Plaintiffs' allegations, as well as facts extrinsic to the complaints. *See Montrose*, 6 Cal. 4th at 295; *Gray*, 65 Cal. 2d at 276. If such a possibility exists, then the Insurers owe a duty to defend, regardless of whether the underlying injuries were predominantly, primarily, or substantially caused by silica or silica-related dust. *See KM Strategic Mgmt.*, 156 F. Supp. 3d at 1168.

It is undisputed that the Underlying Plaintiffs allege that they were "not only exposed to high concentrations of respirable crystalline silica, but [were] also exposed to other toxic substances in artificial stone," including many metals and VOCs which can cause pulmonary fibrosis and other pulmonary effects. ECF 83-1 ¶¶ 82–84. Moreover, it appears undisputed that such metals or VOCs do not meet the Policies' definition of "silica," and that because VOCs are gases, they would not meet the Policies' definition of "silica-related dust." ECF 87 at 8; ECF 1 at 257 (defining silica-related dust as a "mixture or combination of silica and other *dust* or *particles*" (emphasis added)). And finally, it is undisputed that the Underlying Plaintiffs allege these non-silica substances contributed to their injuries. ECF 83-2 ¶ 1088 ("As a result of [Mr. Quiroz's] exposure to each of Defendants' stone products, silica, metals and other toxins entered [Mr. Quiroz's] body and caused [Mr. Quiroz] to suffer from specific illnesses."). In other words, there is no dispute that the Underlying Plaintiffs allege that they were exposed to toxic substances

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:23-cv-10047-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Hanover American Insurance Co. et al. v. Francini, Inc.* | | |

that are neither silica nor silica-related dust (and thus covered under the Policies) and that those substances contributed to their injuries.

The question remains, however, whether the Silica Exclusion bars coverage for those injuries where the Underlying Plaintiffs allege that silica and silica-related dust *also* contributed to those injuries. The Court concludes it does not.

Critically, each Underlying Plaintiff alleges that they "remain[] ignorant of the identity of those hazardous substances to which [they] were exposed at work that caused [their] lung disease." ECF 83-1 ¶ 105. The Underlying Plaintiffs allege that various toxic substances (generally speaking, silica, metals, and VOCs) can independently cause the lung injuries they suffer from, including lung disease and/or pulmonary fibrosis. *Id.* ¶¶ 83–84. But among these different substances, any individual Underlying Plaintiff does not know which precise substance caused their precise injuries. Given these allegations in the Underlying Actions, it is possible that toxic substances *other* than silica or silica-related dust were the sole cause of the pulmonary fibrosis or lung disease suffered by the Underlying Plaintiffs. In other words, the Underlying Actions present the possibility that the Underlying Plaintiffs' injuries were not caused by silica or silica-related dust at all—whether that possibility is remote or unlikely is irrelevant.

The Insurers argue that "[Francini] has failed to show the bodily injuries alleged in the Underlying Actions do not arise <u>in whole or in part</u> out of the alleged inhalation of 'silica' or 'silica-related dust.'" ECF 88 at 8. This argument, however, improperly shifts the burden to Francini, when it is the *Insurers'* burden to show that the Silica Exclusion applies—*i.e.*, to show that the injuries alleged in the Underlying Actions *do* arise in whole or in part out of the alleged inhalation of silica or silica-related dust. *See ML Direct, Inc. v. TIG Specialty Ins. Co.*, 79 Cal. App. 4th 137, 141 (2000) ("When it comes to exclusions, the insurer bears the burden of proving the exclusion applies."). Given the scientific and fact-intensive nature of the injuries alleged, the Insurers cannot meet this burden at the present stage.

Indeed, Francini highlights discovery served in the Underlying Actions which, according to Francini, reflects that the Underlying Plaintiffs "seek recovery for bodily injuries allegedly caused by non-silica, non-dust harmful constituents to which they were allegedly exposed." ECF 87 at 11. Those discovery responses repeat allegations that pulmonary fibrosis and other lung injuries can be independently caused by metal constituents of artificial stone and VOCs. ECF 87-4 at 18. Because the Insurers have not ruled out the possibility that the Underlying Plaintiffs' injuries were in fact caused by those non-silica constituents, they have not carried their burden of demonstrating that the Silica Exclusion applies.

The Court acknowledges that it reached a different conclusion in its First MJOP Order. However, "[l]aw of the case . . . does not and cannot limit the power of a court to reconsider an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:23-cv-10047-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Hanover American Insurance Co. et al. v. Francini, Inc.* | | |

earlier ruling," since "[t]he ultimate responsibility of the federal courts . . . is to reach the correct judgment under law." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003). With the benefit of additional briefing and argument from counsel, the Court recognizes that the First MJOP Order characterized silica as the "primary" or "main" cause of the Underlying Plaintiffs' injuries. *See* First MJOP Order at 8. But whether silica "predominates" in the Underlying Actions' complaints is irrelevant to whether the Silica Exclusion precludes coverage. *See Horace Mann*, 4 Cal. 4th at 1084. The dispositive question as to the Insurers' Motion is whether there is a "bare 'potential' or 'possibility'" that the Underlying Plaintiffs' bodily injuries were caused by a non-excluded substance, and the Court concludes that there is.

To be sure, silica "predominates" in the Underlying Actions in the sense that the exposures to and the injuries caused by non-excluded substances are uniformly alleged in combination with silica. For instance, Mr. Quiroz alleges that as a result of his exposure to Francini's stone products, "silica, metals *and* other toxins" entered his body and caused him to suffer from "silicosis and related medical conditions." ECF 83-2 ¶ 1088 (emphasis added). Mr. Quiroz also alleges that "[e]ach toxin, including silica *and* metals, that entered [Mr. Quiroz's] body was a substantial factor in bringing about . . . [Mr. Quiroz's] silicosis and his related consequential injuries." *Id.* ¶ 1107 (emphasis added). Reading these allegations in isolation, it would be plausible to conclude that silica contributed, at least in part, to each of the Underlying Plaintiffs' injuries, which would bring the injuries into the scope of the broadly phrased Silica Exclusion.

But upon closer examination of the Underlying Actions and the applicable law, the Court cannot ignore allegations appearing elsewhere in the complaint: that Mr. Quiroz developed lung disease characterized by pulmonary nodules, silicosis, pulmonary fibrosis, progressive massive fibrosis, and that at least some of those conditions can be independently caused by metals and VOCs. ECF 83-1 ¶¶ 82–84, 88. Such allegations, in tandem with the allegation that Mr. Quiroz is ignorant of the identity "of those hazardous substances . . . that caused his lung disease," "suggest a claim potentially covered by the [Policies]," and thus trigger a duty to defend. *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 655 (2005). To the extent that the allegations in the Underlying Actions contradict each other or create any ambiguity as to the cause of the Underlying Plaintiffs' injuries, any such ambiguity or doubt must be resolved in Francini's favor. *James River Ins. Co. v. SureFire, LLC*, No. 8:24-CV-01556-JVS-KES, 2025 WL 1287891, at *6 (C.D. Cal. Mar. 6, 2025) ("Any ambiguity in the complaint or doubt as to whether the facts give rise to a duty to defend must be resolved in favor of the insured." (citing *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1270 (9th Cir. 2010))).

Moreover, insofar as the Underlying Actions can be interpreted to allege that excluded and non-excluded causes *both* contributed to an Underlying Plaintiffs' injuries, such allegations would not eliminate the duty to defend, even under the broad language of the Silica Exclusion, pursuant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:23-cv-10047-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Hanover American Insurance Co. et al. v. Francini, Inc.* | | |

to California's concurrent cause doctrine. In *State Farm Mutual Automobile Insurance Co. v. Partridge*, 10 Cal. 3d 94 (1973), the California Supreme Court held that where a "homeowner's policy excluded injuries 'arising out of the use of' an automobile, such exclusion does not preclude coverage when an accident results from the concurrence of a non-auto-related cause and an auto-related cause." *Id.* at 97. The Court further held that where a non-excluded "risk is a proximate cause of an injury, liability attaches to the insured, and coverage for such liability should naturally follow." *Id.* The Court went on to explain that "[c]overage cannot be defeated simply because a separate excluded risk constitutes an additional cause of the injury." *Id.*

*Partridge* therefore instructs that, because silica and non-silica substances are each alleged to be substantial factors in causing the Underlying Plaintiff's injuries, the Silica Exclusion does not defeat coverage. In a subsequent case, the California Supreme Court held that "tort law (substantial factor) causation is sufficient to create coverage *under a liability policy* when covered and excluded acts or events have concurred in causing injury or property damage." *California v. Allstate Ins. Co.*, 45 Cal. 4th 1008, 1036 (2009). In *Allstate*, the Court considered whether the insurer was liable for property damage, some of which was caused by covered, accidental pollutant discharges, and some of which was caused by excluded, nonaccidental pollutant discharges. *Id.* at 1030. The exclusion in *Allstate* included the same broad "arising out of" language appearing in the Silica Exclusion here. *Id.* at 1016. And the Court concluded that the fact "that an excluded cause of property damage[] also contributed to the contamination is insufficient to defeat *Partridge*'s holding that liability coverage exists 'whenever an insured risk constitutes a proximate cause of an accident, even if an excluded risk is a concurrent proximate cause.'" *Id.* at 1032 (quoting *Partridge*, 10 Cal. 3d at 105).

*Partridge* and *Allstate* together compel the conclusion that where two substances—one excluded and the other covered—are each alleged to be a substantial factor in causing the underlying plaintiff's injuries, the broad "arising out of" language in the exclusion cannot be applied to defeat coverage. A different judge in this district recently applied *Partridge* to a materially similar dispute to reach the same conclusion. *Sompo America Insurance Company v. LX Hausys America, Inc.*, No. CV 25-2832-JFW(MAAx), 2025 WL 4061607, at *4 (C.D. Cal. Dec. 22, 2025). The Court finds the reasoning in *Sompo* persuasive here and similarly concludes that the Insurers "cannot avoid [their] duty to defend where an insured risk and excluded risk are alleged to constitute concurrent proximate causes of the underlying plaintiffs' bodily injuries." *Id.*

Drawing all reasonable inferences in Francini's favor, as the Court must do in resolving the Insurers' Motion, the Court concludes that Francini has demonstrated the existence of a potential for coverage—*i.e.*, the existence of injuries in the Underlying Actions that would not fall within the scope of the Silica Exclusion. The Insurers are therefore not entitled to judgment on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:23-cv-10047-MRA-MAA | Date | March 31, 2026 |
|----------|----------------------|------|----------------|
| Title | *Hanover American Insurance Co. et al. v. Francini, Inc.* | | |

the pleadings that it owes no duty to defend based on the Silica Exclusion.

### C.    The Total Pollution Exclusion

The Insurers separately argue that coverage for the Underlying Actions is excluded by the Total Pollution Exclusion, which bars coverage for bodily injury "which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." ECF 1 at 247. Whether the Total Pollution Exclusion applies turns on whether the toxic substances alleged to have caused the Underlying Plaintiffs' injuries are "pollutants" within the meaning of the Total Pollution Exclusion.

The Insurers argue that the Total Pollution Exclusion is an absolute exclusion, silica and silica-related dust are "pollutants" within the meaning of the exclusion, the injury-causing event would commonly be thought of as a pollution from a layman's perspective, and widespread dissemination is not required for the Total Pollution Exclusion to apply. ECF 82-1 at 21–26. Francini responds that exposure to silica is not "traditional environmental pollution," and widespread contamination is required for the Total Pollution Exclusion to apply. ECF 87 at 22.

The parties agree that the applicability of the Total Pollution Exclusion is governed by the California Supreme Court's opinion in *MacKinnon v. Truck Insurance Exchange*, 31 Cal. 4th 635 (2003). ECF 82-1 at 22; ECF 87 at 23. In *MacKinnon*, a tenant in plaintiff MacKinnon's building died from pesticide exposure after MacKinnon hired a pest control company to exterminate yellow jackets. *Id.* at 640. When the parents of the tenant sued MacKinnon for wrongful death, MacKinnon tendered his defense to Truck Insurance Exchange pursuant to the comprehensive general liability insurance policy Truck Insurance Exchange had issued him. *Id.* Truck Insurance Exchange concluded that the pollution exclusion in the policy precluded coverage for the wrongful death action. The Court held that Truck Insurance Exchange's reading of the exclusion, which would extend to virtually any substance that could be characterized as irritants or contaminants, was untenable. *Id.* at 649. The Court further "limit[ed] the scope of the pollution exclusion to injuries arising from events commonly thought of as pollution, i.e., environmental pollution." *Id.* at 653. Applying that standard, the Court held that "[w]hile pesticides may be pollutants under some circumstances, it is unlikely a reasonable policyholder would think of the act of spraying pesticides under these circumstances as an act of pollution." *Id.* at 654. Under *MacKinnon*, the Court must "put itself in the position of a layperson" to determine whether a pollution exclusion applies to a given injury-causing event. *Id.* at 649.

Applying *MacKinnon*, a California Court of Appeal held that "the widespread dissemination of silica dust as an incidental by-product of industrial sandblasting operations most assuredly is what is 'commonly thought of as pollution' and 'environmental pollution.'" *Garamendi v. Golden Eagle Ins. Co.*, 127 Cal. App. 4th 480, 486 (2005). The *Garamendi* court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:23-cv-10047-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Hanover American Insurance Co. et al. v. Francini, Inc.* | | |

rejected the notion that there must be a showing of "wholesale environmental degradation . . . to constitute pollution." *Id.* at 486.

Yet, in *American Zurich Insurance Co. v. James N. Gray Co.*, the court found that negligent demolition work that caused silica dust to enter the air was not an activity "traditionally thought of as pollution under *MacKinnon*'s guiding principles," in part based on the court's observation that the release of silica dust was not "widespread." No. SACV131966AGJPRX, 2014 WL 11430928, at *4 (C.D. Cal. July 25, 2014). The court distinguished *Garamendi* by pointing out that "*Garamendi*'s facts reflect a situation where dust clouds from construction-related activities could be thought of as traditional pollution," and "[t]he *Garamendi* court speaks of 'the widespread dissemination of silica dust.'" *American Zurich*, 2014 WL 11430928, at *5 (quoting *Garamendi*, 127 Cal. App. 4th at 486). Unlike *Garamendi*, where the dust purportedly traveled over "large distance," the *American Zurich* court "ha[d] no reason to understand the impact of the toxins released as so widespread." *American Zurich*, 2014 WL 11430928, at *5.

In *Travelers Property Casualty Co. of America v. City of Los Angeles Harbor Department*, No. CV 15-7799-GW(AJWX), 2016 WL 11520822 (C.D. Cal. Sept. 9, 2016), the court reviewed several decisions by state and federal courts applying *MacKinnon* and synthesized the relevant considerations to determine whether an injury-causing event would commonly be thought of as pollution from a layman's perspective: (1) whether the harm resulted from the by-product of an industrial operation; (2) whether the contaminant in question is regulated, and (3) whether the alleged polluter was aware of the dangers of the contaminant. *Id.* at *4. Applying those factors, the court denied the insurer's motion for summary judgment because although creosote, the chemical at issue, was regulated by the Environmental Protection Agency, "its release due to the accidental fire . . . would . . . not comport with the common understanding of the word 'pollute.'" *Id.* at *5.

Here, the Insurers rely on *Garamendi* and argue that the *Travelers* factors compel the conclusion that the Total Pollution Exclusion applies because: (1) the harm alleged in the Underlying Actions is the result of the "industrial operation" of fabricating stone; (2) the federal government has placed exposure limits on silica and other metals; and (3) Francini was aware of the dangers of silica and metals. ECF 82-1 at 22–23. Francini argues in response that the Underlying Actions concern localized dispersal, and the fabrication work was performed mostly in homes and not in an industrial setting. ECF 87 at 25.

Upon consideration of the parties' arguments and the caselaw discussed above, the Court concludes whether a layperson would view the injury-causing events in the Underlying Actions as pollution is a question unsuitable for resolution in the instant Motion. As discussed above, the Underlying Plaintiffs were allegedly injured by numerous different toxic substances, including

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:23-cv-10047-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Hanover American Insurance Co. et al. v. Francini, Inc.* | | |

silica, various metals, and VOCs.   The Insurers argue that the fabrication processes alleged in the Underlying Actions constitute "industrial operations" based on the plain meaning of those terms, but the Insurers cite no authority to that effect, *see* ECF 88 at 13, and, as Francini points out, several Underlying Plaintiffs allege that they performed work "mostly in homes."   To the extent that there is uncertainty as to whether a layperson would consider such work to be an "industrial operation," that doubt must be resolved in Francini's favor.   Moreover, although the Insurers correctly point out that "widespread" dissemination is not necessary, courts have instructed that whether the dissemination of the substance was "widespread" is relevant to whether a layperson would commonly think of such dissemination as pollution.   *See American Zurich*, 2014 WL 11430928, at *5.   Because the Underlying Actions arise from localized exposures, this case is distinguishable from *Garamendi* for the same reasons articulated by the court in *American Zurich*, and the Court cannot definitively conclude that such exposures would "comport with the common understanding of the word 'pollute.'"   *Travelers*, 2016 WL 11520822, at *5.   Indeed, one court in this district recently reached the same conclusion, finding that "*Garamendi* does not settle the issue" because the Underlying Actions "could well differ on the degree of alleged dissemination they feature."   *Cambria Co. LLC v. Philadelphia Indem. Ins. Co.*, 2:24-CV-01913-MEMF-MBK, 2026 WL 776300, at *11 (C.D. Cal. Mar. 17, 2026).

Drawing all reasonable inferences in Francini's favor, the Court concludes that Francini has demonstrated the existence of a potential for coverage—*i.e.*, the existence of injuries in the Underlying Actions that would not fall within the scope of the Total Pollution Exclusion.   The Insurers are therefore not entitled to judgment on the pleadings.

### D.   Duty to Indemnify

"Where there is a duty to defend, there *may be* a duty to indemnify."   *Certain Underwriters at Lloyd's of London v. Superior Ct.*, 24 Cal. 4th 945, 958 (2001).   "The duty to indemnify arises after a judgment has been entered against the insured on a theory which is in fact, rather than merely potentially, covered by the policy."   *Oruna v. Burlington Ins. Co.*, No. 222CV03425SPGGJSX, 2023 WL 5667539, at *10 (C.D. Cal. June 6, 2023) (citing *Lloyd's*, 24 Cal. 4th at 958).   The Court therefore denies the Insurers' Motion as unripe to the extent that it concerns its duty to indemnify Francini.

To be clear, the Court's denial of the Insurers' Motion is not a conclusive determination that coverage under the Policies has been established.   Rather, the outcome reached by the Court is based upon its conclusion that, at the present stage, the injuries alleged in the Underlying Actions are potentially covered under the Policies.   In any given Underlying Action, if it is determined that the plaintiff's injuries were in fact caused by substances that fall within the Silica Exclusion or Total Pollution Exclusion, the Insurers may at that point be able to show that "no

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:23-cv-10047-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Hanover American Insurance Co. et al. v. Francini, Inc.* | | |

claim can in fact be covered," and the duty to defend would be extinguished. *Buss*, 16 Cal. 4th at 46.

## IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion for Judgment on the Pleadings [82].

**IT IS SO ORDERED.**

- : -

Initials of Deputy Clerk      mku